**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREEN TREE COMMUNITY HEALTH FOUNDATION, | : | CIVIL ACTION - LAW |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO.: |
| | : | |
| ADMIRAL INSURANCE COMPANY | : | |
| | : | |
| Defendant, | : | |
| | : | |

<u>**NOTICE OF REMOVAL**</u>

**TO:    The Honorable Judges of the Unites Dates District Court for the Eastern District of Pennsylvania:**

ON NOTICE TO:

The Philadelphia Court of Common Pleas
Trial Division - Civil
C/O Prothonotary
City Hall, Room 296
Philadelphia, PA 19107

Arthur R. Armstrong, Esq.
FLASTER GREENBERG, P.C.
1835 Market Street
Suite 1050
Philadelphia, PA 19103

   Defendant, Admiral Insurance Company ("Admiral"), hereby files this Notice of

Removal of the above-captioned matter from the Court of Common Pleas of Philadelphia

County, Pennsylvania, to the United States District Court for the Eastern District of

Pennsylvania, and in support thereof, avers as follows:

1.      This action was commenced by the filing of a Complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania, on June 4, 2021, under the caption, *Green Tree Community Health Foundation v. Admiral Insurance Company,* June Term 2021, Case No.: 210503143. *A true and correct copy of plaintiff's Complaint is attached hereto as Exhibit "A".*

2.      Plaintiff has asserted causes of action against Admiral for declaratory judgment, breach of contract, statutory bad faith, and breach of the implied covenant of good faith and fair dealing arising out of its alleged coverage obligations to defend and indemnify plaintiff in an underlying medical malpractice lawsuit brought against plaintiff. *See Exhibit A.*

3.      Plaintiff's Complaint avers in its ad damnum clause(s) that plaintiff's claim is worth in excess of $50,000. *See Exhibit A. See also the Civil Cover Sheet filed with plaintiff's Complaint as part of Exhibit A.* This assertion, however, serves simply to identify plaintiff's action as a major case under the Pennsylvania Rules of Civil Procedure and is not determinative of the amount in controversy for the purposes of this Notice of Removal. *28 U.S.C. § 1446(c)(2)(A)(ii).*

4.      The amount in controversy, as appearing from the allegation contained in plaintiff's Complaint and its related documents will exceed the amount of $75,000 because plaintiff is seeking coverage from Admiral for defense and indemnity for an underlying medical malpractice action involving injuries to a minor.

5.      Plaintiff, Green Tree Community Health Foundation, is presently and was at all times relevant to its Complaint incorporated and maintains its principal place of business in the Commonwealth of Pennsylvania.

6.      Defendant, Admiral, is presently and was at all times relevant hereto incorporated under the laws of the State of Delaware with a principal place of business in the State of Arizona.

7.      Plaintiff has consented to the removal of this action to this Honorable Court. *A true and correct copy of email correspondence from counsel for plaintiff consenting to removal is attached hereto and marked as Exhibit "B".*

8.      In this matter there is complete diversity of citizenship: Plaintiff is both incorporated and maintains a principal place of business in the Commonwealth of Pennsylvania and Admiral is incorporated in the State of Delaware with a principal place of business in the State of Arizona. Accordingly, this lawsuit is removable from state court to the United States District Court for the Eastern District of Pennsylvania, pursuant to *28 U.S.C. §§ 1332(a)(1), 1441(a)* and *1446(b)*.

9.      A copy of all pleadings to date that have been served by and/or upon Admiral are attached to this Notice. *See Exhibit "C"*.

10.      This Notice of Removal is timely as it is being filed within thirty (30) days of the receipt by Admiral on June 14, 2021 of plaintiff's Complaint. *28 U.S.C. § 1446(b)(3). A true and correct copy of the process server's documents are attached hereto and marked as Exhibit "D".*

11.      Admiral expressly reserves the right to raise all defenses and objections in this action after it is removed to this Honorable Court.

12.      A true and correct copy of this Notice of Removal is being filed with the Prothonotary of the Court of Common Pleas of Philadelphia County, Pennsylvania as provided by *28 U.S.C. § 1446(d)*.

13.      Written notice of the filing of this Notice of Removal will also promptly be given to all parties in this action as required by *28 U.S.C. § 1446(d)*.

**WHEREFORE**, notice is hereby given that this action is removed from the Court of Common Pleas of Philadelphia County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania.

**COUGHLIN MIDLIGE & GARLAND, LLP**

BY: ___*/s/ Christopher Priore*__
      Christopher Priore, Esq.
      *Attorneys for Defendant,*
      *Admiral Insurance Company*

Date: _July 14, 2021

EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
06/14/2021
CT Log Number 539729445

TO: Janet Shemanske, Secretary
Nautilus Insurance Company
W. R. BERKLEY STATUTORY E & S CENTER, 7233 E BUTHERUS DR
SCOTTSDALE, AZ 85260-2410

RE: **Process Served in Delaware**

FOR: Admiral Insurance Company  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | GREEN TREE COMMUNITY HEALTH FOUNDATION, PLTF. vs. ADMIRAL INSURANCE COMPANY, DFT. |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 210503143 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/14/2021 at 15:40 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/15/2021, Expected Purge Date: 06/20/2021 |
| | Image SOP |
| | Email Notification,  Janet Shemanske  jshemanske@nautilus-ins.com |
| | Email Notification,  SOP REGULATORY  nic_regulatory@nautilus-ins.com |
| | Email Notification,  Trea Mihalovich  tmihalovich@nautilus-ins.com |
| | Email Notification,  Jen Rothluebber  jrothluebber@nautilus-ins.com |
| | Email Notification,  Wendy Wilson  wwilson@nautilus-ins.com |
| **REGISTERED AGENT ADDRESS:** | The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801<br>800-448-5350<br>MajorAccountTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s)

Page 1 of  2 / GS

 CT Corporation

**Service of Process Transmittal**
06/14/2021
CT Log Number 539729445

**TO:**     Janet Shemanske, Secretary
Nautilus Insurance Company
W. R. BERKLEY STATUTORY E & S CENTER, 7233 E BUTHERUS DR
SCOTTSDALE, AZ 85260-2410

**RE:**     **Process Served in Delaware**

**FOR:**    Admiral Insurance Company  (Domestic State: DE)

of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                    Mon, Jun 14, 2021

**Server Name:**             Wilmington Drop Serve

Entity Served                ADMIRAL INSURANCE COMPANY

Case Number                  210503143

Jurisdiction                 DE



Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| | **MAY 2021**    **003143** |
| | E-Filing Number: 2106008914 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| GREEN TREE COMMUNITY HEALTH FOUNDATION | ADMIRAL INSURANCE COMPANY |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 10 E. SPRINGFIELD AVE., SOUTH PHILADELPHIA PA 19118 | 1000 ROGERS BLVD. SUITE 300 MOUNT LAUREL NJ 08054 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 1 | 1 | ☒ Complaint | ☐ Petition Action | ☐ Notice of Appeal |
| | | ☐ Writ of Summons | ☐ Transfer From Other Jurisdictions | |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less | ☐ Arbitration | ☐ Mass Tort | ☐ Commerce | ☐ Settlement |
| ☒ More than $50,000.00 | ☒ Jury | ☐ Savings Action | ☐ Minor Court Appeal | ☐ Minors |
| | ☐ Non-Jury | ☐ Petition | ☐ Statutory Appeals | ☐ W/D/Survival |
| | ☐ Other: | | | |

| CASE TYPE AND CODE |
|---|
| 1D - INSURANCE, DECLARATORY JUDGMENT |

| STATUTORY BASIS FOR CAUSE OF ACTION |
|---|
| |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|
| **FILED PRO PROTHY** JUN 04 2021 **M. BRYANT** | YES          NO |

## TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>GREEN TREE COMMUNITY HEALTH FOUNDATION</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| ARTHUR R. ARMSTRONG | FLASTER GREENBERG PC 1835 MARKET STREET SUITE 1050 PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)279-9933 | (215)279-9394 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 203816 | arthur.armstrong@flastergreenberg.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *ARTHUR ARMSTRONG* | Friday, June 04, 2021, 12:50 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA** and Attested by the
**COURT OF COMMON PLEAS OF PHILADELPHIA** of Judicial Records
04 JUN 2021 ... 0 pm



FLASTER GREENBERG PC
Arthur R. Armstrong, Esq.
1835 Market Street, Suite 1050
Philadelphia, PA 19103
Telephone: 215.514.7673
E-mail: arthur.armstrong@flastergreenberg.com
Attorneys for Plaintiff

GREEN TREE COMMUNICTY HEALTH
FOUNDATION,
     Plaintiff,

  v.

ADMIRAL INSURANCE COMPANY,

     Defendant.

## NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |
| **Philadelphia Bar Association**<br>**Lawyer Referral**<br>**and Information Service**<br>**One Reading Center**<br>**Philadelphia, Pennsylvania 19107**<br>**(215) 238-6333**<br>**TTY (215) 451-6197** | **Asociacion De Licenciados**<br>**De Filadelfia**<br>**Servicio De Referencia E**<br>**Informacion Legal**<br>**One Reading Center**<br>**Filadelfia, Pennsylvania 19107**<br>**(215) 238-6333**<br>**TTY (215) 451-6197** |

Case ID: 210503143



COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY, PENNSYLVANIA

Filed and Attested by the
Office of Judicial Records
04 JUN 2021 04:00 pm

RECEIVED
Jun 15 2021
NAUTILUS INSURANCE GROUP
REGULATORY DEPT

|  |  |
|---|---|
| GREEN TREE COMMUNITY HEALTH FOUNDATION, | : |
| Plaintiff, | : |
| v. | : No. |
| ADMIRAL INSURANCE COMPANY | : **COMPLAINT AND DEMAND FOR** |
| Defendant. | : **JURY TRIAL** |

## COMPLAINT

Green Tree Community Health Foundation ("The Foundation" or "Plaintiff"), by and through its undersigned counsel, Flaster Greenberg, P.C., submits the following Complaint against Defendant Admiral Insurance Company ("Admiral" or "Defendant").

### **INTRODUCTION**

1.     Green Tree Community Health Foundation (the "Foundation") is a not-for-profit, public charity located in Philadelphia, which serves as a community health advocate.

2.     The Foundation seeks to improve the health of the surrounding community by identifying areas of vulnerability and partnering with organizations that address those needs.

3.     Through ongoing needs assessments, the Foundation identifies needs in these communities and provides funding to organizations whose work will address these needs.

4.     The Foundation also seeks opportunities to develop initiatives where it can fund and provide needed services directly.

8298572 v2

Case ID: 210503143

5.     The Foundation seeks to have a positive impact on current and emerging health issues and risks, empowering residents in its service area to access health services and to value, embrace and maintain their health.

6.     The Foundation focuses on providing assistance to the frail and isolated elderly; the hungry and food insecure; and children.

7.     The Foundation was created in 2004 as a result of the sale of Chestnut Hill HealthCare to a joint venture between Community Health Systems, Inc. a for-profit health care system headquartered in Brentwood, Tennessee and the University of Pennsylvania Health System.

8.     Chestnut Hill HealthCare was an integrated health care system including the 100-year-old Chestnut Hill Hospital as well as Chestnut Hill Rehabilitation Hospital, and other related entities.

9.     The Foundation was created to carry out the charitable outreach activities of the former not-for-profit Chestnut Hill Healthcare in its primary service area.

10.     Since its inception, the Foundation has provided hundreds of grants to organizations that assist those in need through services that include, *inter alia*, providing home-delivered meals for seniors and health care for the homeless. These efforts are largely made possible by annual giving, one hundred percent of which goes to grant making.

11.     When the Foundation was created to advance this charitable purpose, the Foundation purchased an insurance Policy from Defendant Admiral.

12.     The Foundation is the Named Insured under the Incurred But Not Reported Coverage Agreement with policy number ERP-PA-10141-1011-01 (the "IBNR Policy") sold by

Admiral to the Foundation for the agreement period, "October 1, 2011 to Indefinite." A true and accurate copy of the IBNR Policy is attached hereto as Exhibit A.

13.     The IBNR Policy provides tail coverage to the Foundation, with a retroactive date of March 1, 1984, and follows form to a governing policy identified as "Healthcare Facility Excess Liability Insurance (SAE C/O 08/07) (Coverage A only)" (the "Governing Policy"). A true and accurate copy of the Governing Policy is attached hereto as Exhibit B.

14.     The Foundation paid substantial premiums to Admiral for the IBNR Policy, which provides insurance with a policy limit of $1,000,000 for each Loss Event and $5,000,000 in the aggregate for the agreement period.

15.     The Foundation made a claim under the IBNR Policy related to certain demands for indemnification (the "Demands for Indemnification") made against the Foundation by certain defendants in the civil action styled *Tamia Lloyd, an Incapacitated Person, by Tamika Anderson, Guardian v. Chestnut Hill Hospital, et al.,* pending in the Philadelphia Court of Common Pleas at Docket No. 19-1102814 (the "Anderson Action"). These Demands for Indemnification  are based on certain contractual obligations assumed by the Foundation in connection with its creation in 2004.

16.     The Foundation timely submitted the claim to Admiral, seeking defense and indemnity against the Demands for Indemnification related to the Anderson Action.

17.     Admiral refused to defend or indemnify the Foundation and denied the claim.

18.     Admiral's denial was improper and made in bad faith.

19.     By this complaint, the Foundation respectfully requests this Court order Admiral to defend and indemnify the Foundation against the Demands for Indemnification; reimburse the Foundation for all attorneys' fees and expenses incurred to date in addressing the Demands for

Indemnification and defending against the allegations asserted directly against the Foundation in the Anderson Action; pay its attorneys' fees for bringing this action; and to find that Admiral has breached the covenant of good faith and fair dealing and is liable for consequential and extra-contractual damages.

## PARTIES

20.     The Foundation is a non-profit corporation organized under the laws of the Commonwealth of Pennsylvania with an address of 10 E. Springfield Ave., South, Philadelphia, Pennsylvania 19118.

21.     Upon information and belief, Defendant Admiral Insurance Company is an insurance company organized under the laws of the state of Delaware with an address of 1000 Rogers Blvd., Suite 300, Mount Laurel, New Jersey 08054.

## JURISDICTION AND VENUE

22.     This Court has personal jurisdiction because, at all times material hereto, Defendant transacted business within the Commonwealth of Pennsylvania, and because Defendant engages in substantial and not isolated activity within the Commonwealth of Pennsylvania.

23.     Venue is proper in this County pursuant to Pennsylvania Rule of Civil Procedure 2179(b) because, among other things, Defendant regularly conducts business in this County and the Foundation is located in this County.

## FACTUAL BACKGROUND

### THE FOUNDATION'S INSURANCE POLICY AND RELEVANT POLICY TERMS

24.     Admiral agreed "to pay on behalf of the Insured for Loss because of injury caused by a Medical Incident that happened at Chestnut Hill Hospital after the Retroactive Date[, March 1, 1984,] and prior to march 1, 2005. This coverage applies only when the Claim is first made

against the Insured and report to [Admiral] during the Agreement Period stated above." Ex. A, at

1 of 4.

25.    The Governing Policy defines[1] the term "Loss" to mean:

> the amounts paid as Damages net of all recoveries and salvages, in
> settlement of Claims or Suits in satisfaction of awards or judgments,
> incurred as a result of a Loss Event for which this policy provides
> coverage. Loss does not include salaries of the Insured's employees,
> or fees and expenses of independent adjusters, third party
> administrators and attorneys hired by the Insured.

Ex. B, at 15-16 of 27.

26.    The term "Claim" is defined in the Governing Policy to mean:

> 1. the filing of a lawsuit against an Insured, written notice of intent
> to file a lawsuit, or to arbitrate against an Insured, or a written
> demand for money or services communicated to an Insured with
> respect to a Loss Event; *or*
>
> 2. any specific circumstance or outcome involving a particular
> person an Insured reasonably believes is likely to result in a demand
> for compensation for the injury or damage.

Ex. B, at 14 of 27 (emphasis added).

27.    The Demands for Indemnification were made by defendants in the Anderson

Action, Chestnut Hill Hospital, LLC d/b/a Chestnut Hill Hospital and CHHS Hospital Company,

LLC previously d/b/a Chestnut Hill Hospital and CHS/Community Health Systems, against the

Foundation based on alleged contractual obligations.

28.    In order to trigger coverage, the Demands for Indemnification need satisfy only one

of the two definitions of "Claim" as defined in the Policy. In fact, here the Demands for

Indemnification satisfy both definitions.

---

[1] The IBNR Policy provides that "[i]n consideration of the premium charged, it is understood and agreed that except
as otherwise amended by this Coverage Agreement, the insurance afforded herein shall follow the terms, conditions,
definitions and exclusions of the [Governing Policy]." Ex. A, at 1 of 4. The IBNR Policy does not purport to amend
the definition of any of the defined terms set forth in the Governing Policy.

Case ID: 210503143

29.     The Demands for Indemnification constitute both: (1) a written demand for money with respect to a Loss Event, as well as (2) "any specific circumstance or outcome involving a particular person an Insured reasonably believes is likely to result in a demand for compensation for the injury or damage." *Id.*

30.     The definition of "Claim" places no restriction on who must make a demand for money or services.

31.     The term "Damages" is defined in the Governing Policy to mean "amounts an Insured is legally obligated to pay to compensate others by law because of a loss Event. Damages does not include fines, penalties or amounts that are uninsurable under applicable law." Ex. B, at 14 of 27.

32.     As set forth in the Governing Policy defines, the term "Loss Event" means:

> 1. With respect to COVERAGE A: HEALTHCARE FACILITY EXCESS PROFESSIONAL LIABILITY, a Medical Incident to which this insurance applies.
>
> 2. With respect to COVERAGE B: HEALTHCARE FACILITY EXCESS GENERAL LIABILITY, an Occurrence that results in Bodily Injury or Property Damage or an offense that results in Personal Injury or Advertising Injury, to which this insurance applies.
>
> 3. With respect to COVERAGE C: FOLLOW-FORM EXCESS LIABILITY, the happening, situation or circumstance that results in a Claim or Suit for injury or damage that is covered by the Underlying Insurance described in the Schedule of Underlying.

Ex. B, at 16 of 27.

33.     "Occurrence" is defined in the Governing Policy to mean:

> an accident, including continuous or repeated exposure to conditions which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of an Insured. Occurrence includes any intention act by or at the direction of the Insured which results in Bodily Injury, if the injury arises solely from the use of reasonable force for the purpose of protecting persons or property.

Ex. B, at 16-17 of 27.

34.     Pursuant to the Governing Policy, "Suit" means "a civil action seeking Damages and includes an arbitration proceeding to which the Insured is required to submit." Ex. B, at 18 of 27.

35.     Section IV, "LIMITS OF LIABILITY", of the IBNR Policy also provides, in pertinent part, the following:

> A. The Company's liability under this Agreement, regardless of the number of persons or organizations who are Insureds, the number of coverages afforded under the Insuring Agreements, or the number of Claims made or Suits brought against any and all Insureds shall be determined in accordance with the following provisions:
>
> 1. The Loss Event Limit of Liability set forth above is the most the Company will pay for all covered Loss resulting from any one Loss Event or series of related Loss Events.
>
>    a. all Claims made by all persons for injury to one Patient and his or her family, heirs, successors or assigns, arising out of healthcare Professional Services provided to one person or Patient shall be considered one Medical Incident and one Loss Event. For purposes of determining the manner in which coverage is afforded by this Agreement, it is agreed that one person or one Patient shall include the parents and their "Fetus". "Fetus" is defined as the unborn offspring, or multiple offspring, after fertilization until birth.
>
>    b. all Claims arising out of Bodily Injury to a Patient will be considered one Medical Incident and one Loss Event.

Ex. A, at 2 of 4.

36.     The Foundation notified Admiral of its Claim and demanded the defense and indemnification provided for by operation of the IBNR Policy's coverage provisions.

37.     Admiral denied the Claim by email dated March 26, 2020, on the basis that the IBNR policy's prior acts exclusion precluded coverage because "th[e] claim was previously

reported to Medical Inter Insurance Exchange and the complaint was handled by the White and Williams law firm."

38.     The Prior Acts Exclusion, as amended by the IBNR Policy, provides:

This insurance does not apply to:

1.  any Claim that the Named Insured's Risk Management or Claim department is aware of prior to the inception date of the Agreement Period set forth above.

2.  any Claim arising out of a Loss Event which took place prior to the Retroactive Date set forth above.

3.  any Claim that was reported to any other insurer prior to the inception date of the Agreement Period set forth above.

Ex. A, at 2 of 4.

39.     The Foundation rejected Admiral's reliance on the Prior Acts Exclusion as the claim does not meet any of the elements set forth therein, and again demanded confirmation that coverage would be provided as promised and set forth in the IBNR Policy.

40.     In response, Admiral continued its denial of coverage in a letter dated July 9, 2020, wherein it reiterated misinterpretations of the controlling Policy language. Not only did Admiral attempt to read additional language into the definitions already defined by the Governing Policy and followed by the IBNR Policy, but the letter highlighted Admiral's unsupported position regarding the operative language on which it based its coverage denial.

41.     For example, in addressing the meaning of the term "Claim" , Admiral asserted in its July 9th letter that, "[w]hen read as a whole, Subsection (1) of the definition clearly refers to the filing of a lawsuit, written notice of intent to sue, or written demand for money or services *being made by the claimant herself.*" This attempt to redefine a contractual term contradicts the policy language; *see* Ex. B, at 14 of 27; and is an improper attempt by Admiral to shirk its coverage obligations.

8298572 v2

42.     Moreover, the IBNR Policy does not have an exclusion for contractual liability. The Governing Policy contains an exclusion entitled "Contractual Liability," which states:

> This insurance does not apply under COVERAGE B to any liability of an Insured assumed under any contract or agreement; however, this exclusion does not apply to liability for Damages assumed under an Incidental Contract[.]

Ex. B., at 5 of 27.

43.     The above exclusion only applies to Coverage B, whereas the IBNR Policy only incorporates Coverage A. Therefore, the contractual liability exclusion does not apply to any claim made under the IBNR Policy.

44.     In response to the Foundation pointing out that the IBNR Policy does not preclude coverage for contractual liability and instead of citing a policy provision, Admiral stated that the Foundation "misses the point." Admiral's denial in this regard was not based on contractual policy language; instead, Admiral relies only on generalities. The most Admiral can muster is that "[C]ontractual liability does not *traditionally* apply to risks involve Professional Liability claims, such as a Medical Incident. Rather, such risks *typically* fall within General Liability coverage...."

45.     In addition to the Foundation's claims related to the Demands for Indemnification, the Foundation also has a claim that arose subsequent to receipt of the Demands for Indemnification when the Foundation was sued directly in the Anderson Action.

46.     As noted *supra*, on April 2, 2020, Plaintiff Tamia Lloyd, by and through her parent and guardian, Tamika Anderson, initially filed a Complaint alleging medical malpractice against various individuals and entities in connection with the delivery of the minor Plaintiff at Chestnut Hill Hospital on November 23, 2001.

47.     On May 19, 2020, the plaintiff in the Anderson Action filed a Motion to add claims directly against the Foundation.

48.     This development, which was communicated to Admiral in a letter dated June 3, 2020, constituted a Claim (again, meeting both definitions as set forth in the Policy) because the Foundation had written notice of intent to be brought into a lawsuit and the motion constituted "a specific circumstance . . . an Insured reasonably believes is likely to result in a demand for compensation for the injury or damage."

49.     Plaintiff's motion to amend the complaint was granted, and an Amended Complaint naming the Foundation as a defendant was filed on June 16, 2020.

50.     Through the Amended Complaint, plaintiff in the Anderson Action alleges:

> 7. At all times material hereto, Defendant, Green Tree Community Health Foundation, formerly known as Chestnut Hill Health Care Foundation (hereinafter "Green Tree"), was and/or is a corporation, partnership, professional corporation, professional association, health care system, health care clinic, hospital and/or other similar entity providing medical, nursing, health care and/or hospital services to the public, organized and existing under the laws of the Commonwealth of Pennsylvania, located in Philadelphia County at the above-captioned address. Plaintiff is asserting a medical professional liability action against this Defendant.
>
> 8. At all times material hereto, defendant, Green Tree, acted individually and/or by and through its predecessors, successors, subsidiaries, parent companies, agent, servants, workers and/or employees, including Defendant, Miriam R. Harden, M.D., The Women's Group of Chestnut Hill, Chestnut Hill Healthcare Medical Associates and those other healthcare providers whose names, handwriting, signature(s) and/or initials are contained in Ms. Anderson's records and/or who were involved in her care at the Defendant Hospital on November 20-23, 2001, including Linda K. Dunn, Angie Lee, M.D. Matin S. Mazidi, M.D., Tracy Stifnel, R.N., Julie Henry, R.N., Vivie Williams, R.N. Jeanne Brenna, R.N., Diane Lomas, R.N., Christ Brinkley, R.N., C.M., Claire Currier, RNC and Tara Bussett, RNC.

Am. Compl., Anderson Action.

51.     In a letter dated December 29, 2020, the Foundation again identified the improper liberties Admiral took in misconstruing the policy language to justify its continued denial of the

Case ID: 210503143

Foundation's claim. The Foundation once again demanded that Admiral rescind its coverage denial and agree to honor its coverage obligations that were triggered.

52.     Admiral responded in a letter dated February 3, 2021, wherein Admiral communicated its continued refusal to acknowledge that the Foundation was afforded coverage for its claims made pursuant to the IBNR Policy. In its letter, Admiral repeats self-serving conclusions by misreading the Policy language. For example, despite no support for such a conclusion, Admiral states that, "a 'Claim' under Section 1 [of the definition of "Claim"] can only refer to one filed by a person or patient who was allegedly injured as a result of the Medical Incident."

53.     The IBNR Policy's terms coupled with the absence of any applicable exclusion establish that the IBNR Policy provides insurance coverage for defense and indemnity of the Foundation's claim related to the Demands for Indemnification as well as the claim related to directly defending against allegations in the Anderson Action. Accordingly, Admiral's denial of coverage was plainly improper.

54.     Admiral's unreasonableness in construing the policy language and arriving at its unsupported coverage determinations constitutes bad faith.

## COUNT I – DECLARATORY JUDGMENT

55.     The Foundation has suffered a covered loss under the Policy.

56.     The Foundation's claim is covered under the Policy.

57.     The Foundation's claim is not excluded under the Policy.

58.     Admiral has unreasonably failed to acknowledge and accept coverage under the IBNR Policy, despite the IBNR Policy providing coverage for the claim.

59.     Admiral has known, or should have known that its denial of coverage is without factual or legal merit, yet it continues to refuse to acknowledge coverage.

