## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GREEN TREE COMMUNITY** | : | **CIVIL ACTION** |
| **HEALTH FOUNDATION** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ADMIRAL INSURANCE COMPANY** | : | **NO. 21-3137** |

### MEMORANDUM OPINION

**Savage, J.**                                                                          **August 10, 2022**

In this breach of contract and declaratory judgment action, plaintiff Green Tree Community Health Foundation seeks coverage of a medical malpractice claim arising from birth-related injuries that had occurred at Chestnut Hill Hospital in 2001 before it acquired the hospital. As part of its acquisition of the hospital in 2005, Green Tree assumed the hospital's indemnity obligations arising from medical malpractice claims that occurred prior to March 1, 2005.

In 2011, Green Tree purchased "tail" insurance from Admiral Insurance Company to protect it against "professional and general liabilities" that had occurred before it took over the hospital.[1] The "Incurred But Not Reported" ("IBNR") claims-made policy covers professional liability medical malpractice claims that occurred between March 1, 1984 and March 1, 2005 and applies only to claims that were first made against the insured and reported to Admiral after October 1, 2011.[2] The policy does not cover claims that had already been reported to another insurer. In short, Admiral agreed to insure Green Tree against claims based on old, unknown incidents.

---

[1] Def.'s Statement of Undisputed Facts (Doc. No. 27-2) ("DSUF") ¶ 10.

[2] *Id.* ¶¶ 11–13; Policy (Doc. No. 25-17) at I.A.1.

The issue is whether the policy covers a claim brought in 2019 against Green Tree and others by a mother and her child based on alleged malpractice that occurred at the hospital during the child's birth in 2001.  Green Tree was not originally named as a defendant in the underlying malpractice claim. Two of the original defendants, CHHS Hospital Company, LLC and Chestnut Hill Hospital (collectively "the hospital defendants"), requested indemnification and tendered the defense to Green Tree.  In an amended complaint, Green Tree was added as a defendant as the successor to the hospital defendants. Admiral refused to defend the lawsuit and indemnify Green Tree.  In response, Green Tree brought this action for breach of contract and bad faith.

The parties have filed cross motions for summary judgment.  Admiral argues that the claims are not covered because the mother brought a similar lawsuit in 2002 on her child's behalf that was litigated and dismissed.  It contends that because both cases are based on the same facts and the first case was reported to another insurance company, the 2019 case is excluded under the prior acts exclusion.  Green Tree argues that the 2002 case is separate and distinct from the 2019 case because the 2002 case was not filed against Green Tree and that the policy's prior acts exclusion does not apply.

We conclude that the 2019 action is the same medical malpractice claim that was made and reported to another insurer in 2002.  Because the prior acts exclusion applies, Admiral has no duty to defend and indemnify Green Tree.  Therefore, we shall grant summary judgment in favor of Admiral.

**Interpreting Insurance Contracts**

The interpretation of an insurance contract is a question of law.  *Babcock & Wilcox Co. v. Am. Nuclear Insurers*, 131 A.3d 445, 456 (Pa. 2015) (quoting *Donegal Mut. Ins.*

2

*Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007)). Whether a claim is within a policy's coverage or barred by an exclusion may be determined on a motion for summary judgment. *Bishops, Inc. v. Penn Nat'l Ins.*, 984 A.2d 982, 989 (Pa. Super. 2009) (quoting *Nationwide Mut. Ins. Co. v. Nixon*, 682 A.2d 1310, 1313 (1996)). Here, the parties agree Pennsylvania law governs.

A court must interpret the plain language of the insurance contract read in its entirety, giving effect to all its provisions. *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 258 (3d Cir. 2019) (quoting *Mut. of Omaha Ins. Co. v. Bosses*, 237 A.2d 218, 220 (Pa. 1968)). When the policy terms are clear and unambiguous, the words in the policy are construed by their "natural, plain and ordinary sense" meaning. *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (Pa. 2020) (citing *AAA Mid-Atlantic Ins. Co. v. Ryan*, 84 A.3d 626, 632-33 (Pa. 2014)); *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006) (citing *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999)).