60.     By reason of the foregoing, an actual and justiciable controversy exists between The Foundation and Admiral.

61.     Resolution of this controversy will establish the Foundation's right to recover defense and indemnity under the IBNR Policy.

62.     Accordingly, The Foundation seeks a declaration from this Court that Admiral is obligated under the IBNR Policy to provide coverage for the claim because the claim is properly covered under the IBNR Policy and no exclusions apply.

63.     The Foundation further seeks a declaration from this Court that the Foundation is entitled to all fees, including attorneys' fees, costs, pre-judgment interest, compensatory damages, direct and consequential damages, and all additional relief the Court deems just and equitable.

**WHEREFORE**, the Foundation prays for a determination by this Court in favor of the Foundation declaring that Admiral must indemnify the Foundation under the terms of the Policy, and must pay the Foundation for its attorneys' fees and costs, and any other and further relief as the Court deems just and equitable.

## COUNT II – BREACH OF CONTRACT

64.     The Foundation repeats and re-alleges each and every foregoing allegation as if fully set forth herein.

65.     The Policy that Admiral sold to the Foundation is valid and enforceable contract of insurance.

66.     The Foundation has complied with all conditions to coverage, including the payment of all insurance premiums due under the IBNR Policy, and satisfied all obligations to the extent that they have not been waived or abrogated by Admiral's conduct, omissions, or actions.

67.     The IBNR Policy imposes on Admiral the "right, duty and obligation to defend any suit against [The Foundation]" with respect to claims for which insurance is afforded under the IBNR Policy.

68.     Admiral has a duty to defend and indemnify the Foundation against the Demands for Indemnification made to the Foundation as well as for the allegations set forth in the Amended Complaint in the Anderson Action.

69.     Admiral's denial of the Foundation's claim is a breach of its obligations under the IBNR Policy.

70.     The Foundation's claim is covered under the IBNR Policy.

71.     The Foundation's claim is not excluded under the IBNR Policy.

72.     Although the Foundation timely submitted a claim for insurance benefits under the IBNR Policy, Admiral has failed to provide a defense or indemnity, constituting a breach of the terms of the IBNR Policy.

73.     As a result of Admiral's breach of contract, the Foundation has sustained and will continue to sustain damages it is entitled to recover pursuant to the IBNR Policy.

**WHEREFORE**, The Foundation hereby demands judgment against Admiral for the following relief:

(a) an award of damages, including but not limited to compensatory, direct, and consequential;

(b) pre- and post-judgment interest;

Case ID: 210503143

(c) attorneys' fees and costs; and,

(d) such other and further relief that the Court deems just and equitable under the circumstances.

## COUNT III – STATUTORY BAD FAITH

74. The Foundation repeats and re-alleges the allegations set forth in the foregoing paragraphs as though fully set forth herein.

75. 42 Pa. Cons. Stat. § 8371 provides as follows: "In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%. (2) Award punitive damages against the insurer. (3) Assess court costs and attorney fees against the insurer." 42 Pa. Cons. Stat. § 8371.

76. The relationship between Admiral and the Foundation is a fiduciary relationship requiring Admiral to act in the best interest of the Foundation as insured under the IBNR Policy.

77. The conduct of Admiral in failing to recognize and provide a defense or agree to indemnify the Foundation when coverage was triggered by the Demands for Indemnification and subsequently when it was again triggered by virtue of the Foundation's being made a defendant in the Anderson Action – especially when the IBNR Policy did not contain any exclusions that clearly precluded coverage – constitutes bad faith under 42 Pa. Cons. Stat. § 8371.

78. Admiral did not have a reasonable basis for denying coverage as the Policy provided coverage for the type of losses that the Foundation claimed and for the reasons requested, which are more fully set out above, and there were no applicable exclusions that would have precluded coverage as claimed by Admiral.

79.     However, in conscious or reckless disregard of the law and its duty to the Foundation, Admiral arbitrarily, in bad faith and in violation of its public duty, refused to provide coverage to the Foundation.

80.     Admiral's conduct as set forth here is prohibited under 42 Pa. Cons. Stat. § 8371.

81.     By virtue of Admiral's bad faith, and breach of its fiduciary and statutory duties, the Foundation claims punitive damages including but not limited to those provided pursuant to 42 Pa. Cons. Stat. § 8371.

**WHEREFORE**, the Foundation hereby demands judgment against Admiral for the following relief:

        (a)     punitive damages;

        (b)     prejudgment interest;

        (c)     attorneys' fees and costs; and,

        (d)     such other and further relief that the Court deems just and equitable under the circumstances.

## COUNT IV – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

82.     The Foundation repeats and re-alleges the allegations set forth in the foregoing paragraphs as though fully set forth herein.

83.     The Policy constitutes a valid contract of insurance coverage between the Foundation and Admiral.

84.     Admiral had a contractual obligation to treat the Foundation fairly and in good faith with respect to its interests in the proceeds of the Policy.

85.     Admiral breached its implied covenant to deal with the Foundation in good faith by, among other things:

8298572 v2

Case ID: 210503143

  a.  Intentionally or recklessly failing to treat the Foundation and its interests in the proceeds of the Policy fairly;

  b.  Intentionally or recklessly placing its own interests over and to the detriment of Plaintiff's interests, including but not limited to improperly denying the Foundation's claim;

  c.  Misconstruing the language of the policy, relying on alleged generalities and failing to provide to the Foundation an adequate explanation of the basis for Admiral's refusal to pay the Foundation's Claim despite the evidence demonstrating coverage.

86.  As a result of its breaches of the implied covenant of good faith and fair dealing, Admiral is liable to the Foundation for damages for all losses incurred to date by the Foundation or that may be incurred up to the applicable limits under the Policy, together with consequential damages, costs and disbursements of this action, including but not limited to reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**WHEREFORE**, the Foundation prays for a determination by this Court in its favor awarding The Foundation damages for all losses incurred to date by the Foundation, or which may be incurred up to the applicable limits under the Policy, together with consequential damages, costs and disbursements of this action, including but not limited to pre-judgment and post-judgment interest, reasonable attorneys' fees and costs, and any other and further relief as the Court deems just and equitable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Foundation respectfully requests that judgment be entered against Admiral and relief be granted as follows:

(a)     compensatory damages;

(b)     consequential damages;

(c)     punitive damages;

(d)     prejudgment interest;

(e)     attorneys' fees and costs; and,

(f)     such other and further relief that the Court deems just and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

The Foundation hereby demands a trial by jury on all claims so triable.

Dated: June 4, 2021.                      **FLASTER GREENBERG, PC**

                                       By: _/s/ Arthur R. Armstrong_

                                       Arthur R. Armstrong, Esq.
                                       _Attorneys for Plaintiff_

### Incurred But Not Reported (IBNR) Coverage Agreement

Filed and Attested by the
Office of Judicial Records
04 JUN 2021 03:50 pm
M. BRYANT

| | |
|---|---|
| Name Insured: | Green Tree Community Health Foundation |
| Company: | Admiral Insurance Company |
| Agreement Period: | October 1, 2011 to Indefinite |
| Retroactive Date: | March 1, 1984 |
| Agreement Number: | ERP-PA-10141-1011-01 |
| Limit of Liability: | $1,000,000 each Loss Event/$5,000,000 Agreement Period Aggregate |
| Premium: | $875,000 Fully Earned and Non -Refundable |

In consideration of the premium charged, it is understood and agreed that except as otherwise amended by this Coverage Agreement, the insurance afforded herein shall follow the terms, conditions, definitions and exclusions of the Governing Policy Form designated below:

Governing Policy Form:   Healthcare Facility Excess Liability Insurance (SAE C/O 08/07)
(Coverage A only)

It is further understood and agreed that the Governing Policy Form, together with the provisions of this Coverage Agreement, constitute the policy as referred to hereinafter.

Section I. "Insuring Agreements:" is deleted in its entirety and replaced with the following:

I.    INSURING AGREEMENTS:

    A.    COVERAGE A:   HEALTHCARE FACILITY EXCESS PROFESSIONAL LIABILITY (Claims-Made):

        1.   The Company agrees to pay on behalf of the **Insured** for **Loss** because of injury caused by a **Medical Incident** that happened at Chestnut Hill Hospital after the **Retroactive Date** and prior to March 1, 2005. This coverage applies only when the **Claim** is first made against the **Insured** and reported to the Company during the Agreement Period stated above.

        2.   The Limits of Liability apply to **Loss; Expenses, Costs and Interest.** The Company will, subject to the applicable Limit of Liability, pay for **Expenses, Costs and Interest** incurred as a result of **Claims** or **Suits** under COVERAGE A.

        3.   The Company has no obligation to pay on behalf of the **Insured** for **Loss** in excess of the applicable Limit of Liability set forth above.

**Incurred But Not Reported (IBNR) Coverage Agreement (Con't)**

Section III. "Exclusions" is amended as follows:

Exclusion EE. PRIOR ACTS is deleted in its entirety and replaced with the following:

EE. PRIOR ACTS

This insurance does not apply to:

1.  any **Claim** that the **Named Insured's** Risk Management or Claim Department is aware of prior to the inception date of the Agreement Period set forth above.

2.  any **Claim** arising out of a **Loss Event** which took place prior to the **Retroactive Date** set forth above.

3.  any **Claim** that was reported to any other insurer prior to the inception date of the Agreement Period set forth above.

Section IV. "Limits of Liability" is deleted in its entirety and replaced with the following:

IV.   LIMITS OF LIABILITY

A.  The Company's liability under this Agreement, regardless of the number of persons or organizations who are **Insureds**, the number of coverages afforded under the Insuring Agreements, or the number of **Claims** made or **Suits** brought against any and all **Insureds** shall be determined in accordance with the following provisions:

1.  The **Loss Event** Limit of Liability set forth above is the most the Company will pay for all covered **Loss** resulting from any one **Loss Event** or series of related **Loss Events**.

a.   all **Claims** made by all persons for injury to one **Patient** and his or her family, heirs, successors or assigns, arising out of healthcare **Professional Services** provided to one person or **Patient** shall be considered one **Medical Incident** and one **Loss Event**. For purposes of determining the manner in which coverage is afforded by this Agreement, it is agreed that one person or one **Patient** shall include the parents and their "Fetus". "Fetus" is defined as the unborn offspring, or multiple offspring, after fertilization until birth.

b.   all **Claims** arising out of **Bodily Injury** to a **Patient** will be considered one **Medical Incident** and one **Loss Event**.

c.   all **Claims** made by all persons arising out of the same or related acts or omissions resulting from research or development will be considered one **Medical Incident** and one **Loss Event**.

d.   all **Claims** made by all persons arising out of the same or related act or omission by a formal accreditation board or committee; medical standards board or committee; or other similar board or committee will be considered one **Medical Incident** and one **Loss Event**.

**Incurred But Not Reported (IBNR) Coverage Agreement (Con't)**

    2.    Subject to subparagraph 1. above, the Company's liability for all **Loss** because of all injuries arising out of all **Loss Events** to which this insurance applies shall not exceed the Agreement Period Aggregate set forth above.

B.    Only the Coverage Agreement in effect when the **Claim** was first made and reported will apply and under no circumstances will any other Insuring Agreement or Agreement issued by the Company apply.

C.    Nothing contained in this Section shall affect the Company's undertaking to pay the amounts described in Section VII. CONDITIONS, C. APPEALS.

Section VII. CONDITIONS, is amended as follows:

Condition F. , CANCELLATION is deleted.

Condition G.,   COMPANY'S RIGHTS AND OBLIGATION, is deleted in its entirety and replaced with the following:

    G. COMPANY'S RIGHTS AND OBLIGATION

    1.    The Company shall have the exclusive right, duty and obligation to defend any suit against an Insured with respect to which insurance is afforded under the policy. The company shall have no duty or obligation to defend any suit against an Insured seeking damages with respect to which coverage is not afforded under the policy.

Condition H.,   **EXPENSES, COSTS AND INTEREST,** is deleted in its entirety and replaced with the following:

    H. EXPENSES, COSTS AND INTEREST

        1. **Expenses, costs and interest** will be paid by the Company.

        2. **Expenses, costs and interest** are always included within, and are not in addition to, the Company's Limit of Liability stated above.

Condition I.,   **EXTENDED REPORTING PERIOD** OPTION, is deleted in its entirety.

Condition K.,   **INSURED'S DUTIES IN THE EVENT OF CLAIM OR SUITS,** is deleted in its entirety and replaced with the following:

    K. **INSURED'S** DUTIES IN THE EVENT OF **CLAIM** OR **SUITS**

    1.    In the event of a **Loss Event** the **Insured** must, as a condition to coverage under Agreement:

        a.    Give written notice to the Company, as soon as practicable of any **Claim**

        b.    Immediately forward to the Company a complete copy of every demand, notice, summons or other process received individually or through a representative in connection with any **Suit** or **Claim** seeking **Damages.**

Case ID: 210503143

**Incurred But Not Reported (IBNR) Coverage Agreement (Con't)**

c.    Maintain accurate descriptive records of all healthcare services rendered, which records shall be available to the Company as they relate to any **Claim** or **Loss Event** to which this Agreement applies.

d.    Include in all reports, provided in accordance with this Condition, reasonably obtainable information with respect to the time, date, place, circumstances, **Insureds** involved, details regarding the alleged injury, **Bodily Injury**, names of any potential witnesses; name of the **Patient** and claimants; the type of healthcare **Professional Services** rendered and the extent and type of **Claim** or **Suit** anticipated. All notices must be in writing and addressed to the Company.

e.    Cooperate with the Company, and upon the Company's request, assist in making settlements, in the conduct of a **Suit** and in enforcing any right of contribution or indemnity against any person or organization who may be liable to an **Insured** because of injury or damage with respect to which insurance is or may be afforded under this Agreement. Attend all hearings and trials and assist in securing and giving evidence and obtaining witnesses.

Condition L., MAINTENANCE OF UNDERLYING INSURANCE; RESPONSIBILITY FOR UNDERLYING AMOUNTS, is deleted.

Condition M., OBLIGATIONS OF THE FIRST NAMED INSURED, is deleted.

Condition S., UNDERLYING AMOUNTS, is deleted.

Authorized Representatives:

_____        december 13, 2011
Admiral Insurance Company              Date

_____        11/15/2011
Green Tree Community Health Foundation    Date

HEALTHCARE FACILITY EXCESS LIABILITY INSURANCE

<u>CONTENTS</u>



Filed and Attested by the
Office of Judicial Records
04 JUN 2021 02:50 pm
E. BRYANT

I.   INSURING AGREEMENTS:

COVERAGE A:  Healthcare Facility Excess Professional Liability (Claims-Made)

COVERAGE B:  Healthcare Facility Excess General Liability

COVERAGE C:  Follow-Form Excess Liability

II.  WHEN A **CLAIM** IS TO BE CONSIDERED AS FIRST MADE AND REPORTED

III. EXCLUSIONS

IV.  LIMITS OF LIABILITY

V.   DEFINITIONS

VI.  **INSUREDS**

VII. CONDITIONS

SAE C/O 001 (08/07)

Case ID: 210503143

# HEALTHCARE FACILITY EXCESS LIABILITY INSURANCE

THIS POLICY INCLUDES INSURING AGREEMENTS THAT PROVIDE COVERAGE ON A CLAIMS-MADE BASIS. UNDER THESE INSURING AGREEMENTS ONLY THOSE **CLAIMS** THAT ARE FIRST MADE AND REPORTED TO THE COMPANY IN ACCORDANCE WITH THE PROVISIONS OF THIS POLICY WILL BE COVERED. PLEASE READ THE POLICY CAREFULLY.

Coverage under this policy is limited to **Loss Events** in the **Policy Territory**. The Company's obligation to indemnify the **Insured** for **Loss** in excess of the **Underlying Amounts** or **Underlying Limits of Liability** shall not exceed the Limit of Liability set forth in Item 5. of the Declarations. Please read the policy carefully.

In consideration of the payment of premium and subject to the Insuring Agreements, Definitions, Conditions, Exclusions and other terms contained in this policy and in reliance upon statements made in the application and in the Declarations, the Company agrees with the **Insureds** as follows

I.    **INSURING AGREEMENTS**

    A.   COVERAGE A: HEALTHCARE FACILITY EXCESS PROFESSIONAL LIABILITY (Claims-Made):

        1.   The Company agrees to indemnify the **Insured** for **Loss** in excess of the **Underlying Amounts** because of injury caused by a **Medical Incident** that happens after the **Retroactive Date** set forth in Item 7. of the Declarations and prior to the expiration or termination date of this policy. This coverage applies only when the **Claim** is first made against the **Insured** and reported to the Company during the Policy Period stated in Item 3. of the Declarations or any applicable **Extended Reporting Period**.

        2.   If Item 5. of the Declarations indicates that the Limits of Liability apply to **Loss; Expenses, Costs and Interest**; and pro rata reimbursement of **Expenses, Costs and Interest** the Company will, subject to the applicable Limit of Liability, reimburse the **Insured** for **Expenses, Costs and Interest** incurred as a result of **Claims** or **Suits** under COVERAGE A. The Company will reimburse the **Insured** for payment of **Expenses, Costs and Interest** incurred in the same ratio that the Company's proportion of the **Loss** paid in settlement of **Claims** and in satisfaction of judgments bears to the total amount of **Loss** paid.

        3.   COVERAGE A applies only if the **Underlying Amounts** have been actually paid. **Expenses, Costs and Interest** will not reduce the **Underlying Amounts** unless specifically designated in the Schedule of Underlying.

        4.   Under COVERAGE A, the Company has no obligation to indemnify the **Insured** for **Loss** in excess of the applicable Limit of Liability set forth in Item 5. of the Declarations.

    B.   COVERAGE B: HEALTHCARE FACILITY EXCESS GENERAL LIABILITY:

        1.   Bodily Injury **and** Property Damage:

        The Company agrees to indemnify the **Insured** for **Loss** in excess of the **Underlying Amounts** because of **Bodily Injury** or **Property Damage**. This insurance applies only to **Bodily Injury** or **Property Damage** that is sustained during the Policy Period caused by an **Occurrence**.

        2.   Personal Injury and Advertising Injury:

        The Company agrees to indemnify the **Insured** for **Loss** in excess of the **Underlying Amounts** because of **Personal Injury** or **Advertising Injury** arising out of a covered offense committed during the Policy Period.

        3.   If Item 5. of the Declarations indicates that the Limits of Liability apply to **Loss; Expenses, Costs and Interest**; and pro rata reimbursement of **Expenses, Costs and Interest** the Company will, subject to the applicable Limit of Liability, reimburse the **Insured** for **Expenses, Costs and Interest** incurred as a result of **Claims** or **Suits** under COVERAGE B. The Company will reimburse the **Insured** for payment of

**Expenses, Costs and Interest** incurred in the same ratio that the Company's proportion of the **Loss** paid in settlement of **Claims** and in satisfaction of judgments bears to the total amount of **Loss** paid.

4.   COVERAGE B applies only if the **Underlying Amounts** have been actually paid. **Expenses, Costs and Interest** will not reduce the **Underlying Amounts** unless specifically designated in the Schedule of Underlying.

5.   Under COVERAGE B, the Company has no obligation to indemnify the **Insured** for **Loss** in excess of the applicable Limit of Liability set forth in Item 5. of the Declarations.

C.   COVERAGE C:  FOLLOW-FORM EXCESS LIABILITY

1.   The Company agrees to indemnify the **Insured** for **Loss** covered by the **Underlying Insurance**.

2.   The provisions of the **Underlying Insurance** are incorporated as part of COVERAGE C: FOLLOW-FORM EXCESS LIABILITY, except for:

   a.   any provision which applies to or imposes an obligation or duty to defend;

   b.   the Limits of Liability; and

   c.   any other term or condition which is inconsistent with any term or condition of this policy.  In the event of any inconsistency, the terms and conditions of this policy will control.

3.   The Company will indemnify the **Insured** for **Loss** covered by the **Underlying Insurance** and this Insuring Agreement, only after the **Underlying Limits of Liability** have been paid.

4.   Under COVERAGE C, the Company's obligation to indemnify the Insured for **Loss** in excess of the **Underlying Limits of Liability** shall not exceed the Limit of Liability set forth in Item 5. of the Declarations.  COVERAGE C applies only if the **Underlying Limit of Liability** has been actually paid.

II.   **WHEN A CLAIM IS TO BE CONSIDERED AS FIRST MADE AND REPORTED**

A.   With respect to COVERAGE A:

1.   A **Claim** shall be considered first made on the date the **Named Insured's** Risk Management or Claim Department becomes aware of the injury or adverse outcome.

2.   A **Claim** involving the injuries or adverse outcomes listed under 2., a.–h., which the **Named Insured's** Risk Management or Claim Department believes is reasonably likely to result in a demand for **Damages**, shall be considered to have been first reported to the Company on the date it receives the **Named Insured's** detailed written report at the address set out below:

   Admiral Insurance Company
   c/o Claims Department
   Berkley Medical Excess Underwriters, LLC
   390 South Woods Mill Road, Suite 125
   Chesterfield, MO  63017

   a.   unexpected deaths, suicide, or cardiac/respiratory arrest;

   b.   unanticipated neurological, sensory and/or systemic deficits, brain damage, permanent paralysis, paraplegia and quadriplegia, partial or complete loss of sight or hearing, sepsis or kidney failure;

   c.   birth related injuries, fetal or maternal death, anesthesia related injuries, births with an Apgar score below 5, infant resuscitation, dislocations and fractures;

   d.   thermal, chemical, radiological or electrical burns;

SAE C/O 001 (08/07)

e.  severe internal injuries, organ lacerations, infections, foreign body retention, sensory or reproductive organ injury;

f.  substantial disability, fractures, disfigurement, or amputation;

g.  any **Claim** reserved at $250,000 or more; or

h.  any other **Claim** likely to result in significant erosion or exhaustion of the **Underlying Amount** or **Underlying Insurance**.

3.  The detailed written report of the injuries or adverse outcomes listed under 2., a.–h. must be received by the Company during the Policy Period in effect when the **Named Insured's** Risk Management or Claim Department becomes aware that a demand for **Damages** is likely to result from the **Medical Incident** and must include:

a.  a description of the **Medical Incident**;

b.  the date of the **Medical Incident**;

c.  the name of the person who was injured;

d.  the names of the **Insureds** involved in the **Medical Incident**; and

e.  any **Suit** papers or written demand for **Damages**.

4.  All **Claims** not resulting from the injuries and/or adverse outcomes described in 2., a.-h. shall be considered to have been first reported to the Company on the date it first receives a quarterly Loss Run describing the **Claim** as required by Section VII. CONDITIONS, K. **INSURED'S** DUTIES IN EVENT OF **CLAIM** OR **SUITS**.  The Loss Run must be received at the address set out under 2. above.

5.  All **Claims** arising out of the same **Medical Incident** causing injury to a **Patient** shall be considered as having been made at the time the **Claim** was first made and reported.

6.  The following shall not be considered as a report of a **Claim** under this policy:

a.  a report of a **Medical Incident** or **Occurrence** that is made as part of an engineering, loss control or risk management program; or

b.  incident reports.

B.  To meet the requirement that a **Claim** be first made against the **Insured** and reported to the Company during the Policy Period, the **Insured** must comply with the provisions of this Section.  Nothing contained in this Section shall affect the **Insured's** obligations to comply with the provisions of Section VII. CONDITIONS, K. **INSURED'S** DUTIES IN EVENT OF **CLAIM** OR **SUITS**.

III.   EXCLUSIONS

A.  AIRCRAFT, **AUTOMOBILE** OR WATERCRAFT

1.  Except to the extent coverage is provided by applicable **Underlying Insurance** under COVERAGE C, this insurance does not apply to any liability arising out of the ownership, maintenance, use, or entrustment to others, including the loading or unloading of:

a.  an airplane, helicopter, aircraft or any aviation related activity;

b.  an **Automobile**, motorcycle, moped, truck, three-wheeler, snowmobile or other motor vehicle of whatever type or nature, and whether designed for travel on or off public roads; or

SAE C/O 001 (08/07)

Case ID: 210503143

      c.     a motor or sail boat or other watercraft, of whatever type or nature, owned, operated, rented by or loaned to any **Insured**.

   2.    This exclusion does not apply to **Bodily Injury** resulting from the loading or unloading of a **Patient** on the **Insured's** premises if the loading or unloading is associated with healthcare **Professional Services** provided by an **Insured**.

B.   ALIENATED PREMISES

This insurance does not apply under COVERAGE B to liability arising out of **Property Damage** to premises alienated by the **Named Insured**.

C.   ASBESTOS

This insurance does not apply to any liability based upon or arising out of asbestos, including, but not limited to the:

   1.    manufacture, mining use, sale, or exposure to asbestos products, fibers or dust;

   2.    transportation, storage or disposal of asbestos or goods or products containing asbestos;

   3.    removal of asbestos from any goods, products or structures; or

   4.    inhalation, ingestion or physical exposure to asbestos or goods or products containing asbestos.

D.   **CLAIMS** MADE DURING AN **EXTENDED REPORTING PERIOD**

This insurance does not apply to any liability arising out of a **Claim** that is first made and reported to the Company during an applicable **Extended Reporting Period** if there is any other insurance that applies to the **Claim**.

E.   CONTRACTUAL LIABILITY

This insurance does not apply under COVERAGE B to any liability of an **Insured** assumed under any contract or agreement; however, this exclusion does not apply to liability for **Damages** assumed under an **Incidental Contract**, including but not limited to a warranty of fitness or quality of the **Insured's Products** or a warranty that work performed by or on behalf of the **Named Insured** will be done in a workmanlike manner.

F.   CRIMINAL OR KNOWINGLY WRONGFUL ACTS

   1.    This insurance does not apply to any liability of an **Insured** based upon or arising out of the performance of any unlawful, dishonest, criminal or knowingly wrongful act by any **Insured**.

   2.    This exclusion does not apply to liability of the **Named Insured** or its officers or managing agents when the criminal or knowingly wrongful act takes place without the knowledge and/or consent of an officer or managing agent of the **Named Insured**.

G.   DAMAGE TO IMPAIRED PROPERTY OR PROPERTY NOT PHYSICALLY DAMAGED

   1.    This insurance does not apply under COVERAGE B to any liability for or arising out of loss of use of tangible property which has not been physically damaged or destroyed resulting from:

       a.     a delay in or lack of performance by or on behalf of an **Insured** of any contract or agreement; or

       b.     the failure of an **Insured's Products** or work performed by or on behalf of an **Insured** to meet the level of performance, quality, fitness or durability warranted or represented by an **Insured**.

   2.    This exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical damage to or destruction of an **Insured's Products** or work performed by or on behalf

SAE C/O 001 (08/07)

of an **Insured** after such products or work have been put to use by any person or organization other than an **Insured**.