When the policy language is ambiguous, the provision is construed in favor of the insured. *Kurach*, 235 A.3d at 1116 (citing *Prudential Prop. & Cas. Ins. Co. v. Sartno*, 903 A.2d 1170, 1177 (2006)). The policy is ambiguous where it is reasonably susceptible of more than one construction and meaning. *Kurach*, 235 A.3d at 1116 (quoting *Madison*, 735 A.2d at 106). However, policy language may not be stretched beyond its plain meaning to create an ambiguity. *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d Cir. 2011) (citing *Madison*, 735 A.2d at 106); *Trizechahn Gateway LLC v. Titus,* 976 A.2d 474, 483 (Pa. 2009) (citation omitted). It is not ambiguous merely because the parties

disagree about its meaning. *Meyer*, 648 F.3d at 164 (citing *Williams v. Nationwide Mut. Ins. Co.,* 750 A.2d 881, 885 (Pa. Super. 2000)).

The guiding principle in interpreting an insurance contract is to effectuate the reasonable expectations of the insured. *Reliance Ins. Co. v. Moessner,* 121 F.3d 895, 903 (3d Cir. 1997) (citations omitted); *Safe Auto Ins. Co. v. Berlin,* 991 A.2d 327, 331 (Pa. Super. 2010) (citation omitted). Under Pennsylvania law, even if the terms of the insurance contract are clear and unambiguous, the insured's reasonable expectations may prevail over the express terms of the contract. *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.,* 38 F.3d 1303, 1309 (3d Cir. 1994); *see also Safe Auto Ins. Co.,* 991 A.2d at 332 ("[A] court's decision to look beyond the policy language is not erroneous under all circumstances") (citation omitted). Nonetheless, the language of the insurance contract itself serves as the best evidence of the parties' reasonable expectations. *Id.* (quoting *Allstate Ins. Co. v. McGovern,* No. 07–2486, 2008 WL 2120722, at *2 (E.D. Pa. May 20, 2008)). Reasonable expectations typically will not overcome clear and unambiguous contract language. *See Regis Ins. Co. v. All Am. Rathskeller, Inc.,* 976 A.2d 1157, 1166 n.11 (Pa. Super. 2009) ("However, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous") (citations and quotations omitted); *Millers Capital Ins. Co. v. Gambone Bros. Dev. Co.,* 941 A.2d 706, 717 (Pa. Super. 2007).

The insured has the initial burden of establishing coverage under the policy. *State Farm Fire & Cas. Co. v. Estate of Mehlman,* 589 F.3d 105, 111 (3d Cir. 2009) (citing *Koppers Co. v. Aetna Cas. and Sur. Co.,* 98 F.3d 1440, 1446 (3d Cir. 1996)). Where the insured meets that burden and the insurer relies on a policy exclusion as the basis for

4

denying coverage, the insurer has the burden of proving that the exclusion applies. *Id.; Wolfe v. Ross*, 115 A.3d 880, 884 (Pa. Super. 2015) (citing *Baumhammers*, 938 A.2d at 290). Policy exclusions are strictly construed against the insurer. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206-7 (3d Cir. 2001) (citing *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998)); *Peters v. Nat'l Interstate Ins. Co.*, 108 A.3d 38, 43 (Pa. Super. 2014) (quoting *Swarner v. Mut. Benefit Grp.*, 72 A.3d 641, 644-45 (Pa. Super. 2013)).

**Analysis**

Admiral distinguishes indemnification and direct claims. It contends that the hospital defendants' demands for indemnification arise from a contractual obligation and the policy covers only medical malpractice claims. Accordingly, so Admiral argues, there is no coverage for indemnification claims.

Admiral is correct that the indemnity sought is based on the contract between Chestnut Hill Hospital and Green Tree which obligated Green Tree to assume liability for new medical malpractice claims that occurred prior to the sale of the hospital. Those are the claims Admiral agreed to cover. It agreed to pay for medical malpractice claims for "injury caused by a **Medical Incident** that happened at Chestnut Hill Hospital . . . prior to March 1, 2005."[3] Coverage of these malpractice claims is what Admiral and Green Tree intended, and Green Tree reasonably expected.

Green Tree contends that the 2002 case is not a claim under the policy because it was not filed against Green Tree, the named insured. It argues that because the case

---

[3] Policy at I.A.1.

was brought in 2002 before Green Tree existed, it does not fall within the definition of a claim under the policy.