H.   DAMAGE TO THE **INSURED'S PRODUCTS**

This insurance does not apply under COVERAGE B to **Property Damage** to an **Insured's Products** arising out of the products or any part of the products.

I.   DAMAGE TO PROPERTY IN THE CARE, CUSTODY OR CONTROL OF AN **INSURED**

1.   This insurance does not apply under COVERAGE B to **Property Damage** to:

   a.   property owned, occupied or rented by any **Insured**;

   b.   property used by any **Insured**;

   c.   property in any **Insured's** care, custody or control;

   d.   property over which any **Insured** is exercising physical control for any reason; or

   e.   premises any **Insured** sells, gives away or abandons, if the **Property Damage** arises out of any part of those premises.

2.   This exclusion does not apply to **Property Damage** to the property of others resulting from a fire at premises rented to or leased by an **Insured**.

J.   DAMAGE TO THE **INSURED'S** WORK

This insurance does not apply under COVERAGE B to **Property Damage** to work performed by or on behalf of an **Insured** arising out of the work or any part of the work, or out of materials, parts or equipment furnished in connection with the work.

K.   **DISCRIMINATION**

This insurance does not apply to any liability based upon or arising out of **Discrimination**.

L.   EMPLOYEE BENEFITS

Except as may be provided by applicable **Underlying Insurance** under COVERAGE C or by endorsement, this insurance does not apply to any liability based upon or arising out of the administration of any **Insured's** Employee Benefits program including, but not limited to:

1.   group life, health, dental or optical insurance;

2.   health maintenance organizations (HMO) or preferred provider organizations (PPO);

3.   profit-sharing, savings, employee stock subscription or employee loan programs;

4.   pension, retirement or salary continuation plans;

5.   employee discount, travel or vacation plans; or

6.   any plan or program that is similar to those listed in items 1.-5. of this exclusion.

M.   EMPLOYMENT PRACTICES

1.   This insurance does not apply to any liability based upon or arising out of:

- 6 -

SAE C/O 001 (08/07)

a.  refusal to employ;

b.  termination of employment;

c.  demotion, evaluation, reassignment, or discipline;

d.  coercion, defamation, harassment, humiliation, **Discrimination**, or other employment related practices, policies, acts or omissions; or

e.  consequential injury, **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** as a result of the conduct listed in items a.-d. of this exclusion.

2.  This exclusion does not apply under COVERAGE A to liability that results from the actions taken by a duly authorized professional committee of a **Named Insured** or its duly organized medical staff which are formally approved by the **Named Insured**; but this exception applies only if the liability results from activities that are directly related to peer review and credentialing.

N.  FAILURE TO PERFORM UNDER A CONTRACT

This insurance does not apply under COVERAGE B to any liability arising out of an **Insured's** failure to perform under a contract or agreement.

O.  INCORRECT DESCRIPTION

This insurance does not apply under COVERAGE B to **Advertising Injury** arising out of an incorrect description or mistake in an advertised price of a product or service sold or offered for sale.

P.  INJURY TO AN EMPLOYEE OR LEASED WORKER

1.  This insurance does not apply under COVERAGE A or COVERAGE B to any liability of an **Insured** arising out of **Bodily Injury** to an employee of any **Insured**. For the purposes of this exclusion employee includes a leased worker. This exclusion applies to any **Claim** that may be made by the spouse or relative of an employee and to any obligation an **Insured** may have to indemnify another because of **Bodily Injury** to an employee.

2.  This exclusion does not apply under COVERAGE A to **Bodily Injury** sustained by an employee while receiving healthcare **Professional Services** from another **Insured** which result in a **Medical Incident** covered by this policy.

Q.  **INSURED VS. INSURED**

1.  This insurance does not apply to any liability arising out of a **Claim** made by any **Insured** against any other **Insured**.

2.  This exclusion does not apply under COVERAGE A to **Bodily Injury** sustained by an **Insured** while receiving healthcare **Professional Services** from another **Insured** which results in a **Medical Incident** otherwise covered by this policy.

R.  INTENTIONAL INTERFERENCE WITH THE RIGHTS OF OTHERS

This insurance does not apply under COVERAGE B to liability for **Personal Injury** or **Advertising Injury** arising out of:

1.  an **Insured's** intentional interference with the rights of others; or

2.  a statement made or published by or at the direction of an **Insured** with malice; or

3.  a statement made by an **Insured** with knowledge that the statement was false.

SAE C/O 001 (08/07)

Case ID: 210503143

S.   LIQUOR LIABILITY

This insurance does not apply under COVERAGE B to **Bodily Injury** or **Property Damage** for which the **Insured** or his indemnitee may be held liable:

1.   as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages; or

2.   if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed:

   a.   by, or because of violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage; or

   b.   by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person.

   Part b. of this exclusion does not apply to liability of the **Insured** or his indemnitee as an owner or lessee described in 2. above; nor does this exclusion apply with respect to liability of the **Insured** or his indemnitee arising out of the giving or serving of alcoholic beverages when incidental to the **Named Insured's** business, provided the **Named Insured** is not engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages.

T.   MANAGED CARE

This insurance does not apply under COVERAGE A to any liability arising out of the operation, ownership, management or control of any health maintenance organization (HMO) or preferred provider organization (PPO) or other similar organization. However, this exclusion does not apply where the **Insured's** liability is based solely on its status as a provider of healthcare **Professional Services** to the enrollees of an HMO, PPO or other similar organization that is not owned, managed or controlled by the **Insured**.

U.   MANAGEMENT SERVICES

This insurance does not apply to any liability arising out of management services provided by the **Insured**, or independent contractors retained by the **Insured**, to hospitals or other healthcare facilities not owned by the **Named Insured**. This exclusion does not apply to liability arising out of management services provided by an **Insured** under a contract if the contract is disclosed to the Company and specifically endorsed on the policy. This exclusion applies whether or not monetary or other consideration is received by an **Insured** for management services.

V.   MANDATORY **AUTOMOBILE** INSURANCE

This insurance does not apply under COVERAGE C to any liability or obligation arising out of an **Automobile** No-Fault Reparations Law for Personal Injury Protection, however tilted or styled, or any **Automobile** uninsured or underinsured motorists act, law or obligation.

W.   MATERIAL PUBLISHED PRIOR TO POLICY PERIOD

This insurance does not apply under COVERAGE B to **Personal Injury** or **Advertising Injury** arising out of a publication or utterance if the first publication or utterance of the same or similar material was made prior to the effective date of this policy.

X.   **MOBILE EQUIPMENT**

This insurance does not apply under COVERAGE B to **Bodily Injury** or **Property Damage**;

1.   arising out of and in the course of the transportation of **Mobile Equipment** by an **Automobile** owned or operated by or rented or loaned to any **Insured**;

SAE C/O 001 (08/07)

2. arising out of the ownership, maintenance, operation, use, existence, loading or unloading of any **Mobile Equipment** while being used in any pre-arranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation of any such contest or activity.

Y. **MOLD**

This insurance does not apply to any liability arising out of the actual or threatened growth, release, transmission, migration, dispersal, inhalation, absorption, ingestion, physical contact, or exposure to **Mold, Spores, Fungus, Mildew, Yeast and/or other Toxins**, whether or not the **Mold, Spores, Fungus, Mildew, Yeast and/or other Toxins** is or was at any time airborne as a particle, located in or on real property, personal property, product, work, premises, site, location, or any other tangible property, transmitted in any fashion or found or contained in any material whatsoever; or to any **Loss**, cost or expense arising directly or indirectly out of any:

1. request, demand or order that any **Insured** or others test for, monitor, sample, clean up, remediate, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **Mold, Spores, Fungus, Mildew, Yeast and/or other Toxins** or products and materials containing one or more of them;

2. **Claim** or **Suit** by or on behalf of a governmental authority for damages because of investigating, testing for, monitoring, sampling, cleaning up, remediation, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of **Mold, Spores, Fungus, Mildew, Yeast and/or other Toxins** or products and materials containing one or more of the aforementioned;

3. actual, alleged, possible or threatened **Contamination** of any part of the **Environment**;

4. fines, penalties, or costs or assessments of any kind or for any purpose arising from any **Contamination** which any **Insured** is directed to pay;

5. supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs a., b., c. and d. above;

6. obligation to share damages with or repay someone else who must pay damages because of any injury under paragraphs a., b., c., d. and e. above;

7. devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space, in connection with any **Mold, Spores, Fungus, Mildew, Yeast and/or other Toxins**.

Z. NUCLEAR MATERIAL

This insurance does not apply to any liability resulting directly or indirectly from **Nuclear Materials, Waste Materials, Radioactive Materials**, or the **Hazardous Properties** of **Nuclear Materials, Radioactive Materials**, or **Waste Materials**, or from any radiation or **Radioactivity**, unless:

1. the liability is a result of a **Medical Incident** for which coverage is afforded under COVERAGE A; or

2. the liability arises from Bodily Injury or property damage caused by an Occurrence, arising out of the use or intended use of Nuclear Materials, Waste Materials, Radioactive Materials, or the Hazardous Properties of Nuclear Materials, Radioactive Materials or Waste Materials, or from radiation or Radioactivity, in the furnishing of healthcare **Professional Services** and only at premises owned, operated or controlled by, or rented to the Named Insured and for which coverage is afforded under COVERAGE A or COVERAGE B.

AA. OTHER BUSINESS PURSUITS

This insurance does not apply under COVERAGE A to any liability arising from the activities of any **Insured** acting in the capacity of proprietor, administrator, superintendent, executive officer, director, partner, employee or trustee of any hospital, clinic, laboratory or other business enterprise not listed as a **Named Insured** under this policy.

BB. **PATIENT** INJURY

SAE C/O 001 (08/07)

Case ID: 210503143

This Insurance does not apply, under COVERAGE B or COVERAGE C to any liability arising out of **Bodily Injury** to a **Patient**.

CC. POLLUTION

This insurance does not apply to any liability for:

1.  injury or damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**:

    a.  at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **Insured**;

    b.  at or from any premises, site or location which is or was at any time used by or for any **Insured** or others for the handling, storage, disposal, processing or treatment of waste;

    c.  which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **Insured** or any person or organization for whom you may be legally responsible; or

    d.  at or from any premises, site or location on which any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured's** behalf are performing operations:

        i.  if the **Pollutants** are brought on or to the premises, site or location in connection with such operations by such **Insured**, contractor or subcontractor; or

        ii. if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**.

    Subparagraph a. does not apply to **Bodily Injury** that is sustained within a building owned or leased by an **Insured** that is caused by fumes, smoke, vapor or soot from equipment used to heat or cool the building.

    Subparagraphs a. and d. do not apply to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a "hostile fire". As used in this exclusion, a "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

2.  Any **Loss**, cost or expense arising out of any:

    a.  Request, demand or order that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

    b.  **Claim** or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

SAE C/O 001 (08/07)

Case ID: 210503143

DD. PRODUCT RECALL

This insurance does not apply under COVERAGE B to liability arising out of the withdrawal, inspection, repair, replacement, recall, return, or loss of use of an **Insured's Products** or work completed by or for an **Insured** or of any property of which such products or work form a part.

EE. PRIOR ACTS

This insurance does not apply under COVERAGE A to:

1. any **Claim** that the **Named Insured's** Risk Management or Claim Department is aware of prior to the effective date of this policy set forth in Item 3. of the Declarations;

2. any **Claim** arising out of a **Loss Event** which took place prior to the **Retroactive Date** set forth in Item 7. of the Declarations; and

3. any **Claim** that was reported to the Company or any other insurer prior to the effective date of this policy set forth in Item 3. of the Declarations.

FF. PROFESSIONAL SERVICES

This insurance does not apply under COVERAGE B or C to any liability arising out of the rendering of or failure to render any **Professional Service**, or any liability because of a negligent act, error or omission in conjunction with any **Professional Service**. This exclusion does not apply to COVERAGE C to the extent coverage is afforded by the applicable **Underlying Insurance** for the liability resulting from the **Professional Service**.

GG. PROPERTY OWNED OR CONTROLLED BY AN **INSURED**

This insurance does not apply under Coverage B to any liability arising out of **Property Damage** to:

1. property an **Insured** owns, rents, or occupies;

2. premises an **Insured** sells, gives away or abandons, if the **Property Damage** arises out of any part of the premises;

3. property loaned to an **Insured**;

4. personal property in the care, custody or control of an **Insured**;

5. that particular part of real property on which an **Insured** or any contractors or subcontractors working directly or indirectly on behalf of an **Insured** are performing operations, if the **Property Damage** arises out of the operations; or

6. that particular part of any property that must be restored, repaired or replaced because an **Insured's** work was incorrectly performed on it.

HH. SEXUAL MISCONDUCT

1. This insurance does not apply to any liability of an **Insured** arising out of a romantic or sexual relationship or actual or alleged sexual intimacy, sexual molestation, sexual harassment, sexual exploitation, or sexual assault of any kind.

2. This exclusion does not apply to liability of the **Named Insured** or its officers or managing agents who had no knowledge of the romantic or sexual relationship or the sexual misconduct or activity.

II. **TERRORISM**

SAE C/O 001 (08/07) Case ID: 210503143

1.  This insurance does not apply to any liability caused by, contributed to or in any way arising directly or indirectly out of or in connection with **Terrorism** including, but not limited to any contemporaneous or ensuing injury or damage caused by fire, looting or theft.

2.  **Terrorism** means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate or coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

3.  **Terrorism** shall also include any act which is verified or recognized by the United States Government as an act of **Terrorism**.

JJ.  UNFAIR COMPETITION AND BUSINESS PRACTICES

This insurance does not apply to any liability arising out of unfair or infringing business activities or methods of competition including but not limited to:

1.  violation or alleged violation of any antitrust law, price fixing; or restraint of trade law;

2.  a dispute over revenue, profits or fees;

3.  violation of any deceptive trade practices statute; or

4.  under COVERAGE B, **Advertising Injury** arising out of the infringement of any intellectual property right of others, except the infringement of copyright, title or slogan in an advertisement of an **Insured's** products or services.

KK.  UNLAWFUL **PATIENT** TRANSFER

1.  This insurance does not apply under COVERAGE A to any liability of any **Insured** arising out of the alleged transfer of a **Patient** in violation of any statute or regulation prohibiting **Patient** transfers or regulating the circumstances under which **Patient** transfers may be effected.

2.  This exclusion shall not apply to liability resulting from a **Patient** transfer if the **Claim** results from a **Medical Incident** to which this insurance applies.

LL.  UNIDENTIFIED JOINT VENTURE OR PARTNERSHIP

This insurance does not apply to the liability of any **Insured** for the activities of a joint venture or partnership that is not identified in the Declarations as a **Named Insured**.

MM.  VIOLATION OF A STATUTE

This insurance does not apply to any liability arising out of the willful violation of a statute or ordinance committed by or with the knowledge or consent of an **Insured**.  This exclusion includes, but is not limited to violation of RICO or any similar state law.

NN.  WAR

This insurance does not apply to any liability of an **Insured** due to war, whether or not declared, civil war, insurrection, rebellion, act of revolution or to any act or condition incident to any of the foregoing.

OO.  WORKERS' COMPENSATION AND SIMILAR LAWS

This insurance does not apply to any liability under or obligation created by any Workers' Compensation, Unemployment Compensation or Disability Benefits Law, the Employee Retirement Income Security Act of 1974,

as amended and in effect from time to time, or any rule or regulation promulgated thereunder, or under any similar law; and to any liability arising out of sickness, disease or death resulting therefrom of any employee of the **Insured**, if such sickness, disease or death arose out of, or in the course of the employment or was aggravated by the employment.

IV.   <u>LIMITS OF LIABILITY</u>

   A.   The Company's obligation to indemnify the **Named Insured** applies only after the **Underlying Amounts** or the **Underlying Limits of Liability** have been paid as a result of a **Loss Event** covered by this policy.

   B.   The Company's liability under this policy, regardless of the number of persons or organizations who are **Insureds**, the number of coverages afforded under the Insuring Agreements, or the number of **Claims** made or **Suits** brought against any and all **Insureds** shall be determined in accordance with the following provisions:

      1.   The **Loss Event** Limit of Liability set forth in Item 5.A. of the Declarations is the most the Company will pay for all covered **Loss** resulting from any one **Loss Event** or series of related **Loss Events**.

         a.   all **Claims** made by all persons for injury to one **Patient** and his or her family, heirs, successors or assigns, arising out of healthcare **Professional Services** provided to one person or **Patient** shall be considered one **Medical Incident** and one **Loss Event**. For purposes of determining the manner in which coverage is afforded by this policy, it is agreed that one person or one **Patient** shall include the parents and their "Fetus". "Fetus" is defined as the unborn offspring, or multiple offspring, after fertilization until birth.

         b.   all **Claims** arising out of **Bodily Injury** to a **Patient** caused by the same **Occurrence** will be considered one **Medical Incident** and one **Loss Event**.

         c.   all **Claims** made by all persons arising out of the same or related acts or omissions resulting from research or development will be considered one **Medical Incident** and one **Loss Event**.

         d.   all **Claims** made by all persons arising out of the same or related act or omission by a formal accreditation board or committee; medical standards board or committee; or other similar board or committee will be considered one **Medical Incident** and one **Loss Event**.

      2.   Subject to subparagraph 1. above, the Company's liability for all **Loss** because of all injuries arising out of all **Loss Events** to which this insurance applies shall not exceed the aggregate limit set forth in Item 5.B. of the Declarations.

   C.   With respect to COVERAGE A, only the policy in effect when the **Claim** was first made and reported will apply and under no circumstances will any other Insuring Agreement or policy issued by the Company apply.

   D.   With respect to COVERAGE B, only the policy in effect at the time the **Bodily Injury** or **Property Damage** was first sustained and/or the **Personal Injury** or **Advertising Injury** offense was first committed will apply and under no circumstances will any other Insuring Agreement or policy issued by the Company apply.

   E.   Item 5. of the Declarations describes the types of payments that will reduce the Limit of Liability.

      1.   If the Declarations state that the Limits of Liability apply to **Loss** and **Expenses, Costs and Interest** the following amounts will reduce the each **Loss Event** and Aggregate Limit of Liability:

         a.   **Loss** paid by the Company; and

         b.   **Expenses, Costs and Interest** paid or incurred by the Company.

      2.   If the Declarations state that the Limits of Liability apply to **Loss**; **Expenses, Costs and Interest**; and pro rata reimbursement of **Expenses, Costs and Interest** the following amounts will reduce the each **Loss Event** and Aggregate Limit of Liability under Item 5. of the Declarations:

SAE C/O 001 (08/07)

Case ID: 210503143

    a.      **Loss** paid by the Company;

    b.      **Expenses, Costs and Interest** paid or incurred by the Company; and

    c.      only to the extent the applicable Limit of Liability has not been exhausted by a. and b. above, the amount paid by the Company to reimburse the **Insured** for its pro rata share of **Expenses, Costs and Interest**.

F.    Under no circumstances will coverage be afforded under more than one Insuring Agreement issued by the Company or any affiliated company. If a **Loss Event** to which this insurance applies is covered under more than one Insuring Agreement to this policy, the **Named Insured** will be entitled to select the Insuring Agreement that will respond to the **Loss**. No other Insuring Agreement will respond to the **Loss**.

G.    Nothing contained in this Section shall affect the Company's undertaking to pay the amounts described in Section VII. <u>CONDITIONS</u>, C. APPEALS.

V.    <u>DEFINITIONS</u>

    When used in this policy:

A.    **Advertising Injury** means injury which results from one or more of the following offenses committed in an advertisement of an **Insured's Products** or services:

    1.      libel, slander, or defamation;

    2.      violation of a person's right of privacy; or

    3.      infringement of copyright, title or slogan.

B.    **Automobile** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include **Mobile Equipment**.

C.    **Bodily Injury** means physical harm, sickness or disease that is sustained by a person which occurs during the Policy Period. **Bodily Injury** includes death. **Bodily Injury** includes emotional distress and mental injury only if the emotional distress or mental injury is the direct result of physical harm, sickness or disease.

D.    **Claim** means:

    1.      the filing of a lawsuit against an **Insured**, written notice of intent to file a lawsuit, or to arbitrate against an **Insured**, or a written demand for money or services communicated to an **Insured** with respect to a **Loss Event**; or

    2.      any specific circumstance or outcome involving a particular person an **Insured** reasonably believes is likely to result in a demand for compensation for the injury or damage.

E.    **Contamination** means any unclean, unsafe, damaging, injurious or unhealthful condition arising out of the presence of **Mold, Spores, Fungus, Mildew, Yeast and/or other Toxins** or products and materials containing one or more of them, whether permanent or transient, in the **Environment**.

F.    **Damages** means amounts an **Insured** is legally obligated to pay to compensate others by law because of a **Loss Event**. **Damages** does not include fines, penalties or amounts that are uninsurable under applicable law.

G.    **Discrimination** means any violation of:

    1.      any statutory law, common law, rule or regulation which prohibits unfavorable, unfair or disparate treatment, partiality or prejudice based upon race, color, religion, national origin, age, sex, marital status, parental status, sexual orientation or preference, disability, handicap, pregnancy, or medical condition;

2.  civil rights; or

3.  any law or regulation designed or intended to protect individuals from differential treatment based on their status.

H.  **Environment** means and includes all persons; any manmade object, building, or feature; animals, crops, vegetation, land, bodies of water, water table, water table supplies, air and any feature of the earth or its atmosphere, whether or not altered, developed, or cultivated, or any part thereof.

I.  **Expenses, Costs and Interest** means:

1.  all expenses incurred in the investigation, adjustment, settlement and/or adjudication of any **Claim** or **Suit** covered by this policy that is brought against the **Insured** including, but not limited to legal expenses, prejudgment interest, attorneys fees, court costs, premium on appeal bonds, bonds to release attachments and direct or indirect expenses paid to others for any service involving a **Claim** or **Suit**; and

2.  that portion of the post judgment interest attributable to the amount of the judgment for which the Company is responsible which accrues after the entry of the judgment and before the Company pays or offers to pay that portion of the judgment for which the Company is responsible.

J.  **Extended Reporting Period** means the time after the end of the Policy Period for reporting **Claims** arising from a **Loss Event**.

K.  **First Named Insured** means the first entity described in Item 1. of the Declarations.

L.  **Good Samaritan Acts** means those services performed by the **Insured** in furnishing or failing to furnish, without remuneration, emergency healthcare treatment at the scene of an accident, medical crisis or disaster.

M.  **Hazardous Properties** includes radioactive, toxic or explosive properties of **Nuclear Materials**, **Radioactive Materials** and/or **Waste Materials**.

N.  **Incidental Contract** means any written:

1.  lease of premises;

2.  sidetrack agreement;

3.  easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad;

4.  indemnification of a municipality as required by ordinance, except in connection with work for a municipality;

5.  elevator maintenance agreement; or

6.  that part of any contract or agreement pertaining to the **Named Insured's** business under which the **Named Insured** assumes the "tort liability" of another to pay **Damages** because of **Bodily Injury** or **Property Damage** covered by COVERAGE B. "Tort liability" means a liability that would be imposed against the **Insured** by law in the absence of a contract or agreement.

O.  **Insured** means the persons and organizations identified as **Insureds** in Section VI. **INSUREDS**.

P.  **Insured's Products** means goods or products manufactured, sold, handled or distributed by the **Named Insured** or by others trading under its name, including any container thereof (other than a vehicle), but does not include a vending machine or any property other than such contained, rented to or located for use of others but not sold.

Q.  **Loss** means the amounts paid as **Damages** net of all recoveries and salvages, in settlement of **Claims** or **Suits** in satisfaction of awards or judgments, incurred as a result of a **Loss Event** for which this policy provides coverage.

**Loss** does not include salaries of the **Insured's** employees, or fees and expenses of independent adjusters, third party administrators and attorneys hired by the **Insured**.

R.   **Loss Event** means:

1.   With respect to COVERAGE A: HEALTHCARE FACILITY EXCESS PROFESSIONAL LIABILITY, a **Medical Incident** to which this insurance applies.

2.   With respect to COVERAGE B: HEALTHCARE FACILITY EXCESS GENERAL LIABILITY, an **Occurrence** that results in **Bodily Injury** or **Property Damage** or an offense that results in **Personal Injury** or **Advertising Injury**, to which this insurance applies.

3.   With respect to COVERAGE C: FOLLOW-FORM EXCESS LIABILITY, the happening, situation or circumstance that results in a **Claim** or **Suit** for injury or damage that is covered by the **Underlying Insurance** described in the Schedule of Underlying.

S.   **Medical Incident** means:

1.   an act or omission in providing or failing to provide healthcare **Professional Services** that results in **Bodily Injury** to a person or **Patient**;

2.   an **Occurrence** that results in **Bodily Injury** to a **Patient**;

3.   an act or omission in conducting research by an **Insured** related to healthcare that results in **Bodily Injury** caused by an alleged defect or deficiency in the **Insured's** conduct or reporting of the research or development; or

4.   an act or omission in providing service to or carrying out the directives of the **Named Insured's** formal accreditation board or committee or a medical standards review board or committee or any similar board or committee controlled by the **Named Insured**.

T.   **Mobile Equipment** means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, which is:

1.   not subject to motor vehicle registration and is maintained for use exclusively on premises owned by or rented to the **Named Insured**, including the ways immediately adjoining; and designed for use principally off public roads; or

2.   designed or maintained for the sole purpose of affording mobility to power cranes, shovels, loaders, diggers, drills, concrete mixers, graders, scrapers, rollers and other road construction or repair equipment, air compressors, pumps and generators, including spraying, welding and building cleaning equipment, and geophysical exploration and well servicing equipment.

U.   **Mold, Spores, Fungus, Mildew, Yeast and/or other Toxins** means any mold, spores, mildew, yeast and/or other toxins of any type or nature whatsoever that can cause or threaten harm to any living organism (including human health or human welfare, or the health or welfare of any animal or plant) or can cause or threaten physical damage, deterioration, loss of use, and/or of value or marketability, to any tangible property whatsoever.  This includes any type of mold, spores, fungus, mildew, yeast and/or other toxins that is harmful or potentially harmful to health or welfare, or that is damaging or potentially damaging to tangible property or that can otherwise cause or threaten to cause injury, **Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury** of any kind whatsoever.

V.   **Named Insured** means an entity described in Item 1. of the Declarations.

W.   **Nuclear Materials** means **Source Material**, **Special Nuclear Material** and **Byproduct Material**.

X.   **Occurrence** means an accident, including continuous or repeated exposure to conditions which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of an **Insured**.  **Occurrence**

includes any intentional act by or at the direction of the **Insured** which results in **Bodily Injury**, if the injury arises solely from the use of reasonable force for the purpose of protecting persons or property.