It does not matter that Green Tree did not exist when the underlying claim accrued. The claim was made against Green Tree's predecessor whose liability Green Tree assumed. Green Tree and Admiral contemplated coverage for new malpractice claims that arose before Green Tree took over the hospital, specifically those occurring between March 1, 1984 and March 1, 2005.

To interpret the policy any differently would render it illusory. How else would a malpractice claim come within the policy? Green Tree did not exist prior to March 1, 2005. It could be exposed to liability only based on its contractual duty to indemnify the hospital.

The IBNR policy provides that Admiral "agrees to pay on behalf of the **Insured** for **Loss** because of injury caused by a **Medical Incident** that happened at Chestnut Hill Hospital" between March 1, 1984 and March 1, 2005.[4] It "applies only when the **Claim** is first made against the **Insured** and reported to the Company during the Agreement Period stated above."[5] The policy does not cover "any **Claim** that was reported to any other insurer prior to [October 1, 2011,] the inception date of the Agreement. . . ."[6]

A claim is "the filing of a lawsuit against an **Insured**, written notice of intent to file a lawsuit, . . . or a written demand for money or services communicated to an **Insured** with respect to a **Loss Event**."[7] A Loss Event is "a **Medical Incident** to which this

---

[4] *Id.*

[5] *Id.*

[6] *Id.* at III.EE.3.

[7] *Id.* at V.D.1.

6

insurance applies."[8]  A Medical Incident is "an act or omission in providing or failing to provide healthcare **Professional Services** that results in **Bodily Injury** to a person or **Patient**."[9]

Read together, the policy provisions require three conditions to trigger coverage: (1) the loss is for injury caused by a medical incident; (2) the incident occurred before March 1, 2005; and (3) the claim was not reported to another insurer before the policy inception date, October 1, 2011.

Here, the claim is based on a loss event as defined in the policy—a medical malpractice claim for birth-related injuries caused by a medical incident.  The incident occurred in November 2001, during the period specified in the policy.

The question is whether the claims were reported to another insurer before October 1, 2011.  Answering this question requires us to determine whether the earlier 2002 case that was defended under Chestnut Hill Hospital's insurance coverage provided by another insurer falls within the prior acts exclusion.

The policy "applies only when the **Claim** is first made against the **Insured** and reported to the Company during the Agreement Period."[10]  It excludes prior acts, defined in part, as "any **Claim** that was reported to any other insurer prior to the inception date of the Agreement . . ."[11]

The policy language is not ambiguous.  The prior acts exclusion states that the policy does not cover "any **Claim**" reported to any other insurer before October 1, 2011

---

[8] *Id.* at V.R.1.
[9] *Id.* at V.S.1.
[10] *Id.* at I.A.1.
[11] *Id.* at III.EE.3.

and that a "**Claim**" is defined as a lawsuit or written demand that is connected to "a **Loss Event**." If a second lawsuit is based on the same "**Medical Incident**" resulting in bodily injury to the same patient, it is the same "**Loss Event**" or claim.[12]

Both claims arise from the same loss event—the 2001 medical incident resulting in birth-related injuries. The 2002 case was filed against Chestnut Hill Hospital and other defendants in the Philadelphia Court of Common Pleas.[13] The hospital's insurer, Medical Inter-Insurance Exchange, provided coverage and retained White & Williams LLP to defend the hospital.[14] The case was litigated and dismissed for lack of prosecution in 2004.[15] Thus, because the 2019 lawsuit, like the 2002 lawsuit, was a claim that had both been *incurred* and *reported* to another insurer prior to the inception date of the Admiral IBNR policy, the prior acts exclusion applies and coverage is excluded.

## Conclusion

Because the 2019 case against Green Tree and the hospital defendants is based on the same "Loss Event" that gave rise to the 2002 case and was reported to another insurer, coverage is excluded by the prior acts exclusion. Therefore, we shall grant Admiral's motion for summary judgment[16] and deny Green Tree's motion for partial summary judgment.

---

[12] *Id.* at II.A.5 ("All **Claims** arising out of the same **Medical Incident** causing injury to a **Patient** shall be considered as having been made at the time the **Claim** was first made and reported").

[13] DSUF ¶¶ 19–21.

[14] *Id.* ¶¶ 22-23.

[15] *Id.* ¶¶ 24-26.

[16] Green Tree also asserted a bad faith claim. Because Admiral properly denied coverage, we grant summary judgment in favor of Admiral.