Y.   **Other Insurance** includes, but is not limited to, coverage or benefits provided by insurers, self-insurers, pools, self-insurance trusts, captive insurance companies, inter-insurance exchanges, mutual insurance companies, stock insurance companies, risk retention groups, reciprocal exchanges, mutual benefit or assistance programs, or any other plan or agreement of risk assumption.

Z.   **Patient** means:

1.   a person who is receiving or seeking healthcare **Professional Services** from an **Insured**; or

2.   a person who is on the premises of an **Insured** in order to obtain healthcare **Professional Services** for himself or herself.

AA.  **Personal Injury** means an injury arising out of one or more of the following offenses committed in the course of the **Named Insured's** activities in the conduct of the **Named Insured's** business:

1.   false arrest, detention, imprisonment, or malicious prosecution; or

2.   wrongful entry or eviction or other invasion of the right of private occupancy or a room or dwelling that a person occupies; or

3.   a publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy.

BB.  **Policy Territory** means:

1.   the United States of America, including its territories and possessions, Puerto Rico and Canada; or

2.   anywhere in the world if the original **Suit** for **Damages** because of **Loss Events** to which this insurance applies is brought within the United States of America, including its territories or possessions, Puerto Rico or Canada.

CC.  **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste means materials to be recycled, reconditioned or reclaimed, including but not limited to medical paraphernalia, drugs, blood and blood products and animal tissue.

DD.  **Products Hazard** means **Bodily Injury** and **Property Damage** arising out of an **Insured's Products** or reliance upon a representation or warranty made at any time with respect to an **Insured's Products**, but only if the **Bodily Injury** or **Property Damage** occurs away from premises owned by or rented to the **Insured** and after physical possession of the products has been relinquished to others.

EE.  **Professional Services** means services provided to others that require the exercise of professional skill, training or judgment.

FF.  **Property Damage** means:

1.   physical injury or destruction of tangible property, including the loss of use of the property, or

2.   loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by the physical injury or destruction of tangible property during the Policy Period.

GG.  **Radioactive Materials** means any materials which are radioactive or caused by or exhibit **Radioactivity**.

HH.  **Radioactivity** means the property possessed by some elements of spontaneously emitting alpha or beta rays and sometimes also gamma rays by the disintegration of the nuclei of atoms.

- 17 -

II.    **Retroactive Date** means the date shown or referred to in Item 7. of the Declarations.

JJ.    **Source Material, Special Nuclear Material** and **Byproduct Material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

KK.    **Suit** means a civil action seeking **Damages** and includes an arbitration proceeding to which the **Insured** is required to submit.

LL.    **Underlying Amounts** means amounts paid, in settlement of **Claims** or in satisfaction of awards or judgments, which would, except for the amount, be covered by this Policy. The **Underlying Amounts** are set forth in the **Schedule of Underlying**. Upon the exhaustion of any applicable aggregate **Underlying Amount**, the **Continuing Underlying Amount** is the minimum amount, applicable to each **Loss Event**, to be paid by the **Named Insured**.

MM. **Underlying Insurance** means the insurance set forth in the Schedule of Underlying. The layer of **Underlying Insurance** which immediately precedes the layer of excess insurance provided by this policy contains certain terms and conditions of coverage which have been incorporated by this policy as provided under COVERAGE C.

NN.    **Underlying Insurer(s)** means the insurer(s) providing the **Underlying Insurance** set forth in the Schedule of Underlying.

OO.    **Underlying Limit of Liability** means the limits of liability of the **Underlying Insurance** set forth in the Schedule of Underlying.

PP.    **Volunteer** means any person performing tasks on behalf of the **Named Insured** and whose services or labor are uncompensated from any source and who is accepted and directed by the **Named Insured**.

QQ.    **Waste Materials** means any waste material containing **Byproduct Material** as that term is defined in the Atomic Energy Act of 1954 or in any law amendatory thereof, or any byproduct of any **Nuclear Materials** or **Radioactive Materials**.

VI.    <u>**INSUREDS**</u>

A.    With respect to COVERAGE A and COVERAGE B, each of the following is an **Insured**:

    1.    the Named Insured;

    2.    if a **Named Insured** is described in the Declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member, but only with respect to their liability as a partner or member.

    3.    a **Named Insured's** executive officers and directors but only for liability that results from acts within the scope of their duties as an officer or director;

    4.    a **Named Insured's** shareholders but only for liability that results from the status of being a shareholder;

    5.    any entity which is acquired or formed by the **Named Insured** subsequent to the effective date of this policy and in which the **Named Insured** maintains a majority interest, but coverage will not apply:

        a.    to any liability arising out of a **Loss Event** which takes place prior to the date of the acquisition or formation;

        b.    for a period greater than sixty (60) days from the date of the acquisition or formation, unless the **Named Insured** gives written notice to the Company of the acquisition or formation and pays any additional premium assessed by the Company, to provide coverage to the newly acquired or formed entity.

        c.    This provision does not apply to any entity excluded in this policy by name or description.

B. With respect to COVERAGE A, each of the following is an **Insured** to the extent set forth below:

    1. any employee or **Volunteer** of the **Named Insured** but only while acting within the course and scope of their duties on behalf of the **Named Insured** and any student of the healthcare professions enrolled in a formal training program sponsored by and controlled by the **Named Insured** or affiliated with and controlled by the **Named Insured** at the time a **Medical Incident** takes place;

    2. members of a duly authorized professional committee of the **Named Insured** for liability incurred for acts within the course and scope of their duties as a member of the committee;

    3. Medical Directors of the **Named Insured**, but only for liability incurred for acts performed solely in an administrative capacity for the benefit of and at the request of the **Named Insured**; and

    4. any employee of the **Named Insured** while performing **Good Samaritan Acts**.

C. Each of the following is an **Insured** under COVERAGE B to the extent set forth below:

    1. any employee or **Volunteer** of the **Named Insured** but only while acting within the course and scope of his or her duties on behalf of the **Named Insured** and any student of the healthcare professions enrolled in a formal training program sponsored by and controlled by the **Named Insured** or affiliated with and controlled by the **Named Insured** at the time a **Loss Event** takes place;

    2. any person (other than an employee or **Volunteer** of the **Named Insured**) or organization while acting as real estate manager for the **Named Insured**.

D. With respect to COVERAGE C, the **Named Insured** and, subject to the terms, conditions, definitions and exclusions of this policy, any additional **Insured**, other than the **Named Insured**, included as **Insured** in the **Underlying Insurance** set forth in the Schedule of Underlying Insurance.

E. Physicians, osteopaths, surgeons, residents and interns are not **Insureds** under this policy for any liability that arises out of a **Medical Incident** or healthcare **Professional Services** that were or should have been provided by anyone unless he or she is specifically listed as an **Insured**.

VII. <u>CONDITIONS</u>

A. ACTION AGAINST THE COMPANY BY A THIRD PARTY

    1. No action shall lie against the Company by an **Insured** unless, as a condition precedent, there has been full compliance with all of the terms of this policy by all **Insureds**, nor until the amount of the **Insured's** obligation to pay has been finally determined, through a judgment against the **Insured** after actual trial. Any person or organization, or his legal representative, who has secured such a judgment or written agreement shall thereafter be entitled to recover under this policy to the extent, but only to the extent the **Loss** is covered by this policy.

    2. No person or organization shall have any right under this policy to join the Company as a third party to take any action against the **Insured** to determine the liability of the **Insured**, nor shall the Company be impleaded by any **Insured** or its legal representative. The bankruptcy or insolvency of an **Insured** or its estate shall not relieve the Company of any of its obligations under this policy.

SAE C/O 001 (08/07)

B.   AGENCY OF **FIRST NAMED INSURED**

By acceptance of this policy, the **First Named Insured** agrees to act on behalf of all **Insureds** with respect to the giving and receiving of notices to and from the Company as provided herein related to the exercise of any **Extended Reporting Period**; the cancellation of this policy in whole or in part; the payment of premiums and deductibles when due; and the receipt of any return premiums that may become due under this policy. In addition, all **Insureds** hereby agree that the **First Named Insured** shall have authority to act on their behalf and that notice provided to the **First Named Insured** shall serve as notice to all **Insureds**.

C.   APPEALS

If the **Named Insured** or an **Underlying Insurer** elects not to appeal an award or judgment which exceeds the **Underlying Amounts** or the **Underlying Limits of Liability**, the Company has the right to undertake the appeal. In the event of an appeal pursuant to this paragraph, the Company's liability on such an award or judgment shall not exceed the Limit of Liability set forth in Item 5. of the Declarations, plus all **Expenses, Costs and Interest** incidental to the appeal. If the award or judgment is decreased on appeal, the **Named Insured** or an **Underlying Insurer** shall reimburse the Company for the **Expenses, Costs and Interest** incurred by the Company in the appeal, up to the amount the **Named Insured** or **Underlying Insurer** would have paid in **Damages** had there been no appeal.

D.   ASSIGNMENT

Assignment of interest under this policy shall not bind the Company unless it consents to the assignment in writing.

E.   ASSISTANCE AND COOPERATION

The **Insured** shall cooperate fully in all matters pertaining to any **Claim, Suit** or proceeding. The Company shall not be called upon to assume charge of the defense or settlement of any **Claim, Suit** or proceeding instituted against the **Insured**. The Company shall have the right, but not the obligation, to associate with the **Insured** in the defense and control of any **Claim, Suit** or proceeding which, in the sole opinion of the Company, may exhaust the **Underlying Amounts** or **Underlying Insurance**. Any **Expenses, Costs or Interest** incurred by the Company in exercising its right to associate in the defense of a **Claim** or **Suit** will reduce the applicable Limit of Liability.

Any obligation assumed, payment made or expenses incurred in excess of the **Underlying Amount** or the **Underlying Insurance** without the Company's prior, written consent is the sole responsibility of the **Insured**. The Company has no obligation to reimburse or indemnify the **Insured** for any amount paid or incurred in excess of the **Underlying Amount** or **Underlying Insurance** without the prior written consent of the Company.

F.   CANCELLATION

   1.   The **First Named Insured** may cancel this policy by mailing or delivering advance written notice of intent to cancel.

   2.   The Company may cancel this policy by mailing or delivering to the **First Named Insured** at the address shown in the Declarations, written notice of intent to cancel:

      a.   Ten (10) days before the effective date of cancellation, if the Company cancels for non-payment of premium; or

      b.   Sixty (60) days before the effective date of cancellation, if the Company cancels for any other reason.

   3.   The Company will mail or deliver its notice of cancellation to the **First Named Insured** named in Item 1. of the Declarations, at the last mailing address known to the Company.

   4.   The notice of cancellation will state the effective date of cancellation. The policy will end on that date, which shall become the expiration date of this policy.

SAE C/O 001 (08/07)

5.    If this policy is canceled, the Company will send the **First Named Insured** any premium refund due. If the Company cancels, any refund will be pro rata. If the **First Named Insured** cancels, any refund will be short rate. If the policy is canceled by the **First Named Insured**, the policy is subject to the Minimum and Fully Earned Premium set forth in Item 8. of the Declarations. Cancellation will be effective even if the refund has not been tendered.

6.    If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

G.   COMPANY'S RIGHTS AND OBLIGATIONS

1.    The Company shall not assume the obligations of the **Insured** or any insurer. The Company's obligations shall not be altered or increased, nor shall the Company pay any third party on behalf of the **Insured** or any insurer, irrespective of the inability of the **Named Insured** or any insurer to pay the **Underlying Limits of Liability** or **Underlying Amounts** for any reason whatsoever, including, but not limited to, the inability of the **Named Insured** or any insurer to pay by reason of bankruptcy, insolvency, financial impairment, or any regulatory or judicial intervention due to the financial condition of the **Named Insured** or any insurer. The Company's obligation to indemnify the **Insured** for **Loss** in excess of the **Underlying Limits of Liability** or **Underlying Amounts** applies only after the **Underlying Limits of Liability** or **Underlying Amounts** have been paid by or on behalf of the **Named Insured**.

2.    Where liability of the **Insured** is reasonably clear and the Company recommends settlement of a **Claim** for a written demand that is within the **Underlying Amounts** and the **Named Insured** refuses to consent to such settlement, but elects to contest the **Claim** or continue legal proceedings, the Company shall not be liable for any **Loss** or **Expenses, Costs or Interest** attributable to the **Claim**.

3.    Where liability of the **Insured** is reasonably clear and the amount demanded in settlement of a **Claim** is in excess of the **Underlying Amounts**, the Company has the right to discharge its obligation to pay any **Loss** associated with the **Claim** by paying to the **Named Insured** the difference between the amount demanded in settlement and the **Underlying Amount**.

H.   **EXPENSES, COSTS AND INTEREST**

1.    Under COVERAGE A and COVERAGE B **Expenses, Costs and Interest** are the sole responsibility of and will be paid by the **First Named Insured** except for:

   a.   **Expenses, Costs and Interest** incurred by the Company in exercising its right to associate in the defense under VII. <u>CONDITIONS</u>. A., ASSISTANCE AND COOPERATION; or

   b.   Expenses, Costs and Interest incurred after the Underlying Amounts have been exhausted.

2.    Under COVERAGE C, the Company will indemnify the **Insured** for the payment of **Expenses, Costs and Interest** incurred in settlement of **Claims** and in satisfaction of awards or judgments in excess of the **Underlying Limits of Liability**. As to COVERAGE C, this policy incorporates the terms and conditions of the **Underlying Insurance** regarding **Expenses, Costs and Interest**, subject to the **Insured's** obligation to pay any **Continuing Underlying Amount** set forth in the Schedule of Underlying.

3.    **Expenses, Costs and Interest** are always included within, and are not in addition to, the Company's Limit of Liability set forth in Item 5. of the Declarations.

I.    **EXTENDED REPORTING PERIOD** OPTION

1.    Where **Underlying Insurance** applies on a claims-made basis and this policy is cancelled or non-renewed for any reason other than non-payment of premium, the Company will offer the **First Named Insured** the option of purchasing an **Extended Reporting Period** applicable to COVERAGE C if the following requirements have been met:

SAE C/O 001 (08/07)

     a.    The **First Named Insured** confirms in writing that the time for reporting claims under the **Underlying Insurance** has been extended through the purchase of an **Extended Reporting Period**; and

     b.    The **First Named Insured** provides the terms and conditions of the **Extended Reporting Period** that applies to the **Underlying Insurance**, including but not limited to the term of the **Extended Reporting Period** and the limits of liability that will apply to **Claims** reported during the **Extended Reporting Period**.

2.    Where **Underlying Insurance** does not apply the Company will provide an **Extended Reporting Period** for any claims-made coverage as follows:

     a.    A thirty (30) day automatic **Extended Reporting Period** will be provided.  This automatic **Extended Reporting Period** begins at 12:01 A.M. on the expiration date of this policy and ends at 12:01 A.M. on the 30th day following the expiration date.  No premium will be assessed for this automatic **Extended Reporting Period**; however, the **First Named Insured's** right to report **Claims** under this automatic **Extended Reporting Period** will not extend beyond the 30 day period. The **First Named Insured** must purchase an **Extended Reporting Period** endorsement in order to preserve the right to report claims following the expiration of the 30 day period.  In addition, the 30 day automatic **Extended Reporting Period** applies only to those **Claims** or **Suits** that were brought to the attention of the **Named Insured's** Risk Management or Claim Department prior to the expiration date of this policy but were not reported to the Company prior to expiration.

     b.    If this policy is cancelled or non-renewed for any reason other than non-payment of premium the Company will offer the **First Named Insured** the option of purchasing an endorsement that will provide an **Extended Reporting Period**. The term of this **Extended Reporting Period** will be set out in the endorsement and shall not exceed seven (7) years.

          i.    The additional premium for this **Extended Reporting Period** will be computed in accordance with the Company's rates, rules and/or actuarial analysis on the effective date of the endorsement.  The premium assessed for the **Extended Reporting Period** shall be deemed fully earned and is non-refundable at the time the right to purchase is exercised.

         ii.    The right to purchase the **Extended Reporting Period** option must be exercised by the **First Named Insured** through written notice to the Company not later than thirty (30) days after the expiration or termination date of this policy.

3.    Any **Extended Reporting Period** option will not reinstate or increase the Company's Limit of Liability.

4.    The **Extended Reporting Period** option does not extend the Policy Period or change the scope of coverage provided.  If the **Underlying Amounts** contain an aggregate, the Company has the right to provide the **Extended Reporting Period** option in excess of **Underlying Amounts** which apply to each and every **Loss Event** (without an aggregate) or to provide the **Extended Reporting Period** option in excess of **Underlying Amounts** which have an increased aggregate.

J.    INSPECTION AND AUDIT

1.    The Company shall be permitted, but not obligated, to inspect the **Insured's** premises and operations at any time.  Neither the Company's right to make inspections nor the performance of an inspection shall constitute an undertaking on behalf of or for the benefit of the **Insured** or others to determine or warrant that such property or operations are safe or healthful or are in compliance with any law, rule or regulation.

2.    The Company may examine and audit the books and records of an **Insured** at any time during the Policy Period and extensions thereof and within three years after the final termination of this policy as far as they relate to the subject matter of this insurance.

SAE C/O 001 (08/07)

Case ID: 210503143

K.    **INSURED'S** DUTIES IN THE EVENT OF **CLAIM** OR **SUITS**

1.    In the event of a **Loss Event** the **Insured** must, as a condition to coverage under this policy:

a.    Give written notice to the Company, as soon as practicable of any **Claim** reasonably likely to result in significant erosion or exhaustion of the **Underlying Amount** or **Underlying Insurance**, including but not limited to:

i.    any **Claim** which any **Insured** or any representative of any **Insured**, or any insurer, evaluates as having a settlement or judgment value equal to or exceeding $250,000; or

ii.    any **Claim** where the demand for **Damages** is equal to or exceeds $250,000.

b.    Provide quarterly **Loss** reports listing all closed and outstanding **Claims**. Such reports shall include the claimant's name; date of **Loss**; date the **Insured's** Risk Management of Claim Department became aware of the **Claim**; description of the injury or damage; the names of defense and plaintiff attorneys, where applicable, indemnity and expense reserves and the paid indemnity and expense. These quarterly reports must be sent to:

Admiral Insurance Company
c/o Claims Department
Berkley Medical Excess Underwriters, LLC
390 South Woods Mill Road, Suite 125
Chesterfield, MO  63017

c.    Immediately forward to the Company a complete copy of every demand, notice, summons or other process received individually or through a representative in connection with any **Suit** or **Claim** seeking **Damages** reasonably believed to be in excess of $250,000.

d.    Maintain accurate descriptive records of all healthcare services rendered, which records shall be available to the Company as they relate to any **Claim** or **Loss Event** to which this policy applies.

e.    Include in all reports, provided in accordance with this Condition, reasonably obtainable information with respect to the time, date, place, circumstances, **Insureds** involved, details regarding the alleged injury, **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury**; names of any potential witnesses; name of the **Patient** and claimants; the type of healthcare **Professional Services** rendered and the extent and type of **Claim** or **Suit** anticipated. All notices must be in writing and addressed to the Company.

f.    Cooperate with the Company, and upon the Company's request, assist in making settlements, in the conduct of a **Suit** and in enforcing any right of contribution or indemnity against any person or organization who may be liable to an **Insured** because of injury or damage with respect to which insurance is or may be afforded under this policy. Attend all hearings and trials and assist in securing and giving evidence and obtaining witnesses.

g.    Not incur any financial obligation in excess of the **Underlying Amount** without the Company's prior written consent.

2.    Reports of **Loss Events** made by an **Insured** to the Company as part of an engineering, loss control or risk management program do not constitute compliance with this Condition or determine when a **Claim** has been first made or reported in compliance with Section II.

L.    MAINTENANCE OF **UNDERLYING INSURANCE**; RESPONSIBILITY FOR **UNDERLYING AMOUNTS**

The **Named Insured** agrees to:

1.    Maintain the **Underlying Insurance**, and renewals and replacements, in force during the currency of this policy, without alteration of its terms and conditions and without reduction of coverage or limits of liability, except for any reduction of the aggregate limits therein solely by amounts paid in settlement of **Claims** or in satisfaction of awards or judgments, with respect to **Loss Events** to which this policy applies. In the event **Underlying Insurance** is not maintained in force or if the **Insured** does not meet the terms and conditions of the **Underlying Insurance**, the insurance afforded by this policy shall apply as if such policies had been so maintained in force.

2.    Retain its obligation and responsibility for maintaining the **Underlying Amounts** except for any reduction therein solely by amounts paid in settlement of **Claims** or in satisfaction of awards or judgments with respect to **Loss Events** to which this policy applies. If the **Underlying Amounts** contain an aggregate, such aggregate shall not be reduced or exhausted by payment of any amount for which coverage is not afforded by this policy.

M.  OBLIGATIONS OF THE **FIRST NAMED INSURED**

1.    The **First Named Insured** assumes the following obligations and duties in accordance with its retention of, and agreement to pay, the **Underlying Amounts**.

    a.    pay Damages;

    b.    defend **Claims** and **Suits** and to pay **Expenses, Costs and Interest** as would be required if the **Underlying Amounts** were insured rather than owed directly by the **Named Insured**;

    c.    provide the Company the same duty of due care in defense and settlement that an insurer would owe the Company;

    d.    give to the Company or their duly appointed representative the information and assistance it requests; and

    e.    maintain a staff, by employment or through a contract, to provide risk management and claims services and provide for the investigation, adjustment, management and reporting of **Loss Events**.

2.    It is expressly understood and agreed that the **First Named Insured** does not discharge its obligations under this policy by tendering the **Underlying Amounts** to the court or to the Company. The act of tendering the **Underlying Amount** does not constitute payment in settlement of **Claims** or in satisfaction of awards or judgments for the purposes of reducing or exhausting the **Underlying Amounts**.

3.    The **First Named Insured** and the Company shall identify mutually agreeable counsel to defend any **Claim** which may involve this policy. The **Named Insured** and defense counsel shall cooperate with the Company and afford the Company access to defense counsel files and the opportunity to discuss the status, evaluation and strategy with defense counsel.

N.  OTHER INSURANCE

1.    If **Other Insurance** not afforded by the Company is available to the **Insured** covering a **Loss Event** that is also covered by this policy, the insurance afforded by this policy will be excess of, and not contribute with, such **Other Insurance**. If the **Insured** purchases insurance with respect to all or part of the **Underlying Amounts** and such insurance exceeds the **Underlying Amounts** the insurance hereunder shall be excess of, and not contribute with, such **Other Insurance**. This Condition does not apply to insurance specifically purchased to apply in excess of the Company's Limit of Liability set forth in Item 5. of the Declarations.

2.    The insurance afforded by this policy does not apply to any **Loss Event** for which an **Insured** has coverage under any other policy issued by the Company.

SAE C/O 001 (08/07)

Case ID: 210503143

O.  PREMIUM

    1.  The **First** Named Insured:

        a.  is responsible for the payment of all premiums;

        b.  if the premium is not financed, will be the payee for any return premium; and

        c.  if the premium is financed, the **Named Insured** authorizes the Company to pay any return premium to the premium finance company.

    2.  The premium for this policy is:

        a.  subject to the Minimum and Fully Earned Premium set forth in Item 8. of the Declaration; and

        b.  not subject to adjustment except as set forth in VI. **INSUREDS**, A., 5.

P.  REPRESENTATIONS, DECLARATIONS AND ENDORSEMENTS

    1.  The **Insureds** agree that the statements contained in the application and underwriting information submitted therewith are their representations, that these representations are material to the risk undertaken by the Company and that this policy is issued and continues in force in reliance upon the accuracy of the representations.

    2.  The **Insureds** agree that this policy will be void and the Company will be relieved of its obligations under the contract if there has been a misrepresentation or omission of a material fact in applying for the insurance or if there has been an attempt to mislead or defraud the Company either before or after a **Loss Event**.

    3.  By acceptance of this policy, by the **First Named Insured**, it is agreed that this policy and the Declarations and endorsements attached hereto embody all agreements existing between all **Insureds** and the Company.

Q.  SEVERABILITY OF INTERESTS

    1.  The term **Insured** is used severally and not collectively except with respect to Section VII. **CONDITIONS**, N. **OTHER INSURANCE**.

    2.  The inclusion in this policy of more than one **Insured** shall not operate to increase the Company's total liability for all **Insureds** covered by this policy beyond the limits set forth in Item 5. of the Declarations.

R.  SUBROGATION; TRANSFER OF RIGHTS OF RECOVERY

    1.  If an **Insured** has rights to recover all or part of any payment the Company has made under this policy, those rights shall be transferred to the Company. An **Insured** shall do nothing to impair such rights. At the Company's request, the **Insured** will bring a legal action to enforce the rights or transfer the rights to the Company and assist the Company in enforcing such rights.

    2.  Any amount so recovered shall be apportioned as follows: Any person or organization (including an **Insured**) who has paid an amount in excess of the Limit of Liability hereunder shall be first reimbursed to the extent of such actual payment; the Company shall next be reimbursed to the extent of its actual payment; any balance remaining in the amount of recovery shall be paid to the **Insured**. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries except:

        a.  In proceedings conducted solely by the Company where there is no recovery, the Company shall bear the expenses.

        b.  In proceedings conducted solely by the **Insured**, the **Insured** shall bear the expenses.

**S.   UNDERLYING AMOUNTS**

1.   The **First Named Insured** assumes the obligations and responsibilities for payment of the **Underlying Amounts** set forth in the Schedule of Underlying.  Unless indicated in the **Schedule of Underlying**, the **Underlying Amounts** will not be reduced by the payment of **Expenses, Costs and Interest** and only amounts paid in settlements or judgments will reduce the **Underlying Amount**.

2.   Under no circumstance will the Company pay or indemnify the **Insured** for amounts owed or paid in settlement of **Claims** or in satisfaction of awards or judgments which are within the **Underlying Amounts** nor salaries of the **Insured's** employees, or fees and expenses of independent adjusters, third party administrators and attorneys hired by the **Insured**.

3.   Any forgiveness by the **Named Insured** of outstanding charges for goods and services including, but not limited to, a write-off of medical bills, shall also be borne by the **Named Insured** in addition to the **Underlying Amounts**, unless the Company provides its written consent that the **Underlying Amount** will be reduced by the forgiveness or write off.  The written consent of the Company must be obtained prior to the settlement of a **Claim** or the satisfaction of an award or judgment.

4.   Nothing in any provision of this policy shall be construed to make COVERAGE A or COVERAGE B of this policy subject to the terms, conditions or definitions of any **Other Insurance**, including, but not limited to, insurance purchased with respect to all or part of the **Underlying Amounts**.

## SIGNATURE

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless completed by the attachment hereto of a Declarations, Schedule of Underlying, applicable Coverage Forms and Endorsements and countersigned on the aforesaid Declarations by a duly authorized representative of the Company.

SAE C/O 001 (08/07)

Case ID: 210503143

Case ID: 210503143

## **VERIFICATION**

Filed and Attested by the
Office of Judicial Records
[illegible stamp]
pm

I, Bethany J. Flood, state that I am the Executive Director of the Green Tree Community Health Foundation, and that I am authorized to make this Verification on behalf of Plaintiff Green Tree Community Health Foundation, and that the facts set forth in the preceding Complaint are true and correct to the best of my information and belief. This Verification is made with knowledge of the penalties contained in 18 Pa. C.S.A. Section 4904, relating to unsworn verification of authorities.

By: _____        6/4/21
          Bethany J. Flood, *Executive Director*        Date

ON BEHALF OF
GREEN TREE COMMUNITY HEALTH FOUNDATION

# EXHIBIT B

| | |
|---|---|
| **From:** | Arthur R. Armstrong <Arthur.Armstrong@flastergreenberg.com> |
| **Sent:** | Friday, July 2, 2021 12:18 PM |
| **To:** | Philip Priore |
| **Cc:** | Steven Cantarutti; Iles, Michael |
| **Subject:** | RE: Green Tree Community Health Foundation v. Admiral Insurance Company, Case No.: 210503143 |

Phillip,

We have no objection should Admiral seek to remove the case to federal court.

You also indicated Admiral sought an extension.  My client is obviously eager to move this matter forward, and I know your firm has been involved in this matter since last year.  But as I said, I always grant professional courtesies as warranted.  How much time do you need?

Thanks.

Arthur

**Arthur R. Armstrong**
**Flaster Greenberg PC**
1835 Market Street, Suite 1050, Philadelphia, PA 19103
Tel: 215.514.7673 · arthur.armstrong@flastergreenberg.com

**Website | Bio | vCard | Offices | LinkedIn | Twitter | Facebook | Blogs**

**_Named One of the Best Places to Work in New Jersey by NJBiz_**

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

# EXHIBIT C

 CT Corporation

**Service of Process Transmittal**
06/14/2021
CT Log Number 539729445

TO:     Janet Shemanske, Secretary
        Nautilus Insurance Company
        W. R. BERKLEY STATUTORY E & S CENTER, 7233 E BUTHERUS DR
        SCOTTSDALE, AZ 85260-2410

RE:     **Process Served in Delaware**

FOR:    Admiral Insurance Company  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | GREEN TREE COMMUNITY HEALTH FOUNDATION, PLTF. vs. ADMIRAL INSURANCE COMPANY, DFT. |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 210503143 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/14/2021 at 15:40 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/15/2021, Expected Purge Date: 06/20/2021 |
| | Image SOP |
| | Email Notification,  Janet Shemanske  jshemanske@nautilus-ins.com |
| | Email Notification,  SOP REGULATORY  nic_regulatory@nautilus-ins.com |
| | Email Notification,  Trea Mihalovich  tmihalovich@nautilus-ins.com |
| | Email Notification,  Jen Rothluebber  jrothluebber@nautilus-ins.com |
| | Email Notification,  Wendy Wilson  wwilson@nautilus-ins.com |
| **REGISTERED AGENT ADDRESS:** | The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801<br>800-448-5350<br>MajorAccountTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s)

 CT Corporation

**Service of Process Transmittal**
06/14/2021
CT Log Number 539729445

**TO:**    Janet Shemanske, Secretary
Nautilus Insurance Company
W. R. BERKLEY STATUTORY E & S CENTER, 7233 E BUTHERUS DR
SCOTTSDALE, AZ 85260-2410

**RE:**    **Process Served in Delaware**

**FOR:**    Admiral Insurance Company  (Domestic State: DE)

of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                        Mon, Jun 14, 2021

**Server Name:**                 Wilmington Drop Serve

Entity Served              ADMIRAL INSURANCE COMPANY

Case Number                210503143

Jurisdiction               DE



Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**MAY 2021**

E-Filing Number: 2106008914

**003143**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| GREEN TREE COMMUNITY HEALTH FOUNDATION | ADMIRAL INSURANCE COMPANY |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 10 E. SPRINGFIELD AVE., SOUTH PHILADELPHIA PA 19118 | 1000 ROGERS BLVD. SUITE 300 MOUNT LAUREL NJ 08054 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 1 | ☒ Complaint   ☐ Petition Action   ☐ Notice of Appeal<br>☐ Writ of Summons   ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce   ☐ Settlement<br>☐ Minor Court Appeal   ☐ Minors<br>☐ Statutory Appeals   ☐ W/D/Survival |

**CASE TYPE AND CODE**

1D - INSURANCE, DECLARATORY JUDGMENT

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|
| **FILED PRO PROTHY** JUN 04 2021 M. BRYANT | YES   NO |

## TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: GREEN TREE COMMUNITY HEALTH FOUNDATION

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| ARTHUR R. ARMSTRONG | FLASTER GREENBERG PC 1835 MARKET STREET SUITE 1050 PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)279-9933 | (215)279-9394 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 203816 | arthur.armstrong@flastergreenberg.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| ARTHUR ARMSTRONG | Friday, June 04, 2021, 12:50 pm |

FINAL COPY (Approved by the Prothonotary Clerk)



**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA** and Attested by the
**COURT OF COMMON PLEAS OF PHILADELPHIA** Office of Judicial Records
04 JUN 2021 03:50 pm

FLASTER GREENBERG PC
Arthur R. Armstrong, Esq.
1835 Market Street, Suite 1050
Philadelphia, PA 19103
Telephone: 215.514.7673
E-mail: arthur.armstrong@flastergreenberg.com
Attorneys for Plaintiff

GREEN TREE COMMUNICTY HEALTH
FOUNDATION,
                              Plaintiff,

        v.

ADMIRAL INSURANCE COMPANY,

                              Defendant.

## NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |
| **Philadelphia Bar Association**<br>**Lawyer Referral**<br>**and Information Service**<br>**One Reading Center**<br>**Philadelphia, Pennsylvania 19107**<br>**(215) 238-6333**<br>**TTY (215) 451-6197** | **Asociacion De Licenciados**<br>**De Filadelfia**<br>**Servicio De Referencia E**<br>**Informacion Legal**<br>**One Reading Center**<br>**Filadelfia, Pennsylvania 19107**<br>**(215) 238-6333**<br>**TTY (215) 451-6197** |

10-284

Case ID: 210503143

COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY, PENNSYLVANIA



Filed and Attested by the
Office of Judicial Records
04 JUN 2021 50 pm

GREEN TREE COMMUNITY HEALTH
FOUNDATION,

               Plaintiff,

    v.

ADMIRAL INSURANCE COMPANY

               Defendant.

RECEIVED
Jun 15 2021
NAUTILUS INSURANCE GROUP
REGULATORY DEPT

No.

**COMPLAINT AND DEMAND FOR
JURY TRIAL**

## COMPLAINT

      Green Tree Community Health Foundation ("The Foundation" or "Plaintiff"), by and through its undersigned counsel, Flaster Greenberg, P.C., submits the following Complaint against Defendant Admiral Insurance Company ("Admiral" or "Defendant").

### INTRODUCTION

      1.     Green Tree Community Health Foundation (the "Foundation") is a not-for-profit, public charity located in Philadelphia, which serves as a community health advocate.

      2.     The Foundation seeks to improve the health of the surrounding community by identifying areas of vulnerability and partnering with organizations that address those needs.

      3.     Through ongoing needs assessments, the Foundation identifies needs in these communities and provides funding to organizations whose work will address these needs.

      4.     The Foundation also seeks opportunities to develop initiatives where it can fund and provide needed services directly.

5.      The Foundation seeks to have a positive impact on current and emerging health issues and risks, empowering residents in its service area to access health services and to value, embrace and maintain their health.

6.      The Foundation focuses on providing assistance to the frail and isolated elderly; the hungry and food insecure; and children.

7.      The Foundation was created in 2004 as a result of the sale of Chestnut Hill HealthCare to a joint venture between Community Health Systems, Inc. a for-profit health care system headquartered in Brentwood, Tennessee and the University of Pennsylvania Health System.

8.      Chestnut Hill HealthCare was an integrated health care system including the 100-year-old Chestnut Hill Hospital as well as Chestnut Hill Rehabilitation Hospital, and other related entities.

9.      The Foundation was created to carry out the charitable outreach activities of the former not-for-profit Chestnut Hill Healthcare in its primary service area.

10.      Since its inception, the Foundation has provided hundreds of grants to organizations that assist those in need through services that include, *inter alia*, providing home-delivered meals for seniors and health care for the homeless. These efforts are largely made possible by annual giving, one hundred percent of which goes to grant making.

11.      When the Foundation was created to advance this charitable purpose, the Foundation purchased an insurance Policy from Defendant Admiral.

12.      The Foundation is the Named Insured under the Incurred But Not Reported Coverage Agreement with policy number ERP-PA-10141-1011-01 (the "IBNR Policy") sold by

Admiral to the Foundation for the agreement period, "October 1, 2011 to Indefinite." A true and accurate copy of the IBNR Policy is attached hereto as Exhibit A.

13.     The IBNR Policy provides tail coverage to the Foundation, with a retroactive date of March 1, 1984, and follows form to a governing policy identified as "Healthcare Facility Excess Liability Insurance (SAE C/O 08/07) (Coverage A only)" (the "Governing Policy"). A true and accurate copy of the Governing Policy is attached hereto as Exhibit B.

14.     The Foundation paid substantial premiums to Admiral for the IBNR Policy, which provides insurance with a policy limit of $1,000,000 for each Loss Event and $5,000,000 in the aggregate for the agreement period.

15.     The Foundation made a claim under the IBNR Policy related to certain demands for indemnification (the "Demands for Indemnification") made against the Foundation by certain defendants in the civil action styled *Tamia Lloyd, an Incapacitated Person, by Tamika Anderson, Guardian v. Chestnut Hill Hospital, et al.,* pending in the Philadelphia Court of Common Pleas at Docket No. 19-1102814 (the "Anderson Action"). These Demands for Indemnification  are based on certain contractual obligations assumed by the Foundation in connection with its creation in 2004.

16.     The Foundation timely submitted the claim to Admiral, seeking defense and indemnity against the Demands for Indemnification related to the Anderson Action.

17.     Admiral refused to defend or indemnify the Foundation and denied the claim.

18.     Admiral's denial was improper and made in bad faith.

19.     By this complaint, the Foundation respectfully requests this Court order Admiral to defend and indemnify the Foundation against the Demands for Indemnification; reimburse the Foundation for all attorneys' fees and expenses incurred to date in addressing the Demands for

Indemnification and defending against the allegations asserted directly against the Foundation in the Anderson Action; pay its attorneys' fees for bringing this action; and to find that Admiral has breached the covenant of good faith and fair dealing and is liable for consequential and extra-contractual damages.

## PARTIES

20.     The Foundation is a non-profit corporation organized under the laws of the Commonwealth of Pennsylvania with an address of 10 E. Springfield Ave., South, Philadelphia, Pennsylvania 19118.

21.     Upon information and belief, Defendant Admiral Insurance Company is an insurance company organized under the laws of the state of Delaware with an address of 1000 Rogers Blvd., Suite 300, Mount Laurel, New Jersey 08054.

## JURISDICTION AND VENUE

22.     This Court has personal jurisdiction because, at all times material hereto, Defendant transacted business within the Commonwealth of Pennsylvania, and because Defendant engages in substantial and not isolated activity within the Commonwealth of Pennsylvania.

23.     Venue is proper in this County pursuant to Pennsylvania Rule of Civil Procedure 2179(b) because, among other things, Defendant regularly conducts business in this County and the Foundation is located in this County.

## FACTUAL BACKGROUND

### THE FOUNDATION'S INSURANCE POLICY AND RELEVANT POLICY TERMS

24.     Admiral agreed "to pay on behalf of the Insured for Loss because of injury caused by a Medical Incident that happened at Chestnut Hill Hospital after the Retroactive Date[, March 1, 1984,] and prior to march 1, 2005. This coverage applies only when the Claim is first made

against the Insured and report to [Admiral] during the Agreement Period stated above." Ex. A, at

1 of 4.

25.   The Governing Policy defines[1] the term "Loss" to mean:

> the amounts paid as Damages net of all recoveries and salvages, in settlement of Claims or Suits in satisfaction of awards or judgments, incurred as a result of a Loss Event for which this policy provides coverage. Loss does not include salaries of the Insured's employees, or fees and expenses of independent adjusters, third party administrators and attorneys hired by the Insured.

Ex. B, at 15-16 of 27.

26.   The term "Claim" is defined in the Governing Policy to mean:

> 1. the filing of a lawsuit against an Insured, written notice of intent to file a lawsuit, or to arbitrate against an Insured, or a written demand for money or services communicated to an Insured with respect to a Loss Event; *or*

> 2. any specific circumstance or outcome involving a particular person an Insured reasonably believes is likely to result in a demand for compensation for the injury or damage.

Ex. B, at 14 of 27 (emphasis added).

27.   The Demands for Indemnification were made by defendants in the Anderson

Action, Chestnut Hill Hospital, LLC d/b/a Chestnut Hill Hospital and CHHS Hospital Company,

LLC previously d/b/a Chestnut Hill Hospital and CHS/Community Health Systems, against the

Foundation based on alleged contractual obligations.

28.   In order to trigger coverage, the Demands for Indemnification need satisfy only one

of the two definitions of "Claim" as defined in the Policy. In fact, here the Demands for

Indemnification satisfy both definitions.

---

[1] The IBNR Policy provides that "[i]n consideration of the premium charged, it is understood and agreed that except as otherwise amended by this Coverage Agreement, the insurance afforded herein shall follow the terms, conditions, definitions and exclusions of the [Governing Policy]." Ex. A, at 1 of 4. The IBNR Policy does not purport to amend the definition of any of the defined terms set forth in the Governing Policy.

29.     The Demands for Indemnification constitute both: (1) a written demand for money with respect to a Loss Event, as well as (2) "any specific circumstance or outcome involving a particular person an Insured reasonably believes is likely to result in a demand for compensation for the injury or damage." *Id.*

30.     The definition of "Claim" places no restriction on who must make a demand for money or services.

31.     The term "Damages" is defined in the Governing Policy to mean "amounts an Insured is legally obligated to pay to compensate others by law because of a loss Event. Damages does not include fines, penalties or amounts that are uninsurable under applicable law." Ex. B, at 14 of 27.

32.     As set forth in the Governing Policy defines, the term "Loss Event" means:

> 1. With respect to COVERAGE A: HEALTHCARE FACILITY EXCESS PROFESSIONAL LIABILITY, a Medical Incident to which this insurance applies.
>
> 2. With respect to COVERAGE B: HEALTHCARE FACILITY EXCESS GENERAL LIABILITY, an Occurrence that results in Bodily Injury or Property Damage or an offense that results in Personal Injury or Advertising Injury, to which this insurance applies.
>
> 3. With respect to COVERAGE C: FOLLOW-FORM EXCESS LIABILITY, the happening, situation or circumstance that results in a Claim or Suit for injury or damage that is covered by the Underlying Insurance described in the Schedule of Underlying.

Ex. B, at 16 of 27.

33.     "Occurrence" is defined in the Governing Policy to mean:

> an accident, including continuous or repeated exposure to conditions which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of an Insured. Occurrence includes any intention act by or at the direction of the Insured which results in Bodily Injury, if the injury arises solely from the use of reasonable force for the purpose of protecting persons or property.

Case ID: 210503143

Ex. B, at 16-17 of 27.

34.     Pursuant to the Governing Policy, "Suit" means "a civil action seeking Damages and includes an arbitration proceeding to which the Insured is required to submit." Ex. B, at 18 of 27.

35.     Section IV, "LIMITS OF LIABILITY", of the IBNR Policy also provides, in pertinent part, the following:

> A. The Company's liability under this Agreement, regardless of the number of persons or organizations who are Insureds, the number of coverages afforded under the Insuring Agreements, or the number of Claims made or Suits brought against any and all Insureds shall be determined in accordance with the following provisions:
>
> > 1. The Loss Event Limit of Liability set forth above is the most the Company will pay for all covered Loss resulting from any one Loss Event or series of related Loss Events.
> >
> > > a. all Claims made by all persons for injury to one Patient and his or her family, heirs, successors or assigns, arising out of healthcare Professional Services provided to one person or Patient shall be considered one Medical Incident and one Loss Event. For purposes of determining the manner in which coverage is afforded by this Agreement, it is agreed that one person or one Patient shall include the parents and their "Fetus". "Fetus" is defined as the unborn offspring, or multiple offspring, after fertilization until birth.
> > >
> > > b. all Claims arising out of Bodily Injury to a Patient will be considered one Medical Incident and one Loss Event.

Ex. A, at 2 of 4.

36.     The Foundation notified Admiral of its Claim and demanded the defense and indemnification provided for by operation of the IBNR Policy's coverage provisions.

37.     Admiral denied the Claim by email dated March 26, 2020, on the basis that the IBNR policy's prior acts exclusion precluded coverage because "th[e] claim was previously

reported to Medical Inter Insurance Exchange and the complaint was handled by the White and Williams law firm."

38.  The Prior Acts Exclusion, as amended by the IBNR Policy, provides:

This insurance does not apply to:

1. any Claim that the Named Insured's Risk Management or Claim department is aware of prior to the inception date of the Agreement Period set forth above.

2. any Claim arising out of a Loss Event which took place prior to the Retroactive Date set forth above.

3. any Claim that was reported to any other insurer prior to the inception date of the Agreement Period set forth above.

Ex. A, at 2 of 4.

39.  The Foundation rejected Admiral's reliance on the Prior Acts Exclusion as the claim does not meet any of the elements set forth therein, and again demanded confirmation that coverage would be provided as promised and set forth in the IBNR Policy.

40.  In response, Admiral continued its denial of coverage in a letter dated July 9, 2020, wherein it reiterated misinterpretations of the controlling Policy language. Not only did Admiral attempt to read additional language into the definitions already defined by the Governing Policy and followed by the IBNR Policy, but the letter highlighted Admiral's unsupported position regarding the operative language on which it based its coverage denial.

41.  For example, in addressing the meaning of the term "Claim" , Admiral asserted in its July 9th letter that, "[w]hen read as a whole, Subsection (1) of the definition clearly refers to the filing of a lawsuit, written notice of intent to sue, or written demand for money or services *being made by the claimant herself.*" This attempt to redefine a contractual term contradicts the policy language; *see* Ex. B, at 14 of 27; and is an improper attempt by Admiral to shirk its coverage obligations.

42.     Moreover, the IBNR Policy does not have an exclusion for contractual liability. The Governing Policy contains an exclusion entitled "Contractual Liability," which states:

> This insurance does not apply under COVERAGE B to any liability
> of an Insured assumed under any contract or agreement; however,
> this exclusion does not apply to liability for Damages assumed under
> an Incidental Contract[.]

Ex. B., at 5 of 27.

43.     The above exclusion only applies to Coverage B, whereas the IBNR Policy only incorporates Coverage A. Therefore, the contractual liability exclusion does not apply to any claim made under the IBNR Policy.

44.     In response to the Foundation pointing out that the IBNR Policy does not preclude coverage for contractual liability and instead of citing a policy provision, Admiral stated that the Foundation "misses the point." Admiral's denial in this regard was not based on contractual policy language; instead, Admiral relies only on generalities. The most Admiral can muster is that "[C]ontractual liability does not *traditionally* apply to risks involve Professional Liability claims, such as a Medical Incident. Rather, such risks *typically* fall within General Liability coverage…."

45.     In addition to the Foundation's claims related to the Demands for Indemnification, the Foundation also has a claim that arose subsequent to receipt of the Demands for Indemnification when the Foundation was sued directly in the Anderson Action.

46.     As noted *supra*, on April 2, 2020, Plaintiff Tamia Lloyd, by and through her parent and guardian, Tamika Anderson, initially filed a Complaint alleging medical malpractice against various individuals and entities in connection with the delivery of the minor Plaintiff at Chestnut Hill Hospital on November 23, 2001.

47.     On May 19, 2020, the plaintiff in the Anderson Action filed a Motion to add claims directly against the Foundation.

48.     This development, which was communicated to Admiral in a letter dated June 3, 2020, constituted a Claim (again, meeting both definitions as set forth in the Policy) because the Foundation had written notice of intent to be brought into a lawsuit and the motion constituted "a specific circumstance . . . an Insured reasonably believes is likely to result in a demand for compensation for the injury or damage."

49.     Plaintiff's motion to amend the complaint was granted, and an Amended Complaint naming the Foundation as a defendant was filed on June 16, 2020.

50.     Through the Amended Complaint, plaintiff in the Anderson Action alleges:

> 7. At all times material hereto, Defendant, Green Tree Community Health Foundation, formerly known as Chestnut Hill Health Care Foundation (hereinafter "Green Tree"), was and/or is a corporation, partnership, professional corporation, professional association, health care system, health care clinic, hospital and/or other similar entity providing medical, nursing, health care and/or hospital services to the public, organized and existing under the laws of the Commonwealth of Pennsylvania, located in Philadelphia County at the above-captioned address. Plaintiff is asserting a medical professional liability action against this Defendant.
>
> 8. At all times material hereto, defendant, Green Tree, acted individually and/or by and through its predecessors, successors, subsidiaries, parent companies, agent, servants, workers and/or employees, including Defendant, Miriam R. Harden, M.D., The Women's Group of Chestnut Hill, Chestnut Hill Healthcare Medical Associates and those other healthcare providers whose names, handwriting, signature(s) and/or initials are contained in Ms. Anderson's records and/or who were involved in her care at the Defendant Hospital on November 20-23, 2001, including Linda K. Dunn, Angie Lee, M.D. Matin S. Mazidi, M.D., Tracy Stifnel, R.N., Julie Henry, R.N., Vivie Williams, R.N. Jeanne Brenna, R.N., Diane Lomas, R.N., Christ Brinkley, R.N., C.M., Claire Currier, RNC and Tara Bussett, RNC.

Am. Compl., Anderson Action.

51.     In a letter dated December 29, 2020, the Foundation again identified the improper liberties Admiral took in misconstruing the policy language to justify its continued denial of the

Foundation's claim. The Foundation once again demanded that Admiral rescind its coverage denial and agree to honor its coverage obligations that were triggered.

52.     Admiral responded in a letter dated February 3, 2021, wherein Admiral communicated its continued refusal to acknowledge that the Foundation was afforded coverage for its claims made pursuant to the IBNR Policy. In its letter, Admiral repeats self-serving conclusions by misreading the Policy language. For example, despite no support for such a conclusion, Admiral states that, "a 'Claim' under Section 1 [of the definition of "Claim"] can only refer to one filed by a person or patient who was allegedly injured as a result of the Medical Incident."

53.     The IBNR Policy's terms coupled with the absence of any applicable exclusion establish that the IBNR Policy provides insurance coverage for defense and indemnity of the Foundation's claim related to the Demands for Indemnification as well as the claim related to directly defending against allegations in the Anderson Action. Accordingly, Admiral's denial of coverage was plainly improper.

54.     Admiral's unreasonableness in construing the policy language and arriving at its unsupported coverage determinations constitutes bad faith.

## COUNT I – DECLARATORY JUDGMENT

55.     The Foundation has suffered a covered loss under the Policy.

56.     The Foundation's claim is covered under the Policy.

57.     The Foundation's claim is not excluded under the Policy.

58.     Admiral has unreasonably failed to acknowledge and accept coverage under the IBNR Policy, despite the IBNR Policy providing coverage for the claim.

59.     Admiral has known, or should have known that its denial of coverage is without factual or legal merit, yet it continues to refuse to acknowledge coverage.

60.     By reason of the foregoing, an actual and justiciable controversy exists between The Foundation and Admiral.

61.     Resolution of this controversy will establish the Foundation's right to recover defense and indemnity under the IBNR Policy.

62.     Accordingly, The Foundation seeks a declaration from this Court that Admiral is obligated under the IBNR Policy to provide coverage for the claim because the claim is properly covered under the IBNR Policy and no exclusions apply.

63.     The Foundation further seeks a declaration from this Court that the Foundation is entitled to all fees, including attorneys' fees, costs, pre-judgment interest, compensatory damages, direct and consequential damages, and all additional relief the Court deems just and equitable.

**WHEREFORE**, the Foundation prays for a determination by this Court in favor of the Foundation declaring that Admiral must indemnify the Foundation under the terms of the Policy, and must pay the Foundation for its attorneys' fees and costs, and any other and further relief as the Court deems just and equitable.

## COUNT II – BREACH OF CONTRACT

64.     The Foundation repeats and re-alleges each and every foregoing allegation as if fully set forth herein.

65.     The Policy that Admiral sold to the Foundation is valid and enforceable contract of insurance.

66.     The Foundation has complied with all conditions to coverage, including the payment of all insurance premiums due under the IBNR Policy, and satisfied all obligations to the extent that they have not been waived or abrogated by Admiral's conduct, omissions, or actions.

67.     The IBNR Policy imposes on Admiral the "right, duty and obligation to defend any suit against [The Foundation]" with respect to claims for which insurance is afforded under the IBNR Policy.

68.     Admiral has a duty to defend and indemnify the Foundation against the Demands for Indemnification made to the Foundation as well as for the allegations set forth in the Amended Complaint in the Anderson Action.

69.     Admiral's denial of the Foundation's claim is a breach of its obligations under the IBNR Policy.

70.     The Foundation's claim is covered under the IBNR Policy.

71.     The Foundation's claim is not excluded under the IBNR Policy.

72.     Although the Foundation timely submitted a claim for insurance benefits under the IBNR Policy, Admiral has failed to provide a defense or indemnity, constituting a breach of the terms of the IBNR Policy.

73.     As a result of Admiral's breach of contract, the Foundation has sustained and will continue to sustain damages it is entitled to recover pursuant to the IBNR Policy.

**WHEREFORE**, The Foundation hereby demands judgment against Admiral for the following relief:

> (a) an award of damages, including but not limited to compensatory, direct, and consequential;
>
> (b) pre- and post-judgment interest;

Case ID: 210503143

(c) attorneys' fees and costs; and,

(d) such other and further relief that the Court deems just and equitable under the circumstances.

## COUNT III – STATUTORY BAD FAITH

74.    The Foundation repeats and re-alleges the allegations set forth in the foregoing paragraphs as though fully set forth herein.

75.    42 Pa. Cons. Stat. § 8371 provides as follows: "In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%. (2) Award punitive damages against the insurer. (3) Assess court costs and attorney fees against the insurer." 42 Pa. Cons. Stat. § 8371.

76.    The relationship between Admiral and the Foundation is a fiduciary relationship requiring Admiral to act in the best interest of the Foundation as insured under the IBNR Policy.

77.    The conduct of Admiral in failing to recognize and provide a defense or agree to indemnify the Foundation when coverage was triggered by the Demands for Indemnification and subsequently when it was again triggered by virtue of the Foundation's being made a defendant in the Anderson Action – especially when the IBNR Policy did not contain any exclusions that clearly precluded coverage – constitutes bad faith under 42 Pa. Cons. Stat. § 8371.

78.    Admiral did not have a reasonable basis for denying coverage as the Policy provided coverage for the type of losses that the Foundation claimed and for the reasons requested, which are more fully set out above, and there were no applicable exclusions that would have precluded coverage as claimed by Admiral.

79.     However, in conscious or reckless disregard of the law and its duty to the Foundation, Admiral arbitrarily, in bad faith and in violation of its public duty, refused to provide coverage to the Foundation.

80.     Admiral's conduct as set forth here is prohibited under 42 Pa. Cons. Stat. § 8371.

81.     By virtue of Admiral's bad faith, and breach of its fiduciary and statutory duties, the Foundation claims punitive damages including but not limited to those provided pursuant to 42 Pa. Cons. Stat. § 8371.

**WHEREFORE**, the Foundation hereby demands judgment against Admiral for the following relief:

> (a)     punitive damages;
>
> (b)     prejudgment interest;
>
> (c)     attorneys' fees and costs; and,
>
> (d)     such other and further relief that the Court deems just and equitable under the circumstances.

## COUNT IV – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

82.     The Foundation repeats and re-alleges the allegations set forth in the foregoing paragraphs as though fully set forth herein.

83.     The Policy constitutes a valid contract of insurance coverage between the Foundation and Admiral.

84.     Admiral had a contractual obligation to treat the Foundation fairly and in good faith with respect to its interests in the proceeds of the Policy.

85.     Admiral breached its implied covenant to deal with the Foundation in good faith by, among other things:

Case ID: 210503143

     a.      Intentionally or recklessly failing to treat the Foundation and its interests in the proceeds of the Policy fairly;

     b.      Intentionally or recklessly placing its own interests over and to the detriment of Plaintiff's interests, including but not limited to improperly denying the Foundation's claim;

     c.      Misconstruing the language of the policy, relying on alleged generalities and failing to provide to the Foundation an adequate explanation of the basis for Admiral's refusal to pay the Foundation's Claim despite the evidence demonstrating coverage.

86.     As a result of its breaches of the implied covenant of good faith and fair dealing, Admiral is liable to the Foundation for damages for all losses incurred to date by the Foundation or that may be incurred up to the applicable limits under the Policy, together with consequential damages, costs and disbursements of this action, including but not limited to reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**WHEREFORE**, the Foundation prays for a determination by this Court in its favor awarding The Foundation damages for all losses incurred to date by the Foundation, or which may be incurred up to the applicable limits under the Policy, together with consequential damages, costs and disbursements of this action, including but not limited to pre-judgment and post-judgment interest, reasonable attorneys' fees and costs, and any other and further relief as the Court deems just and equitable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Foundation respectfully requests that judgment be entered against Admiral and relief be granted as follows:

(a)     compensatory damages;

(b)     consequential damages;

(c)     punitive damages;

(d)     prejudgment interest;

(e)     attorneys' fees and costs; and,

(f)     such other and further relief that the Court deems just and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

The Foundation hereby demands a trial by jury on all claims so triable.

Dated: June 4, 2021.                        **FLASTER GREENBERG, PC**

                                            By: /s/ Arthur R. Armstrong

                                            Arthur R. Armstrong, Esq.
                                            *Attorneys for Plaintiff*

8298572 v2

Case ID: 210503143

# Incurred But Not Reported (IBNR) Coverage Agreement

Filed and Attested by the
Office of Judicial Records
04 JUN 2021 02:50 pm

| | |
|---|---|
| Name Insured: | Green Tree Community Health Foundation |
| Company: | Admiral Insurance Company |
| Agreement Period: | October 1, 2011 to Indefinite |
| Retroactive Date: | March 1, 1984 |
| Agreement Number: | ERP-PA-10141-1011-01 |
| Limit of Liability: | $1,000,000 each Loss Event/$5,000,000 Agreement Period Aggregate |
| Premium: | $875,000 Fully Earned and Non -Refundable |

In consideration of the premium charged, it is understood and agreed that except as otherwise amended by this Coverage Agreement, the insurance afforded herein shall follow the terms, conditions, definitions and exclusions of the Governing Policy Form designated below:

Governing Policy Form:   Healthcare Facility Excess Liability Insurance (SAE C/O 08/07)
(Coverage A only)

It is further understood and agreed that the Governing Policy Form, together with the provisions of this Coverage Agreement, constitute the policy as referred to hereinafter.

Section I. "Insuring Agreements:" is deleted in its entirety and replaced with the following:

I.   **INSURING AGREEMENTS:**

    A.   COVERAGE A:   HEALTHCARE FACILITY EXCESS PROFESSIONAL LIABILITY (Claims-Made):

        1.   The Company agrees to pay on behalf of the **Insured** for **Loss** because of injury caused by a **Medical Incident** that happened at Chestnut Hill Hospital after the **Retroactive Date** and prior to March 1, 2005.  This coverage applies only when the **Claim** is first made against the **Insured** and reported to the Company during the Agreement Period stated above.

        2.   The Limits of Liability apply to **Loss; Expenses, Costs and Interest.** The Company will, subject to the applicable Limit of Liability, pay for **Expenses, Costs and Interest** incurred as a result of **Claims** or **Suits** under COVERAGE A.

        3.   The Company has no obligation to pay on behalf of the **Insured** for **Loss** in excess of the applicable Limit of Liability set forth above.

**Incurred But Not Reported (IBNR) Coverage Agreement (Con't)**

Section III. "Exclusions" is amended as follows:

Exclusion EE. PRIOR ACTS is deleted in its entirety and replaced with the following:

EE. PRIOR ACTS

This insurance does not apply to:

1. any **Claim** that the **Named Insured's** Risk Management or Claim Department is aware of prior to the inception date of the Agreement Period set forth above.

2. any **Claim** arising out of a **Loss Event** which took place prior to the **Retroactive Date** set forth above.

3. any **Claim** that was reported to any other insurer prior to the inception date of the Agreement Period set forth above.

Section IV. "Limits of Liability" is deleted in its entirety and replaced with the following:

IV.     LIMITS OF LIABILITY

A. The Company's liability under this Agreement, regardless of the number of persons or organizations who are **Insureds**, the number of coverages afforded under the Insuring Agreements, or the number of **Claims** made or **Suits** brought against any and all **Insureds** shall be determined in accordance with the following provisions:

1. The **Loss Event** Limit of Liability set forth above is the most the Company will pay for all covered **Loss** resulting from any one **Loss Event** or series of related **Loss Events**.

   a.     all **Claims** made by all persons for injury to one **Patient** and his or her family, heirs, successors or assigns, arising out of healthcare **Professional Services** provided to one person or **Patient** shall be considered one **Medical Incident** and one **Loss Event**. For purposes of determining the manner in which coverage is afforded by this Agreement, it is agreed that one person or one **Patient** shall include the parents and their "Fetus". "Fetus" is defined as the unborn offspring, or multiple offspring, after fertilization until birth.

   b.     all **Claims** arising out of **Bodily Injury** to a **Patient** will be considered one **Medical Incident** and one **Loss Event**.

   c.     all **Claims** made by all persons arising out of the same or related acts or omissions resulting from research or development will be considered one **Medical Incident** and one **Loss Event**.

   d.     all **Claims** made by all persons arising out of the same or related act or omission by a formal accreditation board or committee; medical standards board or committee; or other similar board or committee will be considered one **Medical Incident** and one **Loss Event**.

**Incurred But Not Reported (IBNR) Coverage Agreement (Con't)**

2. Subject to subparagraph 1. above, the Company's liability for all **Loss** because of all injuries arising out of all **Loss Events** to which this insurance applies shall not exceed the Agreement Period Aggregate set forth above.

B. Only the Coverage Agreement in effect when the **Claim** was first made and reported will apply and under no circumstances will any other Insuring Agreement or Agreement issued by the Company apply.

C. Nothing contained in this Section shall affect the Company's undertaking to pay the amounts described in Section VII. <u>CONDITIONS</u>, C. APPEALS.

Section VII. CONDITIONS, is amended as follows:

Condition F. , CANCELLATION is deleted.

Condition G.,   COMPANY'S RIGHTS AND OBLIGATION, is deleted in its entirety and replaced with the following:

G. COMPANY'S RIGHTS AND OBLIGATION

1. The Company shall have the exclusive right, duty and obligation to defend any suit against an Insured with respect to which insurance is afforded under the policy. The company shall have no duty or obligation to defend any suit against an Insured seeking damages with respect to which coverage is not afforded under the policy.

Condition H.,   **EXPENSES, COSTS AND INTEREST,** is deleted in its entirety and replaced with the following:

H. EXPENSES, COSTS AND INTEREST

1. **Expenses, costs and interest** will be paid by the Company.

2. **Expenses, costs and interest** are always included within, and are not in addition to, the Company's Limit of Liability stated above.

Condition I.,   **EXTENDED REPORTING PERIOD** OPTION, is deleted in its entirety.

Condition K.,   **INSURED'S DUTIES IN THE EVENT OF CLAIM OR SUITS,** is deleted in its entirety and replaced with the following:

K. **INSURED'S** DUTIES IN THE EVENT OF **CLAIM OR SUITS**

1. In the event of a **Loss Event** the **Insured** must, as a condition to coverage under Agreement:

a. Give written notice to the Company, as soon as practicable of any **Claim**

b. Immediately forward to the Company a complete copy of every demand, notice, summons or other process received individually or through a representative in connection with any **Suit** or **Claim** seeking **Damages.**

**Incurred But Not Reported (IBNR) Coverage Agreement (Con't)**

c.  Maintain accurate descriptive records of all healthcare services rendered, which records shall be available to the Company as they relate to any **Claim** or **Loss Event** to which this Agreement applies.

d.  Include in all reports, provided in accordance with this Condition, reasonably obtainable information with respect to the time, date, place, circumstances, **Insureds** involved, details regarding the alleged injury, **Bodily Injury**, names of any potential witnesses; name of the **Patient** and claimants; the type of healthcare **Professional Services** rendered and the extent and type of **Claim** or **Suit** anticipated. All notices must be in writing and addressed to the Company.

e.  Cooperate with the Company, and upon the Company's request, assist in making settlements, in the conduct of a **Suit** and in enforcing any right of contribution or indemnity against any person or organization who may be liable to an **Insured** because of injury or damage with respect to which insurance is or may be afforded under this Agreement. Attend all hearings and trials and assist in securing and giving evidence and obtaining witnesses.

Condition L.,  **MAINTENANCE OF UNDERLYING INSURANCE; RESPONSIBILITY FOR UNDERLYING AMOUNTS**, is deleted.

Condition M.,  **OBLIGATIONS OF THE FIRST NAMED INSURED**, is deleted.

Condition S.,  **UNDERLYING AMOUNTS**, is deleted.

Authorized Representatives:

_____          december 13, 2011
Admiral Insurance Company                    Date

_____          11/15/2011
Green Tree Community Health Foundation       Date

HEALTHCARE FACILITY EXCESS LIABILITY INSURANCE

<u>CONTENTS</u>



Filed and Attested by the
Office of Judicial Records
04 JUN 2021 02:50 pm
S. BRYANT

I.     INSURING AGREEMENTS:

       COVERAGE A:  Healthcare Facility Excess Professional Liability (Claims-Made)

       COVERAGE B:  Healthcare Facility Excess General Liability

       COVERAGE C:  Follow-Form Excess Liability

II.    WHEN A **CLAIM** IS TO BE CONSIDERED AS FIRST MADE AND REPORTED

III.   EXCLUSIONS

IV.    LIMITS OF LIABILITY

V.     DEFINITIONS

VI.    **INSUREDS**

VII.   CONDITIONS

SAE C/O 001 (08/07)

Case ID: 210503143

## HEALTHCARE FACILITY EXCESS LIABILITY INSURANCE

THIS POLICY INCLUDES INSURING AGREEMENTS THAT PROVIDE COVERAGE ON A CLAIMS-MADE BASIS. UNDER THESE INSURING AGREEMENTS ONLY THOSE **CLAIMS** THAT ARE FIRST MADE AND REPORTED TO THE COMPANY IN ACCORDANCE WITH THE PROVISIONS OF THIS POLICY WILL BE COVERED. PLEASE READ THE POLICY CAREFULLY.

Coverage under this policy is limited to **Loss Events** in the **Policy Territory**. The Company's obligation to indemnify the **Insured** for **Loss** in excess of the **Underlying Amounts** or **Underlying Limits of Liability** shall not exceed the Limit of Liability set forth in Item 5. of the Declarations. Please read the policy carefully.

In consideration of the payment of premium and subject to the Insuring Agreements, Definitions, Conditions, Exclusions and other terms contained in this policy and in reliance upon statements made in the application and in the Declarations, the Company agrees with the **Insureds** as follows

I.   **INSURING AGREEMENTS**

    A.   COVERAGE A:  HEALTHCARE FACILITY EXCESS PROFESSIONAL LIABILITY (Claims-Made):

        1.   The Company agrees to indemnify the **Insured** for **Loss** in excess of the **Underlying Amounts** because of injury caused by a **Medical Incident** that happens after the **Retroactive Date** set forth in Item 7. of the Declarations and prior to the expiration or termination date of this policy.  This coverage applies only when the **Claim** is first made against the **Insured** and reported to the Company during the Policy Period stated in Item 3. of the Declarations or any applicable **Extended Reporting Period**.

        2.   If Item 5. of the Declarations indicates that the Limits of Liability apply to **Loss; Expenses, Costs and Interest**; and pro rata reimbursement of **Expenses, Costs and Interest** the Company will, subject to the applicable Limit of Liability, reimburse the **Insured** for **Expenses, Costs and Interest** incurred as a result of **Claims** or **Suits** under COVERAGE A.  The Company will reimburse the **Insured** for payment of **Expenses, Costs and Interest** incurred in the same ratio that the Company's proportion of the **Loss** paid in settlement of **Claims** and in satisfaction of judgments bears to the total amount of **Loss** paid.

        3.   COVERAGE A applies only if the **Underlying Amounts** have been actually paid.  **Expenses, Costs and Interest** will not reduce the **Underlying Amounts** unless specifically designated in the Schedule of Underlying.

        4.   Under COVERAGE A, the Company has no obligation to indemnify the **Insured** for **Loss** in excess of the applicable Limit of Liability set forth in Item 5. of the Declarations.

    B.   COVERAGE B:  HEALTHCARE FACILITY EXCESS GENERAL LIABILITY:

        1.   Bodily Injury **and** Property Damage:

            The Company agrees to indemnify the **Insured** for **Loss** in excess of the **Underlying Amounts** because of **Bodily Injury** or **Property Damage**. This insurance applies only to **Bodily Injury** or **Property Damage** that is sustained during the Policy Period caused by an **Occurrence**.

        2.   Personal Injury and Advertising Injury:

            The Company agrees to indemnify the **Insured** for **Loss** in excess of the **Underlying Amounts** because of **Personal Injury** or **Advertising Injury** arising out of a covered offense committed during the Policy Period.

        3.   If Item 5. of the Declarations indicates that the Limits of Liability apply to **Loss; Expenses, Costs and Interest**; and pro rata reimbursement of **Expenses, Costs and Interest** the Company will, subject to the applicable Limit of Liability, reimburse the **Insured** for **Expenses, Costs and Interest** incurred as a result of **Claims** or **Suits** under COVERAGE B.  The Company will reimburse the **Insured** for payment of

Case ID: 210503143

**Expenses, Costs and Interest** incurred in the same ratio that the Company's proportion of the **Loss** paid in settlement of **Claims** and in satisfaction of judgments bears to the total amount of **Loss** paid.

4. COVERAGE B applies only if the **Underlying Amounts** have been actually paid. **Expenses, Costs and Interest** will not reduce the **Underlying Amounts** unless specifically designated in the Schedule of Underlying.

5. Under COVERAGE B, the Company has no obligation to indemnify the **Insured** for **Loss** in excess of the applicable Limit of Liability set forth in Item 5. of the Declarations.

C. COVERAGE C: FOLLOW-FORM EXCESS LIABILITY

1. The Company agrees to indemnify the **Insured** for **Loss** covered by the **Underlying Insurance**.

2. The provisions of the **Underlying Insurance** are incorporated as part of COVERAGE C: FOLLOW-FORM EXCESS LIABILITY, except for:

   a. any provision which applies to or imposes an obligation or duty to defend;

   b. the Limits of Liability; and

   c. any other term or condition which is inconsistent with any term or condition of this policy. In the event of any inconsistency, the terms and conditions of this policy will control.

3. The Company will indemnify the **Insured** for **Loss** covered by the **Underlying Insurance** and this Insuring Agreement, only after the **Underlying Limits of Liability** have been paid.

4. Under COVERAGE C, the Company's obligation to indemnify the Insured for **Loss** in excess of the **Underlying Limits of Liability** shall not exceed the Limit of Liability set forth in Item 5. of the Declarations. COVERAGE C applies only if the **Underlying Limit of Liability** has been actually paid.

II. <u>WHEN A **CLAIM** IS TO BE CONSIDERED AS FIRST MADE AND REPORTED</u>

A. With respect to COVERAGE A:

1. A **Claim** shall be considered first made on the date the **Named Insured's** Risk Management or Claim Department becomes aware of the injury or adverse outcome.

2. A **Claim** involving the injuries or adverse outcomes listed under 2., a.–h., which the **Named Insured's** Risk Management or Claim Department believes is reasonably likely to result in a demand for **Damages**, shall be considered to have been first reported to the Company on the date it receives the **Named Insured's** detailed written report at the address set out below:

   Admiral Insurance Company
   c/o Claims Department
   Berkley Medical Excess Underwriters, LLC
   390 South Woods Mill Road, Suite 125
   Chesterfield, MO 63017

   a. unexpected deaths, suicide, or cardiac/respiratory arrest;

   b. unanticipated neurological, sensory and/or systemic deficits, brain damage, permanent paralysis, paraplegia and quadriplegia, partial or complete loss of sight or hearing, sepsis or kidney failure;

   c. birth related injuries, fetal or maternal death, anesthesia related injuries, births with an Apgar score below 5, infant resuscitation, dislocations and fractures;

   d. thermal, chemical, radiological or electrical burns;

SAE C/O 001 (08/07)

   e.  severe internal injuries, organ lacerations, infections, foreign body retention, sensory or reproductive organ injury;

   f.  substantial disability, fractures, disfigurement, or amputation;

   g.  any **Claim** reserved at $250,000 or more; or

   h.  any other **Claim** likely to result in significant erosion or exhaustion of the **Underlying Amount** or **Underlying Insurance**.

  3.  The detailed written report of the injuries or adverse outcomes listed under 2., a.–h. must be received by the Company during the Policy Period in effect when the **Named Insured's** Risk Management or Claim Department becomes aware that a demand for **Damages** is likely to result from the **Medical Incident** and must include:

   a.  a description of the **Medical Incident**;

   b.  the date of the **Medical Incident**;

   c.  the name of the person who was injured;

   d.  the names of the **Insureds** involved in the **Medical Incident**; and

   e.  any **Suit** papers or written demand for **Damages**.

  4.  All **Claims** not resulting from the injuries and/or adverse outcomes described in 2., a.-h. shall be considered to have been first reported to the Company on the date it first receives a quarterly Loss Run describing the **Claim** as required by Section VII. <u>CONDITIONS</u>, K. **INSURED'S** DUTIES IN EVENT OF **CLAIM** OR **SUITS**. The Loss Run must be received at the address set out under 2. above.

  5.  All **Claims** arising out of the same **Medical Incident** causing injury to a **Patient** shall be considered as having been made at the time the **Claim** was first made and reported.

  6.  The following shall not be considered as a report of a **Claim** under this policy:

   a.  a report of a **Medical Incident** or **Occurrence** that is made as part of an engineering, loss control or risk management program; or

   b.  incident reports.

B. To meet the requirement that a **Claim** be first made against the **Insured** and reported to the Company during the Policy Period, the **Insured** must comply with the provisions of this Section. Nothing contained in this Section shall affect the **Insured's** obligations to comply with the provisions of Section VII. <u>CONDITIONS</u>, K. **INSURED'S** DUTIES IN EVENT OF **CLAIM** OR **SUITS**.

III. <u>EXCLUSIONS</u>

A. AIRCRAFT, **AUTOMOBILE** OR WATERCRAFT

  1.  Except to the extent coverage is provided by applicable **Underlying Insurance** under COVERAGE C, this insurance does not apply to any liability arising out of the ownership, maintenance, use, or entrustment to others, including the loading or unloading of:

   a.  an airplane, helicopter, aircraft or any aviation related activity;

   b.  an **Automobile**, motorcycle, moped, truck, three-wheeler, snowmobile or other motor vehicle of whatever type or nature, and whether designed for travel on or off public roads; or

       c.    a motor or sail boat or other watercraft, of whatever type or nature, owned, operated, rented by or loaned to any **Insured**.

2.    This exclusion does not apply to **Bodily Injury** resulting from the loading or unloading of a **Patient** on the **Insured's** premises if the loading or unloading is associated with healthcare **Professional Services** provided by an **Insured**.

B.    ALIENATED PREMISES

This insurance does not apply under COVERAGE B to liability arising out of **Property Damage** to premises alienated by the **Named Insured**.

C.    ASBESTOS

This insurance does not apply to any liability based upon or arising out of asbestos, including, but not limited to the:

1.    manufacture, mining use, sale, or exposure to asbestos products, fibers or dust;

2.    transportation, storage or disposal of asbestos or goods or products containing asbestos;

3.    removal of asbestos from any goods, products or structures; or

4.    inhalation, ingestion or physical exposure to asbestos or goods or products containing asbestos.

D.    **CLAIMS** MADE DURING AN **EXTENDED REPORTING PERIOD**

This insurance does not apply to any liability arising out of a **Claim** that is first made and reported to the Company during an applicable **Extended Reporting Period** if there is any other insurance that applies to the **Claim**.

E.    CONTRACTUAL LIABILITY

This insurance does not apply under COVERAGE B to any liability of an **Insured** assumed under any contract or agreement; however, this exclusion does not apply to liability for **Damages** assumed under an **Incidental Contract**, including but not limited to a warranty of fitness or quality of the **Insured's Products** or a warranty that work performed by or on behalf of the **Named Insured** will be done in a workmanlike manner.

F.    CRIMINAL OR KNOWINGLY WRONGFUL ACTS

1.    This insurance does not apply to any liability of an **Insured** based upon or arising out of the performance of any unlawful, dishonest, criminal or knowingly wrongful act by any **Insured**.

2.    This exclusion does not apply to liability of the **Named Insured** or its officers or managing agents when the criminal or knowingly wrongful act takes place without the knowledge and/or consent of an officer or managing agent of the **Named Insured**.

G.    DAMAGE TO IMPAIRED PROPERTY OR PROPERTY NOT PHYSICALLY DAMAGED

1.    This insurance does not apply under COVERAGE B to any liability for or arising out of loss of use of tangible property which has not been physically damaged or destroyed resulting from:

    a.    a delay in or lack of performance by or on behalf of an **Insured** of any contract or agreement; or

    b.    the failure of an **Insured's Products** or work performed by or on behalf of an **Insured** to meet the level of performance, quality, fitness or durability warranted or represented by an **Insured**.

2.    This exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical damage to or destruction of an **Insured's Products** or work performed by or on behalf

SAE C/O 001 (08/07)

of an **Insured** after such products or work have been put to use by any person or organization other than an **Insured**.

H.  DAMAGE TO THE **INSURED'S PRODUCTS**

This insurance does not apply under COVERAGE B to **Property Damage** to an **Insured's Products** arising out of the products or any part of the products.

I.  DAMAGE TO PROPERTY IN THE CARE, CUSTODY OR CONTROL OF AN **INSURED**

1.  This insurance does not apply under COVERAGE B to **Property Damage** to:

    a.  property owned, occupied or rented by any **Insured**;

    b.  property used by any **Insured**;

    c.  property in any **Insured's** care, custody or control;

    d.  property over which any **Insured** is exercising physical control for any reason; or

    e.  premises any **Insured** sells, gives away or abandons, if the **Property Damage** arises out of any part of those premises.

2.  This exclusion does not apply to **Property Damage** to the property of others resulting from a fire at premises rented to or leased by an **Insured**.

J.  DAMAGE TO THE **INSURED'S** WORK

This insurance does not apply under COVERAGE B to **Property Damage** to work performed by or on behalf of an **Insured** arising out of the work or any part of the work, or out of materials, parts or equipment furnished in connection with the work.

K.  **DISCRIMINATION**

This insurance does not apply to any liability based upon or arising out of **Discrimination**.

L.  EMPLOYEE BENEFITS

Except as may be provided by applicable **Underlying Insurance** under COVERAGE C or by endorsement, this insurance does not apply to any liability based upon or arising out of the administration of any **Insured's** Employee Benefits program including, but not limited to:

1.  group life, health, dental or optical insurance;

2.  health maintenance organizations (HMO) or preferred provider organizations (PPO);

3.  profit-sharing, savings, employee stock subscription or employee loan programs;

4.  pension, retirement or salary continuation plans;

5.  employee discount, travel or vacation plans; or

6.  any plan or program that is similar to those listed in items 1.-5. of this exclusion.

M.  EMPLOYMENT PRACTICES

1.  This insurance does not apply to any liability based upon or arising out of:

SAE C/O 001 (08/07)

    a.    refusal to employ;

    b.    termination of employment;

    c.    demotion, evaluation, reassignment, or discipline;

    d.    coercion, defamation, harassment, humiliation, **Discrimination**, or other employment related practices, policies, acts or omissions; or

    e.    consequential injury, **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** as a result of the conduct listed in items a.-d. of this exclusion.

2.    This exclusion does not apply under COVERAGE A to liability that results from the actions taken by a duly authorized professional committee of a **Named Insured** or its duly organized medical staff which are formally approved by the **Named Insured**; but this exception applies only if the liability results from activities that are directly related to peer review and credentialing.

N.    FAILURE TO PERFORM UNDER A CONTRACT

This insurance does not apply under COVERAGE B to any liability arising out of an **Insured's** failure to perform under a contract or agreement.

O.    INCORRECT DESCRIPTION

This insurance does not apply under COVERAGE B to **Advertising Injury** arising out of an incorrect description or mistake in an advertised price of a product or service sold or offered for sale.

P.    INJURY TO AN EMPLOYEE OR LEASED WORKER

1.    This insurance does not apply under COVERAGE A or COVERAGE B to any liability of an **Insured** arising out of **Bodily Injury** to an employee of any **Insured**. For the purposes of this exclusion employee includes a leased worker. This exclusion applies to any **Claim** that may be made by the spouse or relative of an employee and to any obligation an **Insured** may have to indemnify another because of **Bodily Injury** to an employee.

2.    This exclusion does not apply under COVERAGE A to **Bodily Injury** sustained by an employee while receiving healthcare **Professional Services** from another **Insured** which result in a **Medical Incident** covered by this policy.

Q.    **INSURED VS. INSURED**

1.    This insurance does not apply to any liability arising out of a **Claim** made by any **Insured** against any other **Insured**.

2.    This exclusion does not apply under COVERAGE A to **Bodily Injury** sustained by an **Insured** while receiving healthcare **Professional Services** from another **Insured** which results in a **Medical Incident** otherwise covered by this policy.

R.    INTENTIONAL INTERFERENCE WITH THE RIGHTS OF OTHERS

This insurance does not apply under COVERAGE B to liability for **Personal Injury** or **Advertising Injury** arising out of:

1.    an **Insured's** intentional interference with the rights of others; or

2.    a statement made or published by or at the direction of an **Insured** with malice; or

3.    a statement made by an **Insured** with knowledge that the statement was false.

SAE C/O 001 (08/07)

Case ID: 210503143

S.   LIQUOR LIABILITY

This insurance does not apply under COVERAGE B to **Bodily Injury** or **Property Damage** for which the **Insured** or his indemnitee may be held liable:

1.   as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages; or

2.   if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed:

   a.   by, or because of violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage; or

   b.   by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person.

   Part b. of this exclusion does not apply to liability of the **Insured** or his indemnitee as an owner or lessee described in 2. above; nor does this exclusion apply with respect to liability of the **Insured** or his indemnitee arising out of the giving or serving of alcoholic beverages when incidental to the **Named Insured's** business, provided the **Named Insured** is not engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages.

T.   MANAGED CARE

This insurance does not apply under COVERAGE A to any liability arising out of the operation, ownership, management or control of any health maintenance organization (HMO) or preferred provider organization (PPO) or other similar organization. However, this exclusion does not apply where the **Insured's** liability is based solely on its status as a provider of healthcare **Professional Services** to the enrollees of an HMO, PPO or other similar organization that is not owned, managed or controlled by the **Insured**.

U.   MANAGEMENT SERVICES

This insurance does not apply to any liability arising out of management services provided by the **Insured**, or independent contractors retained by the **Insured**, to hospitals or other healthcare facilities not owned by the **Named Insured**. This exclusion does not apply to liability arising out of management services provided by an **Insured** under a contract if the contract is disclosed to the Company and specifically endorsed on the policy. This exclusion applies whether or not monetary or other consideration is received by an **Insured** for management services.

V.   MANDATORY **AUTOMOBILE** INSURANCE

This insurance does not apply under COVERAGE C to any liability or obligation arising out of an **Automobile** No-Fault Reparations Law for Personal Injury Protection, however titled or styled, or any **Automobile** uninsured or underinsured motorists act, law or obligation.

W.   MATERIAL PUBLISHED PRIOR TO POLICY PERIOD

This insurance does not apply under COVERAGE B to **Personal Injury** or **Advertising Injury** arising out of a publication or utterance if the first publication or utterance of the same or similar material was made prior to the effective date of this policy.

X.   **MOBILE EQUIPMENT**

This insurance does not apply under COVERAGE B to **Bodily Injury** or **Property Damage**;

1.   arising out of and in the course of the transportation of **Mobile Equipment** by an **Automobile** owned or operated by or rented or loaned to any **Insured**;

SAE C/O 001 (08/07)

2. arising out of the ownership, maintenance, operation, use, existence, loading or unloading of any **Mobile Equipment** while being used in any pre-arranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation of any such contest or activity.

## Y.   MOLD

This insurance does not apply to any liability arising out of the actual or threatened growth, release, transmission, migration, dispersal, inhalation, absorption, ingestion, physical contact, or exposure to **Mold, Spores, Fungus, Mildew, Yeast and/or other Toxins**, whether or not the **Mold, Spores, Fungus, Mildew, Yeast and/or other Toxins** is or was at any time airborne as a particle, located in or on real property, personal property, product, work, premises, site, location, or any other tangible property, transmitted in any fashion or found or contained in any material whatsoever; or to any **Loss**, cost or expense arising directly or indirectly out of any:

1. request, demand or order that any **Insured** or others test for, monitor, sample, clean up, remediate, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **Mold, Spores, Fungus, Mildew, Yeast and/or other Toxins** or products and materials containing one or more of them;

2. **Claim** or **Suit** by or on behalf of a governmental authority for damages because of investigating, testing for, monitoring, sampling, cleaning up, remediation, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of **Mold, Spores, Fungus, Mildew, Yeast and/or other Toxins** or products and materials containing one or more of the aforementioned;

3. actual, alleged, possible or threatened **Contamination** of any part of the **Environment**;

4. fines, penalties, or costs or assessments of any kind or for any purpose arising from any **Contamination** which any **Insured** is directed to pay;

5. supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs a., b., c. and d. above;

6. obligation to share damages with or repay someone else who must pay damages because of any injury under paragraphs a., b., c., d. and e. above;

7. devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space, in connection with any **Mold, Spores, Fungus, Mildew, Yeast and/or other Toxins**.

## Z.   NUCLEAR MATERIAL

This insurance does not apply to any liability resulting directly or indirectly from **Nuclear Materials, Waste Materials, Radioactive Materials**, or the **Hazardous Properties** of **Nuclear Materials, Radioactive Materials**, or **Waste Materials**, or from any radiation or **Radioactivity**, unless:

1. the liability is a result of a **Medical Incident** for which coverage is afforded under COVERAGE A; or

2. the liability arises from Bodily Injury or property damage caused by an Occurrence, arising out of the use or intended use of Nuclear Materials, Waste Materials, Radioactive Materials, or the Hazardous Properties of Nuclear Materials, Radioactive Materials or Waste Materials, or from radiation or Radioactivity, in the furnishing of healthcare **Professional Services** and only at premises owned, operated or controlled by, or rented to the Named Insured and for which coverage is afforded under COVERAGE A or COVERAGE B.

## AA.   OTHER BUSINESS PURSUITS

This insurance does not apply under COVERAGE A to any liability arising from the activities of any **Insured** acting in the capacity of proprietor, administrator, superintendent, executive officer, director, partner, employee or trustee of any hospital, clinic, laboratory or other business enterprise not listed as a **Named Insured** under this policy.

## BB.   PATIENT INJURY

SAE C/O 001 (08/07)

Case ID: 210503143

This Insurance does not apply, under COVERAGE B or COVERAGE C to any liability arising out of **Bodily Injury** to a **Patient**.

CC. POLLUTION

This insurance does not apply to any liability for:

1.   injury or damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**:

   a.   at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **Insured**;

   b.   at or from any premises, site or location which is or was at any time used by or for any **Insured** or others for the handling, storage, disposal, processing or treatment of waste;

   c.   which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **Insured** or any person or organization for whom you may be legally responsible; or

   d.   at or from any premises, site or location on which any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured's** behalf are performing operations:

      i.   if the **Pollutants** are brought on or to the premises, site or location in connection with such operations by such **Insured**, contractor or subcontractor; or

      ii.   if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**.

   Subparagraph a. does not apply to **Bodily Injury** that is sustained within a building owned or leased by an **Insured** that is caused by fumes, smoke, vapor or soot from equipment used to heat or cool the building.

   Subparagraphs a. and d. do not apply to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a "hostile fire". As used in this exclusion, a "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

2.   Any **Loss**, cost or expense arising out of any:

   a.   Request, demand or order that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

   b.   **Claim** or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

Case ID: 210503143

DD. PRODUCT RECALL

This insurance does not apply under COVERAGE B to liability arising out of the withdrawal, inspection, repair, replacement, recall, return, or loss of use of an **Insured's Products** or work completed by or for an **Insured** or of any property of which such products or work form a part.

EE. PRIOR ACTS

This insurance does not apply under COVERAGE A to:

1.     any **Claim** that the **Named Insured's** Risk Management or Claim Department is aware of prior to the effective date of this policy set forth in Item 3. of the Declarations;

2.     any **Claim** arising out of a **Loss Event** which took place prior to the **Retroactive Date** set forth in Item 7. of the Declarations; and

3.     any **Claim** that was reported to the Company or any other insurer prior to the effective date of this policy set forth in Item 3. of the Declarations.

FF. PROFESSIONAL SERVICES

This insurance does not apply under COVERAGE B or C to any liability arising out of the rendering of or failure to render any **Professional Service**, or any liability because of a negligent act, error or omission in conjunction with any **Professional Service**. This exclusion does not apply to COVERAGE C to the extent coverage is afforded by the applicable **Underlying Insurance** for the liability resulting from the **Professional Service**.

GG. PROPERTY OWNED OR CONTROLLED BY AN **INSURED**

This insurance does not apply under Coverage B to any liability arising out of **Property Damage** to:

1.     property an **Insured** owns, rents, or occupies;

2.     premises an **Insured** sells, gives away or abandons, if the **Property Damage** arises out of any part of the premises;

3.     property loaned to an **Insured**;

4.     personal property in the care, custody or control of an **Insured**;

5.     that particular part of real property on which an **Insured** or any contractors or subcontractors working directly or indirectly on behalf of an **Insured** are performing operations, if the **Property Damage** arises out of the operations; or

6.     that particular part of any property that must be restored, repaired or replaced because an **Insured's** work was incorrectly performed on it.

HH. SEXUAL MISCONDUCT

1.     This insurance does not apply to any liability of an **Insured** arising out of a romantic or sexual relationship or actual or alleged sexual intimacy, sexual molestation, sexual harassment, sexual exploitation, or sexual assault of any kind.

2.     This exclusion does not apply to liability of the **Named Insured** or its officers or managing agents who had no knowledge of the romantic or sexual relationship or the sexual misconduct or activity.

II.   **TERRORISM**

SAE C/O 001 (08/07)

Case ID: 210503143

1. This insurance does not apply to any liability caused by, contributed to or in any way arising directly or indirectly out of or in connection with **Terrorism** including, but not limited to any contemporaneous or ensuing injury or damage caused by fire, looting or theft.

2. **Terrorism** means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate or coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

3. **Terrorism** shall also include any act which is verified or recognized by the United States Government as an act of **Terrorism**.

JJ.  UNFAIR COMPETITION AND BUSINESS PRACTICES

This insurance does not apply to any liability arising out of unfair or infringing business activities or methods of competition including but not limited to:

1. violation or alleged violation of any antitrust law, price fixing; or restraint of trade law;

2. a dispute over revenue, profits or fees;

3. violation of any deceptive trade practices statute; or

4. under COVERAGE B, **Advertising Injury** arising out of the infringement of any intellectual property right of others, except the infringement of copyright, title or slogan in an advertisement of an **Insured's** products or services.

KK.  UNLAWFUL **PATIENT** TRANSFER

1. This insurance does not apply under COVERAGE A to any liability of any **Insured** arising out of the alleged transfer of a **Patient** in violation of any statute or regulation prohibiting **Patient** transfers or regulating the circumstances under which **Patient** transfers may be effected.

2. This exclusion shall not apply to liability resulting from a **Patient** transfer if the **Claim** results from a **Medical Incident** to which this insurance applies.

LL.  UNIDENTIFIED JOINT VENTURE OR PARTNERSHIP

This insurance does not apply to the liability of any **Insured** for the activities of a joint venture or partnership that is not identified in the Declarations as a **Named Insured**.

MM.  VIOLATION OF A STATUTE

This insurance does not apply to any liability arising out of the willful violation of a statute or ordinance committed by or with the knowledge or consent of an **Insured**. This exclusion includes, but is not limited to violation of RICO or any similar state law.

NN.  WAR

This insurance does not apply to any liability of an **Insured** due to war, whether or not declared, civil war, insurrection, rebellion, act of revolution or to any act or condition incident to any of the foregoing.

OO.  WORKERS' COMPENSATION AND SIMILAR LAWS

This insurance does not apply to any liability under or obligation created by any Workers' Compensation, Unemployment Compensation or Disability Benefits Law, the Employee Retirement Income Security Act of 1974,

SAE C/O 001 (08/07)

Case ID: 210503143

as amended and in effect from time to time, or any rule or regulation promulgated thereunder, or under any similar law; and to any liability arising out of sickness, disease or death resulting therefrom of any employee of the **Insured**, if such sickness, disease or death arose out of, or in the course of the employment or was aggravated by the employment.

IV.    LIMITS OF LIABILITY

A.    The Company's obligation to indemnify the **Named Insured** applies only after the **Underlying Amounts** or the **Underlying Limits of Liability** have been paid as a result of a **Loss Event** covered by this policy.

B.    The Company's liability under this policy, regardless of the number of persons or organizations who are **Insureds**, the number of coverages afforded under the Insuring Agreements, or the number of **Claims** made or **Suits** brought against any and all **Insureds** shall be determined in accordance with the following provisions:

    1.    The **Loss Event** Limit of Liability set forth in Item 5.A. of the Declarations is the most the Company will pay for all covered **Loss** resulting from any one **Loss Event** or series of related **Loss Events**.

        a.    all **Claims** made by all persons for injury to one **Patient** and his or her family, heirs, successors or assigns, arising out of healthcare **Professional Services** provided to one person or **Patient** shall be considered one **Medical Incident** and one **Loss Event**. For purposes of determining the manner in which coverage is afforded by this policy, it is agreed that one person or one **Patient** shall include the parents and their "Fetus". "Fetus" is defined as the unborn offspring, or multiple offspring, after fertilization until birth.

        b.    all **Claims** arising out of **Bodily Injury** to a **Patient** caused by the same **Occurrence** will be considered one **Medical Incident** and one **Loss Event**.

        c.    all **Claims** made by all persons arising out of the same or related acts or omissions resulting from research or development will be considered one **Medical Incident** and one **Loss Event**.

        d.    all **Claims** made by all persons arising out of the same or related act or omission by a formal accreditation board or committee; medical standards board or committee; or other similar board or committee will be considered one **Medical Incident** and one **Loss Event**.

    2.    Subject to subparagraph 1. above, the Company's liability for all **Loss** because of all injuries arising out of all **Loss Events** to which this insurance applies shall not exceed the aggregate limit set forth in Item 5.B. of the Declarations.

C.    With respect to COVERAGE A, only the policy in effect when the **Claim** was first made and reported will apply and under no circumstances will any other Insuring Agreement or policy issued by the Company apply.

D.    With respect to COVERAGE B, only the policy in effect at the time the **Bodily Injury** or **Property Damage** was first sustained and/or the **Personal Injury** or **Advertising Injury** offense was first committed will apply  and under no circumstances will any other Insuring Agreement or policy issued by the Company apply.

E.    Item 5. of the Declarations describes the types of payments that will reduce the Limit of Liability.

    1.    If the Declarations state that the Limits of Liability apply to **Loss** and **Expenses, Costs and Interest** the following amounts will reduce the each **Loss Event** and Aggregate Limit of Liability:

        a.    **Loss** paid by the Company; and

        b.    **Expenses, Costs and Interest** paid or incurred by the Company.

    2.    If the Declarations state that the Limits of Liability apply to **Loss**; **Expenses, Costs and Interest**; and pro rata reimbursement of **Expenses, Costs and Interest** the following amounts will reduce the each **Loss Event** and Aggregate Limit of Liability under Item 5. of the Declarations:

SAE C/O 001 (08/07)

Case ID: 210503143

    a.     **Loss** paid by the Company;

    b.     **Expenses, Costs and Interest** paid or incurred by the Company; and

    c.     only to the extent the applicable Limit of Liability has not been exhausted by a. and b. above, the amount paid by the Company to reimburse the **Insured** for its pro rata share of **Expenses, Costs and Interest**.

F.    Under no circumstances will coverage be afforded under more than one Insuring Agreement issued by the Company or any affiliated company. If a **Loss Event** to which this insurance applies is covered under more than one Insuring Agreement to this policy, the **Named Insured** will be entitled to select the Insuring Agreement that will respond to the **Loss**. No other Insuring Agreement will respond to the **Loss**.

G.    Nothing contained in this Section shall affect the Company's undertaking to pay the amounts described in Section VII. CONDITIONS, C. APPEALS.

## V.   DEFINITIONS

When used in this policy:

A.    **Advertising Injury** means injury which results from one or more of the following offenses committed in an advertisement of an **Insured's Products** or services:

    1.     libel, slander, or defamation;

    2.     violation of a person's right of privacy; or

    3.     infringement of copyright, title or slogan.

B.    **Automobile** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include **Mobile Equipment**.

C.    **Bodily Injury** means physical harm, sickness or disease that is sustained by a person which occurs during the Policy Period. **Bodily Injury** includes death. **Bodily Injury** includes emotional distress and mental injury only if the emotional distress or mental injury is the direct result of physical harm, sickness or disease.

D.    **Claim** means:

    1.     the filing of a lawsuit against an **Insured**, written notice of intent to file a lawsuit, or to arbitrate against an **Insured**, or a written demand for money or services communicated to an **Insured** with respect to a **Loss Event**; or

    2.     any specific circumstance or outcome involving a particular person an **Insured** reasonably believes is likely to result in a demand for compensation for the injury or damage.

E.    **Contamination** means any unclean, unsafe, damaging, injurious or unhealthful condition arising out of the presence of **Mold, Spores, Fungus, Mildew, Yeast and/or other Toxins** or products and materials containing one or more of them, whether permanent or transient, in the **Environment**.

F.    **Damages** means amounts an **Insured** is legally obligated to pay to compensate others by law because of a **Loss Event**. **Damages** does not include fines, penalties or amounts that are uninsurable under applicable law.

G.    **Discrimination** means any violation of:

    1.     any statutory law, common law, rule or regulation which prohibits unfavorable, unfair or disparate treatment, partiality or prejudice based upon race, color, religion, national origin, age, sex, marital status, parental status, sexual orientation or preference, disability, handicap, pregnancy, or medical condition;

SAE C/O 001 (08/07)

2.  civil rights; or

3.  any law or regulation designed or intended to protect individuals from differential treatment based on their status.

H.  **Environment** means and includes all persons; any manmade object, building, or feature; animals, crops, vegetation, land, bodies of water, water table, water table supplies, air and any feature of the earth or its atmosphere, whether or not altered, developed, or cultivated, or any part thereof.

I.  **Expenses, Costs and Interest** means:

1.  all expenses incurred in the investigation, adjustment, settlement and/or adjudication of any **Claim** or **Suit** covered by this policy that is brought against the **Insured** including, but not limited to legal expenses, prejudgment interest, attorneys fees, court costs, premium on appeal bonds, bonds to release attachments and direct or indirect expenses paid to others for any service involving a **Claim** or **Suit**; and

2.  that portion of the post judgment interest attributable to the amount of the judgment for which the Company is responsible which accrues after the entry of the judgment and before the Company pays or offers to pay that portion of the judgment for which the Company is responsible.

J.  **Extended Reporting Period** means the time after the end of the Policy Period for reporting **Claims** arising from a **Loss Event**.

K.  **First Named Insured** means the first entity described in Item 1. of the Declarations.

L.  **Good Samaritan Acts** means those services performed by the **Insured** in furnishing or failing to furnish, without remuneration, emergency healthcare treatment at the scene of an accident, medical crisis or disaster.

M.  **Hazardous Properties** includes radioactive, toxic or explosive properties of **Nuclear Materials**, **Radioactive Materials** and/or **Waste Materials**.

N.  **Incidental Contract** means any written:

1.  lease of premises;

2.  sidetrack agreement;

3.  easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad;

4.  indemnification of a municipality as required by ordinance, except in connection with work for a municipality;

5.  elevator maintenance agreement; or

6.  that part of any contract or agreement pertaining to the **Named Insured's** business under which the **Named Insured** assumes the "tort liability" of another to pay **Damages** because of **Bodily Injury** or **Property Damage** covered by COVERAGE B. "Tort liability" means a liability that would be imposed against the **Insured** by law in the absence of a contract or agreement.

O.  **Insured** means the persons and organizations identified as **Insureds** in Section VI. **INSUREDS**.

P.  **Insured's Products** means goods or products manufactured, sold, handled or distributed by the **Named Insured** or by others trading under its name, including any container thereof (other than a vehicle), but does not include a vending machine or any property other than such contained, rented to or located for use of others but not sold.

Q.  **Loss** means the amounts paid as **Damages** net of all recoveries and salvages, in settlement of **Claims** or **Suits** in satisfaction of awards or judgments, incurred as a result of a **Loss Event** for which this policy provides coverage.

SAE C/O 001 (08/07)

**Loss** does not include salaries of the **Insured's** employees, or fees and expenses of independent adjusters, third party administrators and attorneys hired by the **Insured**.

R.    **Loss Event** means:

    1.    With respect to COVERAGE A: HEALTHCARE FACILITY EXCESS PROFESSIONAL LIABILITY, a **Medical Incident** to which this insurance applies.

    2.    With respect to COVERAGE B: HEALTHCARE FACILITY EXCESS GENERAL LIABILITY, an **Occurrence** that results in **Bodily Injury** or **Property Damage** or an offense that results in **Personal Injury** or **Advertising Injury**, to which this insurance applies.

    3.    With respect to COVERAGE C: FOLLOW-FORM EXCESS LIABILITY, the happening, situation or circumstance that results in a **Claim** or **Suit** for injury or damage that is covered by the **Underlying Insurance** described in the Schedule of Underlying.

S.    **Medical Incident** means:

    1.    an act or omission in providing or failing to provide healthcare **Professional Services** that results in **Bodily Injury** to a person or **Patient**;

    2.    an **Occurrence** that results in **Bodily Injury** to a **Patient**;

    3.    an act or omission in conducting research by an **Insured** related to healthcare that results in **Bodily Injury** caused by an alleged defect or deficiency in the **Insured's** conduct or reporting of the research or development; or

    4.    an act or omission in providing service to or carrying out the directives of the **Named Insured's** formal accreditation board or committee or a medical standards review board or committee or any similar board or committee controlled by the **Named Insured**.

T.    **Mobile Equipment** means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, which is:

    1.    not subject to motor vehicle registration and is maintained for use exclusively on premises owned by or rented to the **Named Insured**, including the ways immediately adjoining; and designed for use principally off public roads; or

    2.    designed or maintained for the sole purpose of affording mobility to power cranes, shovels, loaders, diggers, drills, concrete mixers, graders, scrapers, rollers and other road construction or repair equipment, air compressors, pumps and generators, including spraying, welding and building cleaning equipment, and geophysical exploration and well servicing equipment.

U.    **Mold, Spores, Fungus, Mildew, Yeast and/or other Toxins** means any mold, spores, mildew, yeast and/or other toxins of any type or nature whatsoever that can cause or threaten harm to any living organism (including human health or human welfare, or the health or welfare of any animal or plant) or can cause or threaten physical damage, deterioration, loss of use, and/or of value or marketability, to any tangible property whatsoever. This includes any type of mold, spores, fungus, mildew, yeast and/or other toxins that is harmful or potentially harmful to health or welfare, or that is damaging or potentially damaging to tangible property or that can otherwise cause or threaten to cause injury, **Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury** of any kind whatsoever.

V.    **Named Insured** means an entity described in Item 1. of the Declarations.

W.    **Nuclear Materials** means **Source Material**, **Special Nuclear Material** and **Byproduct Material**.

X.    **Occurrence** means an accident, including continuous or repeated exposure to conditions which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of an **Insured**. **Occurrence**

- 16 -

Case ID: 210503143

includes any intentional act by or at the direction of the **Insured** which results in **Bodily Injury**, if the injury arises solely from the use of reasonable force for the purpose of protecting persons or property.

Y. **Other Insurance** includes, but is not limited to, coverage or benefits provided by insurers, self-insurers, pools, self-insurance trusts, captive insurance companies, inter-insurance exchanges, mutual insurance companies, stock insurance companies, risk retention groups, reciprocal exchanges, mutual benefit or assistance programs, or any other plan or agreement of risk assumption.

Z. **Patient** means:

    1.    a person who is receiving or seeking healthcare **Professional Services** from an **Insured**; or

    2.    a person who is on the premises of an **Insured** in order to obtain healthcare **Professional Services** for himself or herself.

AA. **Personal Injury** means an injury arising out of one or more of the following offenses committed in the course of the **Named Insured's** activities in the conduct of the **Named Insured's** business:

    1.    false arrest, detention, imprisonment, or malicious prosecution; or

    2.    wrongful entry or eviction or other invasion of the right of private occupancy or a room or dwelling that a person occupies; or

    3.    a publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy.

BB. **Policy Territory** means:

    1.    the United States of America, including its territories and possessions, Puerto Rico and Canada; or

    2.    anywhere in the world if the original **Suit** for **Damages** because of **Loss Events** to which this insurance applies is brought within the United States of America, including its territories or possessions, Puerto Rico or Canada.

CC. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste means materials to be recycled, reconditioned or reclaimed, including but not limited to medical paraphernalia, drugs, blood and blood products and animal tissue.

DD. **Products Hazard** means **Bodily Injury** and **Property Damage** arising out of an **Insured's Products** or reliance upon a representation or warranty made at any time with respect to an **Insured's Products**, but only if the **Bodily Injury** or **Property Damage** occurs away from premises owned by or rented to the **Insured** and after physical possession of the products has been relinquished to others.

EE. **Professional Services** means services provided to others that require the exercise of professional skill, training or judgment.

FF. **Property Damage** means:

    1.    physical injury or destruction of tangible property, including the loss of use of the property, or

    2.    loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by the physical injury or destruction of tangible property during the Policy Period.

GG. **Radioactive Materials** means any materials which are radioactive or caused by or exhibit **Radioactivity**.

HH. **Radioactivity** means the property possessed by some elements of spontaneously emitting alpha or beta rays and sometimes also gamma rays by the disintegration of the nuclei of atoms.

- 17 -

II.    **Retroactive Date** means the date shown or referred to in Item 7. of the Declarations.

JJ.    **Source Material, Special Nuclear Material** and **Byproduct Material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

KK.    **Suit** means a civil action seeking **Damages** and includes an arbitration proceeding to which the **Insured** is required to submit.

LL.    **Underlying Amounts** means amounts paid, in settlement of **Claims** or in satisfaction of awards or judgments, which would, except for the amount, be covered by this Policy.  The **Underlying Amounts** are set forth in the **Schedule of Underlying**.  Upon the exhaustion of any applicable aggregate **Underlying Amount**, the **Continuing Underlying Amount** is the minimum amount, applicable to each **Loss Event**, to be paid by the **Named Insured**.

MM. **Underlying Insurance** means the insurance set forth in the Schedule of Underlying.  The layer of **Underlying Insurance** which immediately precedes the layer of excess insurance provided by this policy contains certain terms and conditions of coverage which have been incorporated by this policy as provided under COVERAGE C.

NN.    **Underlying Insurer(s)** means the insurer(s) providing the **Underlying Insurance** set forth in the Schedule of Underlying.

OO.    **Underlying Limit of Liability** means the limits of liability of the **Underlying Insurance** set forth in the Schedule of Underlying.

PP.    **Volunteer** means any person performing tasks on behalf of the **Named Insured** and whose services or labor are uncompensated from any source and who is accepted and directed by the **Named Insured**.

QQ.    **Waste Materials** means any waste material containing **Byproduct Material** as that term is defined in the Atomic Energy Act of 1954 or in any law amendatory thereof, or any byproduct of any **Nuclear Materials** or **Radioactive Materials**.

VI.    <u>**INSUREDS**</u>

A.    With respect to COVERAGE A and COVERAGE B, each of the following is an **Insured**:

1.    the Named Insured;

2.    if a **Named Insured** is described in the Declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member, but only with respect to their liability as a partner or member.

3.    a **Named Insured's** executive officers and directors but only for liability that results from acts within the scope of their duties as an officer or director;

4.    a **Named Insured's** shareholders but only for liability that results from the status of being a shareholder;

5.    any entity which is acquired or formed by the **Named Insured** subsequent to the effective date of this policy and in which the **Named Insured** maintains a majority interest, but coverage will not apply:

a.    to any liability arising out of a **Loss Event** which takes place prior to the date of the acquisition or formation;

b.    for a period greater than sixty (60) days from the date of the acquisition or formation, unless the **Named Insured** gives written notice to the Company of the acquisition or formation and pays any additional premium assessed by the Company, to provide coverage to the newly acquired or formed entity.

c.    This provision does not apply to any entity excluded in this policy by name or description.

- 18 -

SAE C/O 001 (08/07)

B.   With respect to COVERAGE A, each of the following is an **Insured** to the extent set forth below:

1.   any employee or **Volunteer** of the **Named Insured** but only while acting within the course and scope of their duties on behalf of the **Named Insured** and any student of the healthcare professions enrolled in a formal training program sponsored by and controlled by the **Named Insured** or affiliated with and controlled by the **Named Insured** at the time a **Medical Incident** takes place;

2.   members of a duly authorized professional committee of the **Named Insured** for liability incurred for acts within the course and scope of their duties as a member of the committee;

3.   Medical Directors of the **Named Insured**, but only for liability incurred for acts performed solely in an administrative capacity for the benefit of and at the request of the **Named Insured**; and

4.   any employee of the **Named Insured** while performing **Good Samaritan Acts**.

C.   Each of the following is an **Insured** under COVERAGE B to the extent set forth below:

1.   any employee or **Volunteer** of the **Named Insured** but only while acting within the course and scope of his or her duties on behalf of the **Named Insured** and any student of the healthcare professions enrolled in a formal training program sponsored by and controlled by the **Named Insured** or affiliated with and controlled by the **Named Insured** at the time a **Loss Event** takes place;

2.   any person (other than an employee or **Volunteer** of the **Named Insured**) or organization while acting as real estate manager for the **Named Insured**.

D.   With respect to COVERAGE C, the **Named Insured** and, subject to the terms, conditions, definitions and exclusions of this policy, any additional **Insured**, other than the **Named Insured**, included as **Insured** in the **Underlying Insurance** set forth in the Schedule of Underlying Insurance.

E.   Physicians, osteopaths, surgeons, residents and interns are not **Insureds** under this policy for any liability that arises out of a **Medical Incident** or healthcare **Professional Services** that were or should have been provided by anyone unless he or she is specifically listed as an **Insured**.

VII.   <u>CONDITIONS</u>

A.   ACTION AGAINST THE COMPANY BY A THIRD PARTY

1.   No action shall lie against the Company by an **Insured** unless, as a condition precedent, there has been full compliance with all of the terms of this policy by all **Insureds**, nor until the amount of the **Insured's** obligation to pay has been finally determined, through a judgment against the **Insured** after actual trial. Any person or organization, or his legal representative, who has secured such a judgment or written agreement shall thereafter be entitled to recover under this policy to the extent, but only to the extent the **Loss** is covered by this policy.

2.   No person or organization shall have any right under this policy to join the Company as a third party to take any action against the **Insured** to determine the liability of the **Insured**, nor shall the Company be impleaded by any **Insured** or its legal representative. The bankruptcy or insolvency of an **Insured** or its estate shall not relieve the Company of any of its obligations under this policy.

SAE C/O 001 (08/07)

Case ID: 210503143

B.  AGENCY OF **FIRST NAMED INSURED**

By acceptance of this policy, the **First Named Insured** agrees to act on behalf of all **Insureds** with respect to the giving and receiving of notices to and from the Company as provided herein related to the exercise of any **Extended Reporting Period**; the cancellation of this policy in whole or in part; the payment of premiums and deductibles when due; and the receipt of any return premiums that may become due under this policy. In addition, all **Insureds** hereby agree that the **First Named Insured** shall have authority to act on their behalf and that notice provided to the **First Named Insured** shall serve as notice to all **Insureds**.

C.  APPEALS

If the **Named Insured** or an **Underlying Insurer** elects not to appeal an award or judgment which exceeds the **Underlying Amounts** or the **Underlying Limits of Liability**, the Company has the right to undertake the appeal. In the event of an appeal pursuant to this paragraph, the Company's liability on such an award or judgment shall not exceed the Limit of Liability set forth in Item 5. of the Declarations, plus all **Expenses, Costs and Interest** incidental to the appeal. If the award or judgment is decreased on appeal, the **Named Insured** or an **Underlying Insurer** shall reimburse the Company for the **Expenses, Costs and Interest** incurred by the Company in the appeal, up to the amount the **Named Insured** or **Underlying Insurer** would have paid in **Damages** had there been no appeal.

D.  ASSIGNMENT

Assignment of interest under this policy shall not bind the Company unless it consents to the assignment in writing.

E.  ASSISTANCE AND COOPERATION

The **Insured** shall cooperate fully in all matters pertaining to any **Claim, Suit** or proceeding. The Company shall not be called upon to assume charge of the defense or settlement of any **Claim, Suit** or proceeding instituted against the **Insured**. The Company shall have the right, but not the obligation, to associate with the **Insured** in the defense and control of any **Claim, Suit** or proceeding which, in the sole opinion of the Company, may exhaust the **Underlying Amounts** or **Underlying Insurance**. Any **Expenses, Costs or Interest** incurred by the Company in exercising its right to associate in the defense of a **Claim** or **Suit** will reduce the applicable Limit of Liability.

Any obligation assumed, payment made or expenses incurred in excess of the **Underlying Amount** or the **Underlying Insurance** without the Company's prior, written consent is the sole responsibility of the **Insured**. The Company has no obligation to reimburse or indemnify the **Insured** for any amount paid or incurred in excess of the **Underlying Amount** or **Underlying Insurance** without the prior written consent of the Company.

F.  CANCELLATION

1.  The **First Named Insured** may cancel this policy by mailing or delivering advance written notice of intent to cancel.

2.  The Company may cancel this policy by mailing or delivering to the **First Named Insured** at the address shown in the Declarations, written notice of intent to cancel:

    a.  Ten (10) days before the effective date of cancellation, if the Company cancels for non-payment of premium; or

    b.  Sixty (60) days before the effective date of cancellation, if the Company cancels for any other reason.

3.  The Company will mail or deliver its notice of cancellation to the **First Named Insured** named in Item 1. of the Declarations, at the last mailing address known to the Company.

4.  The notice of cancellation will state the effective date of cancellation. The policy will end on that date, which shall become the expiration date of this policy.

SAE C/O 001 (08/07)

5.      If this policy is canceled, the Company will send the **First Named Insured** any premium refund due.  If the Company cancels, any refund will be pro rata.  If the **First Named Insured** cancels, any refund will be short rate.  If the policy is canceled by the **First Named Insured**, the policy is subject to the Minimum and Fully Earned Premium set forth in Item 8. of the Declarations.  Cancellation will be effective even if the refund has not been tendered.

6.      If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

G.   COMPANY'S RIGHTS AND OBLIGATIONS

1.      The Company shall not assume the obligations of the **Insured** or any insurer.  The Company's obligations shall not be altered or increased, nor shall the Company pay any third party on behalf of the **Insured** or any insurer, irrespective of the inability of the **Named Insured** or any insurer to pay the **Underlying Limits of Liability** or **Underlying Amounts** for any reason whatsoever, including, but not limited to, the inability of the **Named Insured** or any insurer to pay by reason of bankruptcy, insolvency, financial impairment, or any regulatory or judicial intervention due to the financial condition of the **Named Insured** or any insurer.  The Company's obligation to indemnify the **Insured** for **Loss** in excess of the **Underlying Limits of Liability** or **Underlying Amounts** applies only after the **Underlying Limits of Liability** or **Underlying Amounts** have been paid by or on behalf of the **Named Insured**.

2.      Where liability of the **Insured** is reasonably clear and the Company recommends settlement of a **Claim** for a written demand that is within the **Underlying Amounts** and the **Named Insured** refuses to consent to such settlement, but elects to contest the **Claim** or continue legal proceedings, the Company shall not be liable for any **Loss** or **Expenses, Costs or Interest** attributable to the **Claim**.

3.      Where liability of the **Insured** is reasonably clear and the amount demanded in settlement of a **Claim** is in excess of the **Underlying Amounts**, the Company has the right to discharge its obligation to pay any **Loss** associated with the **Claim** by paying to the **Named Insured** the difference between the amount demanded in settlement and the **Underlying Amount**.

H.   **EXPENSES, COSTS AND INTEREST**

1.      Under COVERAGE A and COVERAGE B **Expenses, Costs and Interest** are the sole responsibility of and will be paid by the **First Named Insured** except for:

   a.      **Expenses, Costs and Interest** incurred by the Company in exercising its right to associate in the defense under VII. <u>CONDITIONS</u>. A., ASSISTANCE AND COOPERATION; or

   b.      Expenses, Costs and Interest incurred after the Underlying Amounts have been exhausted.

2.      Under COVERAGE C, the Company will indemnify the **Insured** for the payment of **Expenses, Costs and Interest** incurred in settlement of **Claims** and in satisfaction of awards or judgments in excess of the **Underlying Limits of Liability**.  As to COVERAGE C, this policy incorporates the terms and conditions of the **Underlying Insurance** regarding **Expenses, Costs and Interest**, subject to the **Insured's** obligation to pay any **Continuing Underlying Amount** set forth in the Schedule of Underlying.

3.      **Expenses, Costs and Interest** are always included within, and are not in addition to, the Company's Limit of Liability set forth in Item 5. of the Declarations.

I.   **EXTENDED REPORTING PERIOD** OPTION

1.      Where **Underlying Insurance** applies on a claims-made basis and this policy is cancelled or non-renewed for any reason other than non-payment of premium, the Company will offer the **First Named Insured** the option of purchasing an **Extended Reporting Period** applicable to COVERAGE C if the following requirements have been met:

Case ID: 210503143

      a.    The **First Named Insured** confirms in writing that the time for reporting claims under the **Underlying Insurance** has been extended through the purchase of an **Extended Reporting Period**; and

      b.    The **First Named Insured** provides the terms and conditions of the **Extended Reporting Period** that applies to the **Underlying Insurance**, including but not limited to the term of the **Extended Reporting Period** and the limits of liability that will apply to **Claims** reported during the **Extended Reporting Period**.

2.    Where **Underlying Insurance** does not apply the Company will provide an **Extended Reporting Period** for any claims-made coverage as follows:

      a.    A thirty (30) day automatic **Extended Reporting Period** will be provided. This automatic **Extended Reporting Period** begins at 12:01 A.M. on the expiration date of this policy and ends at 12:01 A.M. on the 30th day following the expiration date. No premium will be assessed for this automatic **Extended Repotting Period**; however, the **First Named Insured's** right to report **Claims** under this automatic **Extended Reporting Period** will not extend beyond the 30 day period. The **First Named Insured** must purchase an **Extended Reporting Period** endorsement in order to preserve the right to report claims following the expiration of the 30 day period. In addition, the 30 day automatic **Extended Reporting Period** applies only to those **Claims** or **Suits** that were brought to the attention of the **Named Insured's** Risk Management or Claim Department prior to the expiration date of this policy but were not reported to the Company prior to expiration.

      b.    If this policy is cancelled or non-renewed for any reason other than non-payment of premium the Company will offer the **First Named Insured** the option of purchasing an endorsement that will provide an **Extended Reporting Period**. The term of this **Extended Reporting Period** will be set out in the endorsement and shall not exceed seven (7) years.

          i.    The additional premium for this **Extended Reporting Period** will be computed in accordance with the Company's rates, rules and/or actuarial analysis on the effective date of the endorsement. The premium assessed for the **Extended Reporting Period** shall be deemed fully earned and is non-refundable at the time the right to purchase is exercised.

          ii.    The right to purchase the **Extended Reporting Period** option must be exercised by the **First Named Insured** through written notice to the Company not later than thirty (30) days after the expiration or termination date of this policy.

3.    Any **Extended Reporting Period** option will not reinstate or increase the Company's Limit of Liability.

4.    The **Extended Reporting Period** option does not extend the Policy Period or change the scope of coverage provided. If the **Underlying Amounts** contain an aggregate, the Company has the right to provide the **Extended Reporting Period** option in excess of **Underlying Amounts** which apply to each and every **Loss Event** (without an aggregate) or to provide the **Extended Reporting Period** option in excess of **Underlying Amounts** which have an increased aggregate.

J.    INSPECTION AND AUDIT

1.    The Company shall be permitted, but not obligated, to inspect the **Insured's** premises and operations at any time. Neither the Company's right to make inspections nor the performance of an inspection shall constitute an undertaking on behalf of or for the benefit of the **Insured** or others to determine or warrant that such property or operations are safe or healthful or are in compliance with any law, rule or regulation.

2.    The Company may examine and audit the books and records of an **Insured** at any time during the Policy Period and extensions thereof and within three years after the final termination of this policy as far as they relate to the subject matter of this insurance.

SAE C/O 001 (08/07)

Case ID: 210503143

K.  **INSURED'S** DUTIES IN THE EVENT OF **CLAIM** OR **SUITS**

1.  In the event of a **Loss Event** the **Insured** must, as a condition to coverage under this policy:

    a.  Give written notice to the Company, as soon as practicable of any **Claim** reasonably likely to result in significant erosion or exhaustion of the **Underlying Amount** or **Underlying Insurance**, including but not limited to:

        i.  any **Claim** which any **Insured** or any representative of any **Insured**, or any insurer, evaluates as having a settlement or judgment value equal to or exceeding $250,000; or

        ii.  any **Claim** where the demand for **Damages** is equal to or exceeds $250,000.

    b.  Provide quarterly **Loss** reports listing all closed and outstanding **Claims**.  Such reports shall include the claimant's name; date of **Loss**; date the **Insured's** Risk Management of Claim Department became aware of the **Claim**; description of the injury or damage; the names of defense and plaintiff attorneys, where applicable, indemnity and expense reserves and the paid indemnity and expense. These quarterly reports must be sent to:

        Admiral Insurance Company
        c/o Claims Department
        Berkley Medical Excess Underwriters, LLC
        390 South Woods Mill Road, Suite 125
        Chesterfield, MO  63017

    c.  Immediately forward to the Company a complete copy of every demand, notice, summons or other process received individually or through a representative in connection with any **Suit** or **Claim** seeking **Damages** reasonably believed to be in excess of $250,000.

    d.  Maintain accurate descriptive records of all healthcare services rendered, which records shall be available to the Company as they relate to any **Claim** or **Loss Event** to which this policy applies.

    e.  Include in all reports, provided in accordance with this Condition, reasonably obtainable information with respect to the time, date, place, circumstances, **Insureds** involved, details regarding the alleged injury, **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury**; names of any potential witnesses; name of the **Patient** and claimants; the type of healthcare **Professional Services** rendered and the extent and type of **Claim** or **Suit** anticipated.  All notices must be in writing and addressed to the Company.

    f.  Cooperate with the Company, and upon the Company's request, assist in making settlements, in the conduct of a **Suit** and in enforcing any right of contribution or indemnity against any person or organization who may be liable to an **Insured** because of injury or damage with respect to which insurance is or may be afforded under this policy.  Attend all hearings and trials and assist in securing and giving evidence and obtaining witnesses.

    g.  Not incur any financial obligation in excess of the **Underlying Amount** without the Company's prior written consent.

2.  Reports of **Loss Events** made by an **Insured** to the Company as part of an engineering, loss control or risk management program do not constitute compliance with this Condition or determine when a **Claim** has been first made or reported in compliance with Section II.

L.  MAINTENANCE OF **UNDERLYING INSURANCE**; RESPONSIBILITY FOR **UNDERLYING AMOUNTS**

The **Named Insured** agrees to:

- 23 -

1. Maintain the **Underlying Insurance**, and renewals and replacements, in force during the currency of this policy, without alteration of its terms and conditions and without reduction of coverage or limits of liability, except for any reduction of the aggregate limits therein solely by amounts paid in settlement of **Claims** or in satisfaction of awards or judgments, with respect to **Loss Events** to which this policy applies. In the event **Underlying Insurance** is not maintained in force or if the **Insured** does not meet the terms and conditions of the **Underlying Insurance**, the insurance afforded by this policy shall apply as if such policies had been so maintained in force.

2. Retain its obligation and responsibility for maintaining the **Underlying Amounts** except for any reduction therein solely by amounts paid in settlement of **Claims** or in satisfaction of awards or judgments with respect to **Loss Events** to which this policy applies. If the **Underlying Amounts** contain an aggregate, such aggregate shall not be reduced or exhausted by payment of any amount for which coverage is not afforded by this policy.

M.   OBLIGATIONS OF THE **FIRST NAMED INSURED**

1. The **First Named Insured** assumes the following obligations and duties in accordance with its retention of, and agreement to pay, the **Underlying Amounts**.

   a.   pay Damages;

   b.   defend **Claims** and **Suits** and to pay **Expenses, Costs and Interest** as would be required if the **Underlying Amounts** were insured rather than owed directly by the **Named Insured**;

   c.   provide the Company the same duty of due care in defense and settlement that an insurer would owe the Company;

   d.   give to the Company or their duly appointed representative the information and assistance it requests; and

   e.   maintain a staff, by employment or through a contract, to provide risk management and claims services and provide for the investigation, adjustment, management and reporting of **Loss Events**.

2. It is expressly understood and agreed that the **First Named Insured** does not discharge its obligations under this policy by tendering the **Underlying Amounts** to the court or to the Company. The act of tendering the **Underlying Amount** does not constitute payment in settlement of **Claims** or in satisfaction of awards or judgments for the purposes of reducing or exhausting the **Underlying Amounts**.

3. The **First Named Insured** and the Company shall identify mutually agreeable counsel to defend any **Claim** which may involve this policy. The **Named Insured** and defense counsel shall cooperate with the Company and afford the Company access to defense counsel files and the opportunity to discuss the status, evaluation and strategy with defense counsel.

N.   OTHER INSURANCE

1. If **Other Insurance** not afforded by the Company is available to the **Insured** covering a **Loss Event** that is also covered by this policy, the insurance afforded by this policy will be excess of, and not contribute with, such **Other Insurance**. If the **Insured** purchases insurance with respect to all or part of the **Underlying Amounts** and such insurance exceeds the **Underlying Amounts** the insurance hereunder shall be excess of, and not contribute with, such **Other Insurance**. This Condition does not apply to insurance specifically purchased to apply in excess of the Company's Limit of Liability set forth in Item 5. of the Declarations.

2. The insurance afforded by this policy does not apply to any **Loss Event** for which an **Insured** has coverage under any other policy issued by the Company.

SAE C/O 001 (08/07)

Case ID: 210503143

O.  PREMIUM

    1.    The **First** Named Insured:

        a.    is responsible for the payment of all premiums;

        b.    if the premium is not financed, will be the payee for any return premium; and

        c.    if the premium is financed, the **Named Insured** authorizes the Company to pay any return premium to the premium finance company.

    2.    The premium for this policy is:

        a.    subject to the Minimum and Fully Earned Premium set forth in Item 8. of the Declaration; and

        b.    not subject to adjustment except as set forth in VI. **INSUREDS**, A., 5.

P.  REPRESENTATIONS, DECLARATIONS AND ENDORSEMENTS

    1.    The **Insureds** agree that the statements contained in the application and underwriting information submitted therewith are their representations, that these representations are material to the risk undertaken by the Company and that this policy is issued and continues in force in reliance upon the accuracy of the representations.

    2.    The **Insureds** agree that this policy will be void and the Company will be relieved of its obligations under the contract if there has been a misrepresentation or omission of a material fact in applying for the insurance or if there has been an attempt to mislead or defraud the Company either before or after a **Loss Event**.

    3.    By acceptance of this policy, by the **First Named Insured**, it is agreed that this policy and the Declarations and endorsements attached hereto embody all agreements existing between all **Insureds** and the Company.

Q.  SEVERABILITY OF INTERESTS

    1.    The term **Insured** is used severally and not collectively except with respect to Section VII. <u>CONDITIONS</u>, N. **OTHER INSURANCE**.

    2.    The inclusion in this policy of more than one **Insured** shall not operate to increase the Company's total liability for all **Insureds** covered by this policy beyond the limits set forth in Item 5. of the Declarations.

R.  SUBROGATION; TRANSFER OF RIGHTS OF RECOVERY

    1.    If an **Insured** has rights to recover all or part of any payment the Company has made under this policy, those rights shall be transferred to the Company. An **Insured** shall do nothing to impair such rights. At the Company's request, the **Insured** will bring a legal action to enforce the rights or transfer the rights to the Company and assist the Company in enforcing such rights.

    2.    Any amount so recovered shall be apportioned as follows: Any person or organization (including an **Insured**) who has paid an amount in excess of the Limit of Liability hereunder shall be first reimbursed to the extent of such actual payment; the Company shall next be reimbursed to the extent of its actual payment; any balance remaining in the amount of recovery shall be paid to the **Insured**. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries except:

        a.    In proceedings conducted solely by the Company where there is no recovery, the Company shall bear the expenses.

        b.    In proceedings conducted solely by the **Insured**, the **Insured** shall bear the expenses.

S. **UNDERLYING AMOUNTS**

    1.    The **First Named Insured** assumes the obligations and responsibilities for payment of the **Underlying Amounts** set forth in the Schedule of Underlying.  Unless indicated in the **Schedule of Underlying**, the **Underlying Amounts** will not be reduced by the payment of **Expenses, Costs and Interest** and only amounts paid in settlements or judgments will reduce the **Underlying Amount**.

    2.    Under no circumstance will the Company pay or indemnify the **Insured** for amounts owed or paid in settlement of **Claims** or in satisfaction of awards or judgments which are within the **Underlying Amounts** nor salaries of the **Insured's** employees, or fees and expenses of independent adjusters, third party administrators and attorneys hired by the **Insured**.

    3.    Any forgiveness by the **Named Insured** of outstanding charges for goods and services including, but not limited to, a write-off of medical bills, shall also be borne by the **Named Insured** in addition to the **Underlying Amounts**, unless the Company provides its written consent that the **Underlying Amount** will be reduced by the forgiveness or write off.  The written consent of the Company must be obtained prior to the settlement of a **Claim** or the satisfaction of an award or judgment.

    4.    Nothing in any provision of this policy shall be construed to make COVERAGE A or COVERAGE B of this policy subject to the terms, conditions or definitions of any **Other Insurance**, including, but not limited to, insurance purchased with respect to all or part of the **Underlying Amounts**.

## SIGNATURE

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless completed by the attachment hereto of a Declarations, Schedule of Underlying, applicable Coverage Forms and Endorsements and countersigned on the aforesaid Declarations by a duly authorized representative of the Company.

SAE C/O 001 (08/07)

Case ID: 210503143

## VERIFICATION

Filed and Attested by the
Office of Judicial Records
pm

I, Bethany J. Flood, state that I am the Executive Director of the Green Tree Community Health Foundation, and that I am authorized to make this Verification on behalf of Plaintiff Green Tree Community Health Foundation, and that the facts set forth in the preceding Complaint are true and correct to the best of my information and belief. This Verification is made with knowledge of the penalties contained in 18 Pa. C.S.A. Section 4904, relating to unsworn verification of authorities.

By: _____     6/4/21

        Bethany J. Flood, *Executive Director*     Date

ON BEHALF OF
GREEN TREE COMMUNITY HEALTH FOUNDATION

# EXHIBIT D

 CT Corporation

**Service of Process Transmittal**
06/14/2021
CT Log Number 539729445

**TO:** Janet Shemanske, Secretary
Nautilus Insurance Company
W. R. BERKLEY STATUTORY E & S CENTER, 7233 E BUTHERUS DR
SCOTTSDALE, AZ 85260-2410

**RE:** **Process Served in Delaware**

**FOR:** Admiral Insurance Company  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | GREEN TREE COMMUNITY HEALTH FOUNDATION, PLTF. vs. ADMIRAL INSURANCE COMPANY, DFT. |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 210503143 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/14/2021 at 15:40 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/15/2021, Expected Purge Date: 06/20/2021 |
| | Image SOP |
| | Email Notification,  Janet Shemanske  jshemanske@nautilus-ins.com |
| | Email Notification,  SOP REGULATORY  nic_regulatory@nautilus-ins.com |
| | Email Notification,  Trea Mihalovich  tmihalovich@nautilus-ins.com |
| | Email Notification,  Jen Rothluebber  jrothluebber@nautilus-ins.com |
| | Email Notification,  Wendy Wilson  wwilson@nautilus-ins.com |
| **REGISTERED AGENT ADDRESS:** | The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801<br>800-448-5350<br>MajorAccountTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s)

 CT Corporation

**Service of Process Transmittal**
06/14/2021
CT Log Number 539729445

**TO:** Janet Shemanske, Secretary
Nautilus Insurance Company
W. R. BERKLEY STATUTORY E & S CENTER, 7233 E BUTHERUS DR
SCOTTSDALE, AZ 85260-2410

**RE:** **Process Served in Delaware**

**FOR:** Admiral Insurance Company  (Domestic State: DE)

of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**               Mon, Jun 14, 2021

**Server Name:**        Wilmington Drop Serve

Entity Served           ADMIRAL INSURANCE COMPANY

Case Number             210503143

Jurisdiction            DE

